# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CHAPTER 11** |
| | § | |
| **ESCO MARINE, INC.**[1] | § | |
| | § | **CASE NO. 15-20107** |
| **Debtors.** | § | |
| | § | |
| | § | **(Joint Administration Pending)** |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363, 364 & 507 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 4001 & 9014 (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING POST-PETITION REPLACEMENT LIENS ; (III) GRANTING ADEQUATE PROTECTION; AND (IV) <u>SCHEDULING A FINAL HEARING ON THE MOTION</u>**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Come now the Debtors and Debtors-in-Possession in the above-captioned case, and file this *Emergency Motion For Interim and Final Orders Pursuant to 11 U.S.C. Sections 105, 362, 363, 364, & 507 and Federal Rules of Bankruptcy Procedure 2002, 4001, & 9014 (I) Authorizing Use of Cash Collateral; (II) Granting Post-Petition Replacement Lines (III) Granting Adequate Protection; and (IV) Scheduling a Final Hearing on the Motion* (the "**<u>Motion</u>**"), and would show as follows:

## I.    PRELIMINARY STATEMENT

1.    To continue preserve the value of their assets on a post-petition basis, the Debtors need to use funds from operations.  By this Motion, the Debtors hereby seek entry of an order permitting them to use cash collateral to maintain and preserve the value

---

[1] The Debtors also include ESCO Metals, LLC; ESCO Shredding, LLC; Texas Best Recycling, LLC, and Texas Best Equipment, LLC. The corporate address for all debtors is 16200 Joe Garza Sr, Road, Brownsville, Texas 72521. Joint administration under the above style and case number has been ordered by the United States Bankruptcy Court on March ____, 2015. The use of the term "Debtor" shall refer to all debtors.

of their assets during the administration of this bankruptcy case.

## II.   JURISDICTION AND VENUE

2.     On March 7, 2015 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") in the Bankruptcy Court for the Southern District of Texas, Corpus Christi Division.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

3.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.     The relief requested herein is authorized under sections 105, 361, 362, 363, and 364 of the Bankruptcy Code, Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Rules.

5.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.   BACKGROUND

### A.   The Debtors

6.     ESCO Marine, Inc. ("ESCO Marine") is a Delaware corporation doing business in Texas.  It is an 88 acre full service marine yard and recycling operation located in Brownsville, Texas.  ESCO Marine and the related Debtors specialize in recyclable metals and the proper disposal of obsolete maritime vessels.

### B.   The Debtors' Pre-Petition Secured Loans

7.     Callidus Captial Corporation ("Callidus") made vaious pre-petition lonas to the Debtors.  The Debtors pledged collateral to secure those loans.  The validty of Callidus's lien(s) is not disputed.

**C.     The Debtors Require Immediate Cash**

8.     The Debtors urgently require the use of the funds and cash collateral pledged to Callidus to pay utilities, secure the Debtors' physical assets and other necessary expenses included in the attached Budget.  Without immediate access to cash collateral at this critical time, the Debtors will be unable to continue to maintain and preserve assets.

9.     The Debtors have filed "First Day Motions" seeking permission to, *inter alia*, provide utility companies with adequate assurance of future payment.  As set forth in the underlying motions requesting such relief, the Debtors believe that it is critical to its ability to stabilize, maintain and preserve their businesses on an ongoing basis that they obtain the authorization to use cash collateral.  Absent use of cash collateral the Debtors' will be jeopardized and their efforts to maximize value for the estates will be undermined.

10.     The Debtors do not have sufficient cash on hand to meet their immediate operating needs.  The inability of the Debtors to obtain permission to use cash collateral will have a profoundly adverse impact on the value of the Debtors' businesses, and the subsequent value to be realized therefrom by their creditors in theses Cases.

**D.     Terms Of The Proposed Cash Collateral Use**

11.     The Debtors have determined that there exist outstanidng receivables and scrap metal that can generate the funds necessary for the Debtors to preserve their estates. These receivables and scrap metal are pledged as collateral for Callidus's pre-petition lonas.

