**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | |
|---|---|
| In re: § | |
| § | **CHAPTER 11** |
| **ESCO MARINE, INC., et al**[1] § | |
| § | **CASE NO. 15-20107** |
| **Debtors.** § | |
| § | Joint Administration Pending |

**OBJECTION OF CALLIDUS CAPITAL CORPORATION**
**TO DEBTORS' [MOTION FOR USE OF CASH COLLATERAL]**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Callidus Capital Corporation ("**Callidus**") states as follows in objection to Debtors' Motion for [Use of Cash Collateral]:

1.      The Debtors ceased operations in February 2015, laid off 200 employees without paying them, and are in default with their primary customer, the United States Navy. Callidus is the Debtors' primary secured lender and is owed approximately $31 million. The Debtors improperly exceeded their borrowing base by over $4 million by overstating their borrowing base reports, (Callidus believes the overstatements were intentionally false), and also, Callidus believes, by diverting funds away from the required blocked account and trying to sell certain of Callidus' collateral for pennies on the dollar after the Debtors' ceased operations without crediting the sales proceeds to Callidus as required by the loan agreements. The Debtors filed for bankruptcy to avoid a hearing for the appointment of a receiver scheduled on March 9, 2015 with the United States District Court for the Southern District of Texas, Brownsville Division (Civil Action No. 1:14-cv-00270).  See Doc. # 39, Emergency Motion for Appointment of Receiver

---

[1] Other affiliated debtors are Esco Metals, LLC (Case No. 15-20108); Esco Shredding, LLC (Case No. 15-20109); Texas Best Recycling, LLC (Case No. 15-20110); Texas Best Equipment, LLC (Case No. 15-20111), (collectively, with Esco Marine, Inc., the "**Debtors**")

(the "**Receiver Motion**") a copy of which, together with its exhibits, is attached as **Exhibit 1** and incorporated herein by reference.

2.       Callidus is willing to consider lending again to the Debtors to restart full operations if an operating trustee or independent management is appointed but will not do so with current management in place.  As detailed below, Callidus objects to the use of cash collateral because, among other things, it will not be adequately protected as its collateral will only be depleted and not replenished.

3.       Pursuant to the loan documents among Callidus, the Debtors and other parties (collectively, the "**Loan Documents**"), Callidus has a properly perfected, first priority security interest in substantially all assets of the Debtors, including Accounts and Inventory (as those terms are defined in the Uniform Commercial Code as adopted in the State of Texas).

4.       The Debtors defaulted on their obligations in the Loan Documents, including through the apparent diversion of Callidus' collateral, and on December 30, 2014, Callidus filed the above-referenced action in the United States District Court for the Southern District of Texas seeking injunctive relief to stop the diversion of collateral and enforcement of the Loan Documents.

5.       On February 16, 2015, the Debtors ceased operations and sent their employees home without their last two weeks of pay.

6.       On March 3, 2015, Callidus filed the Receiver Motion to put an end to the erosion and perhaps fraudulent diversion of Callidus' collateral and other financial misdeeds of Debtors' current management (including likely falsification of borrowing base reports), return the company to operational status and conduct a fair and open sales process as a going concern. The District Court scheduled a hearing on the Receiver Motion for March 9, 2015.  The Debtors

responded to the Receiver Motion by filing their respective bankruptcy petitions over the weekend.

7. The Debtors now seek to use Accounts, sell current Inventory (in a depressed commodity market) and use Callidus' cash collateral to fund payment of extraneous management, utility and insurance payments that are excessive and unnecessary for a company that is shut down. The current version of the Debtors' proposed budget lacks any detail on the nature of these payments.[2]

8. The Debtors' motion must be denied as it does not provide any protection, let alone adequate protection, to Callidus for the use of Callidus' Accounts and Inventory collateral. 11 U.S.C. 363(e); *In re Quality Bev. Co., Inc.* 181 B.R. 887, 896 (Bankr. S.D. Tex. 1995). The Debtors request to use Callidus' Accounts and Inventory collateral to fund the proposed budget. Yet, because the Debtors are shut down and not generating new or unencumbered assets to replace the cash collateral that it proposes to use, the Debtors cannot meet their burden of proving that Callidus' interest in cash collateral is being adequately protected. The budget as proposed offers nothing at all to Callidus for adequate protection, and, in fact, shows the Debtors intend to operate for the next three weeks at a cash deficit, using more cash then they expect to generate.

9. The Debtors have not put forth a proposal to resume operations to generate new and replacement collateral or otherwise achieve value. Even if the Debtors announce something on paper, they cannot compensate Callidus for the use of its Accounts and Inventory collateral by bare assertions that they will become operational or compensate Callidus in the future. *Resolution Trust Corp. v. Swedeland Development Group, Inc.* (*In re Swedeland Development*

---

[2] Counsel for Callidus has engaged in an intensive and ongoing dialogue with Debtors' proposed counsel to try and obtain the underlying information required to understand the Debtors' proposed budget, by as of the time of this pleading have been unsuccessful in obtaining all the necessary information.

*Group, Inc.*) 16 F.3d 552, 567 (3d Cir. 1994) ("Congress did not contemplate that a creditor could find its priority position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects.").

10. Furthermore, the Debtors seek to pay unnecessary expenses during this interim period.

11. Under Fed. R. Bankr. P. 4001(b)(2), an interim order "may authorize the use of **only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing**." Fed. R. Bankr. P. 4001(b)(2) (emphasis added).

12. The budget proposes unnecessary expenses for a company that is nonoperational. The Debtors seek to pay significant administrative costs together with significant utility and insurance costs which appear excessive for a company that is shut down. In particular, Callidus objects to the payment of senior management that Callidus believes directed the diversion of the Callidus collateral, falsified borrowing base reports and has otherwise shown that it is not fit to manage the Debtors. If the Court is inclined to allow some use of cash collateral, it should only do so at the bare minimum amount necessary to maintain the status quo (i.e., nonoperational status with no payments to senior management) until a final hearing may be held.

13. Callidus also requests permission to have (at its expense) its own security personnel on site to monitor Callidus' collateral and, also, to allow Duff & Phelps, the proposed independent receiver prior to this filing, unfettered access to monitor Debtors' expenditures and review the books and records to assess the possibility of resuming operations.

WHEREFORE, Callidus respectfully requests that this Honorable Court enter an order consistent with these objections.

Dated: March 10, 2015.

      Respectfully submitted,

**JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER, P.C.**

*/s/ Nathaniel Peter Holzer*
Shelby A. Jordan
Texas Bar No. 11016700
Nathaniel Peter Holzer
Texas Bar No. 00793971
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX 78401-0341
Telephone:    (361) 884-5678
Facsimile:     (361) 888-5555
sjordan@jhwclaw.com
pholzer@jhwclaw.com


**DICKINSON WRIGHT PLLC**

Michael C. Hammer
Michigan Bar No. P41705
350 S. Main Street, Suite 300
Ann Arbor, MI  48104
Telephone:    (734) 623-1696
Facsimile:     (734) 623-1625
MHammer@dickinsonwright.com

Kristi A. Katsma
Michigan Bar No. P53545
500 Woodward, Suite 4000
Detroit, MI  48226
Telephone:   (313) 223-3180
Facsimile:     (313) 223-3598
KKatsma@dickinsonwright.com

**ATTORNEYS FOR CALLIDUS CAPITAL CORPORATION**