12.     The receivables – pre-petition were deposited in a "lock-box account

which is swept by Collides. Debtors request use of and access to funds in the lock-box generated pre-petition and access to and ause of funds generated by post-petition sales of salvaged metal.  The Debtors will give Callidus post-petition replacement liens for the value of the cash collateral consumed and to the extent necessary, super-priority liens. The Debtors' use of cash collateral will be limited to the expenditures and amounts listed in the Budget.

## IV.    <u>RELIEF REQUESTED</u>

13.    By filing this Motion, the Debtors respectfully request permission from this Court to use cash collateral in which Callidus asserts an interest, through and including, a final hearing on this Motion (the "<u>**Interim Period**</u>"), to provide Callidus with adequate protection in the form of replacement and super-priority liens.  The Budget identifies the Debtors' estimate of their ordinary and necessary expenses to be incurred and paid during first month of these Cases. *See* Ex. A.

14.    A proposed form of order granting the requested relief is attached as Exhibit "B."  Based on discussion to date, the Debtors believe that Callidus is willing to allow use of its cash collateral.

15.    Additionally, pursuant to Rule 4001(c) of the Bankruptcy Rules and sections 361, 363, 364(c) and 364(d) of the Bankruptcy Code, the Debtors respectfully request the Court: (a) grant the relief requested herein on an interim basis pending final approval of the Motion by this Court, authorizing the Debtor to use cash collateral; (b) grant replacement and super-priority liens as adequate protection as contemplated herein and in the Interim Order; and (c) prescribe the form and manner of notice for, and schedule a final hearing under Bankruptcy Rule 4001(c) following the fourteen (14) day

period provided for in that Bankruptcy Rule (the "**Final Hearing**") to consider final approval of the use of cash collateral in accordance with the terms of the order approving it, and the agreements, documents and instruments executed and/or delivered by the Debtors in favor of the DIP Lender in connection therewith.

V.    <strong><u>ARGUMENTS AND AUTHORITY</u></strong>

16.    The Debtors operate a marine salvage yard which dismantles decommissioned ships of the U.S. Navy. In order preserve its Navy contracts, the Debtor must provide salvage security, including persons holding military security clearance. Minimal of salvage activity are also necessary.

17.    In addition, safety concerns and security concerns require a certain level of utility service to provide lighting, telephonic communications, and so forth.

18.    Insurance must be provided for laborers and the persons on the premises.

19.    Minimal staffing of white-collar and blue-collar employees is necessary.

20.    All of these expenses are reflected in the Budget.

21.    All of the estate's creditors are markedly better off if the Debtors can preserve the value of their assets and reorganize their businesses.

22.    Section 363(c) of the Bankruptcy Code provides that a debtor-in-possession may use cash collateral if all interested entities consent or the court, after notice and a hearing, authorizes such use. Section 363(e) of the Bankruptcy Code requires that the use of cash collateral be prohibited or conditioned as is necessary to provide adequate protection to persons that have an interest in cash collateral. *In re DeSardi*, 340 B.R. 790, 797 (Bankr. S.D. Tex. 2006) ("Adequate protection is . . . grounded in the belief that secured creditors should not be deprived of the benefit of their

bargain"). Read together, sections 363(c) and (e) of the Bankruptcy Code authorize a debtor-in-possession to use the cash collateral of a secured creditor if such creditor's collateral is adequately protected. *See In re Harrington & Richardson, Inc.*, 48 B.R. 431, 433 (Bankr. D. Mass. 1985).

23.     Although the term "adequate protection" is not precisely defined in the Bankruptcy Code, section 361 sets forth three non-exclusive examples of what may constitute adequate protection: (1) periodic cash payments equivalent to the decrease in value of the creditor's interest in the property; (2) an additional or replacement lien on other unencumbered property of the debtor; or (3) other relief that provides the indubitable equivalent of the creditor's property interest. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1388 (5th Cir. 1986). "[T]he debtor-in-possession has the burden of proof on the issue of adequate protection." *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 406 (Bankr. N.D. Tex. 2003).

24.     The "indubitable equivalent" mentioned in section 361(3) of the Bankruptcy Code

> affords the parties and the courts some degree of flexibility by allowing such other relief as will result in the realization by the protected entity of the value of its interest in the property involved. The absence of a definition of adequate protection in the Code coupled with the flexibility of Section 361(3) suggests that adequate protection may be shown in a variety of ways. A debtor may demonstrate adequate protection by proving the existence of, inter alia: (1) an equity cushion; (2) a third party guaranty; or (3) substitute collateral.

*In re Reading Tube Indus.*, 72 B.R. 329, 333 (Bankr. E.D.Pa. 1987) (internal quotation marks, citations, and ellipses omitted).

25.     Callidus's interest in its cash collateral is "adequately protected" within the meaning of section 361 and "preserved" within the meaning of section 506(c) because the cash collateral will be used to pay for preservation of the Debtors' assets. Preservation will allow the Debtors to more fully maintain the value of existing assets. Thus, using cash collateral to preserve the estates' assets as proposed under the Budget will result in maintaining the status quo and protect against diminution of estate asstes. *See McCombs Props. VI, Ltd. v. First Tex. Sav. Ass'n (In re McCombs Props. VI, Ltd.),* 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988) (finding that, by committing cash collateral to pay operating expenses and to improve and maintain real property, the debtor "substantially eliminated the risk of diminution" of the secured creditor's interest in cash collateral).

26.     Additionally, the secured creditors are adequately assured by the Debtors granting replacement and superpriotiy liens equal in value to the amount of cash collateral consumed.

27.     Bankruptcy Rule 4001(b) permits a court to approve use of cash collateral during the 15-day period following the filing of a motion only to the "extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Here, the Debtors require immediate access to the cash collateral.  If interim relief is not obtained, the Debtors will be unable to keep the utilities on and secure the Debtors' facilities.  As indicated above, the Debtors would be forced into a distressed liquidation, which would realize a very small portion of the Debtors' value, leaving the majority of creditors and interest holders unpaid.  Accordingly, the Debtors request that the Court authorize the Debtors to immediately use the cash collateral in the amounts set forth in the Budget,

pending a final hearing.  At the final hearing, the Debtors request that the relief requested herein be granted on a permanent basis.

## VI.  **NOTICE**

28.    Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) Callidus and its counsel; (iii) the twenty (20) largest unsecured creditors of each Debtor's respective estate; (iv) those persons who have formally appeared and requested notice in this case pursuant to Bankruptcy Rule 2002; and (v) the Internal Revenue Service and other governmental entities required to receive notice under the Bankruptcy Rules or the Local Rules.  The Debtors submit that no other or further notice need be provided.

## VII.  **PRAYER**

WHEREFORE, the Debtors respectfully request that this Court enter an Order granting the requested relief on an interim basis, and after a final hearing, granting it on a permanent basis, and such other and further relief as is just and proper.

Dated:  March 9, 2015

RESPECTFULLY SUBMITTED,

LANGLEY & BANACK, INC.
Suite 900, Trinity Plaza II
745 East Mulberry
San Antonio, TX  78212-3166
Telephone:  (210)-736-6600
Fax: (210) 735-6889
E-mail: gayers@langleybanack.com


By: /s/ R. Glen Ayers
R. GLEN AYERS
Texas Bar No. 01467500
DAVID S. GRAGG
Texas Bar No. 08253300
NATALIE F. WILSON
Texas Bar No. 24076779

PROPOSED ATTORNEYS FOR THE
DEBTORS AND
DEBTORS-IN-POSSESSION


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of March, 2015, a true and correct copy of the foregoing document was filed with the Court and served via US First Class Mail , postage pre-paid or electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, including the US Trustee and upon the parties listed on a separately filed certificate of service.


/s/ R. Glen Ayers
R. Glen Ayers