

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

ENTERED
03/27/2015

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CHAPTER 11** |
| **ESCO MARINE, INC.**[1] | § | |
| | § | **CASE NO. 15-20107** |
| Debtors. | § | |
| | § | |
| | § | (Jointly Administered) |

**SECOND INTERIM ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363, 364 & 507 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 4001 & 9014 (I) AUTHORIZING INTERIM USE OF CASH COLLATERAL; (II) GRANTING POST-PETITION REPLACEMENT LIENS ; (III) GRANTING ADEQUATE PROTECTION; AND (IV) SCHEDULING A FINAL HEARING ON THE MOTION**

The Debtor having filed its *Emergency Motion For Interim and Final Orders Pursuant to 11 U.S.C. Sections 105, 362, 363, 364, & 507 and Federal Rules of Bankruptcy Procedure 2002, 4001, & 9014 (I) Authorizing Use of Cash Collateral; (II) Granting Post-Petition Replacement Lines (III) Granting Adequate Protection; and (IV) Scheduling a Final Hearing on the Motion* (the "**Motion**"), the Court having heard the Motion and entered the *Interim Order Pursuant to 11 U.S.C. Sections 105,361,362,364 & 507 and Federal Rules of Bankruptcy Procedure 2002, 4001 & 9014 (I) Authorizing Use of Interim Cash Collateral; (II) Granting Post-Petition Replacement Liens;(III) Granting Adequate Protection; and (IV)* (the "**Intitial Interim Order**"); the Court having held a hearing regarding the Motion and continuing the use of Cash Collateral on March 20, 2015 at 10 a.m., and being fully apprised on the premises, the Court hereby enters the following order granting continued limited use of cash collateral and granting replacement liens and superpriority unsecured claims as necessary to protect the interests of the first lien holder,

---

[1] The Debtors also include ESCO Metals, LLC; ESCO Shredding, LLC; Texas Best Recycling, LLC, and Texas Best Equipment, LLC. The corporate address for all debtors is 16200 Joe Garza Sr., Road, Brownsville, Texas 72521. Joint administration under the above style and case number has been ordered by the United States Bankruptcy Court on March 10, 2015. The use of the term "Debtor" shall refer to all debtors.

Callidus Capital Corporation ("**Callidus**"), as follows:

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. To continue to preserve the value of their assets on a post-petition basis, the Debtors need to use funds from operations that constitute the Cash Collateral (as defined below) of Callidus. Notice of this Motion is appropriate, for the primary senior secured creditor has had adequate notice of the Debtors' proposed Motion and proposed budget, as well as the Office of the United States Trustee, and other interested parties who have filed an appearance in this matter.

### A. JURISDICTION AND VENUE

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. The relief requested herein is authorized under sections 105, 361, 362, 363, and 364 of the Bankruptcy Code, Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Rules.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

### B. BACKGROUND

5. ESCO Marine, Inc. ("**ESCO Marine**") is a Delaware corporation doing business in Texas. It is an 88 acre full service marine yard and recycling operation located on approximately 3,300 feet of frontage on the deepwater Brownsville ship channel in Brownsville, Texas. ESCO Marine and the related Debtors specialize in recyclable metals and the environmentally proper dismantling and recycling of obsolete maritime vessels.

6. Callidus made various pre-petition loans to the Debtors. The Debtors pledged all of their assets as collateral to secure those loans (the "**Collateral**"). The validty and perfection of Callidus' lien(s) and the amount of debt claimed by Callidus, for purposes of this Interim

Order only, is taken as correct. The amount of the Callidus accrued debt with interest and fees is asserted by Callidus to exceed the amount of $28 million.

7. For purposes of this Order, the following constitute "**Cash Collateral**" of Callidus within the meaning of section 363(a) of the Bankruptcy Code: (a) all of the Debtors' funds (including any funds subject to a right of setoff in favor of Callidus, any funds on deposit or held by the Debtors or maintained in any account subject to a control agreement with Callidus and any proceeds of the Collateral) as of the Petition Date, and (b) all cash proceeds of Collateral received after the Petition Date.

8. The Debtors urgently require the use of Callidus' Cash Collateral to maintain the status quo pending a final hearing on the Motion. The Court is ordering use of the Callidus Cash Collateral only for the purposes and only in the amounts set forth in the attached Budget. Without immediate access to the Cash Collateral at this critical time, the Debtors will be unable to continue to maintain and preserve assets.

9. The Debtors do not have sufficient cash on hand to meet their immediate operating needs.

10. The Debtors have shown that there exist outstanding receivables that can be collected to generate the funds necessary for the Debtors to preserve their estates. These receivables are all pledged as Collateral for Callidus' pre-petition loans. The Debtors shall use good faith efforts to collect the receivables. Callidus may fund payments under the Budget pursuant to the Callidus Loan Agreement and such funding shall be added to the Debtors' obligations owing to Callidus and are entitled to the protections of this Order.

11. The receivables – pre-petition – were required to be deposited in a lock-box account which is swept by Callidus, but some funds were diverted by the Debtors. Debtors

request use of and access to funds which were deposited in the lock-box post-petition.

12.     The Debtors have agreed to and will be required to give Callidus as adequate protection for the use of its Cash Collateral post-petition replacement liens for all the value of the Cash Collateral consumed (the "**Adequate Protection Liens**") and a super-priority administrative claim for all of its Cash Collateral used by the Debtors, with such Adequate Protection Liens and claims being superior to all other unsecured claims in the case, as provided by 11 U.S.C. §364(c).  Callidus is entitled to and granted Adequate Protection Liens in the Adequate Protection Collateral.[2]

13.     The Debtors' use of Callidus' Cash Collateral will be limited to the expenditures and amounts listed in the Budget that was approved by the Court at the hearing and which is attached to this Order as Exhibit A.

14.     That Budget reflects payment of:

    a. Office staff and persons employed in the business of the Debtors, who are currently necessary for the maintenance of security, security clearance and the status quo of a salvage or scrap yard that is no longer operating, including limited management, financial, environmental, safety, maintenance, and security personnel.

    b. Duff & Phelps under the terms of the *Agreed Interim Order Regarding Callidus Capital Corporation's Emergency Motion for Appointment of Chapter 11 Operating Trustee, or, in the Alternative, to Require Debtors to Retain an Independent Chief Restructuring Officer*.

    c. The Court finds the amounts on the attached Budget reasonable and the uses reasonable.

---

[2] The "**Adequate Protection Collateral**" is comprised of all the assets of the Debtors.

      d.    Callidus has submitted a prima facie case that it is secured by appropriate liens filed in Texas and Delaware securing its claims in Cash Collateral that the Debtors have proposed to use.

## II.    RELIEF REQUESTED

15.    The Debtors have requested interim relief for a period of not more than 14 days in order to use Cash Ccollateral as proposed in the Budget.

16.    Callidus objected to the use of its Cash Collateral for certain items requested by the Detbors.

17.    Accordingly, the Budget is modified as set forth in the record of the hearing held on March 20, 2015. Specifically, on an interim basis, the Debtors may use Callidus' Cash Collateral to make the following payments:

      a.    Payroll for the Chief Executive Officer as necessary to maintain security clearances, Vice President/Contract Administrator, a production manager, Vice President of Security, Vice President of Finance, 10 security guards, 2 accountants/administrators, Health/Safety/Environmental Manager and 2 production operators.

      b.    Fees and expenses of Duff & Phelps.

      c.    Utilities.

      d.    Miscellaneous bank charges/payroll service fees.

      e.    Insurance payments at the discretion and consent of Callidus, even if such amounts are not included in the Budget.

18.    The use of the Cash Collateral will be limited to the items and amounts set out on the amended two-week budget attached hereto as **Exhibit A**, for the period of fourteen days. Replacement liens and superiority claims are to be granted to Callidus.

19. The Debtors have requested a hearing on entry of other, further, or permanent orders on April __, 2015 at 10:00 a.m. in the Bankruptcy Court for the Southern District of Texas, located at United States Courthouse, 1133 North Shoreline Boulevard, Suite 124, Corpus Christi, TX 78401.

## ORDERS

20. Pursuant to Rule 4001(c) of the Bankruptcy Rules and sections 361, 363, 364(c) and 364(d) of the Bankruptcy Code the relief requested is denied in part and granted in part on an interim basis pending final approval of the Motion by this Court, at a hearing to be held on April __, 2015, all as required under Rule 4001(c).

21. **Use of Cash Collateral**. The Debtors are hereby authorized to use Cash Collateral during the period of March 20, 2015 through April 3, 2015 (the "**Second Interim Period**") subject to the conditions and limitation set forth in this Order. Debtors shall only use that amount of Cash Collateral necessary to avoid immediate and irreparable harm to the estate to pay the ordinary and reasonable expenses of a business that is not operating and solely as identified in and in accordance with the Budget. No Cash Collateral may be used by the Debtors to pay any professional or other fees or expenses of any party in interest to initiate or prosecute any adversary proceeding (a) to challenge the validity, perfection or enforceability of any liens or security interests securing the pre-petition loans of Callidus (or to undertake any discovery or investigation of such claims), or (b) to assert any claims or causes of action against Callidus or its agents, advisors and employees (or to undertake any discovery or investigation of such claims).

22. **Adequate Protection Liens**. The secured lender, Callidus, is hereby granted a continuing valid, perfected and first-priority enforceable lien and security interests (the Adequate

Protection Liens) in all assets of all of the five Debtors (the Adequate Protection Collateral), including (i) all property owned by any of the Debtors as of the Petition Date and proceeds therefrom, including the Saratoga contract and other MARAD and Navy contracts and proceeds therefrom, excluding only such assets which are encumbered by a properly valid, propertly perfected, enforceable, unavoidable, and otherwise senior to the pre-petition liens in favor of Callidus, and in such assets Callidus shall hold a lien junior only to such senior pre-petition lien, and (ii) all property which becomes part of the Debtors' estates on or after the Petition Date and proceeds therefrom, and the authority to record any such lien as it shall deem appropriate, but it is not required to record such a lien in order to perfect its claim.

23. The Adequate Protection Liens shall be valid and enforceable against any trustee appointed in any of the Debtors cases, or any prior or subsequent proceeding affecting the Debtors, including any conversion of any of these cases to a case under Chapter 7 of the Bankrutpcy Code.

24. Unless otherwise agreed to by Callidus, the liens and security interests granted to Callidus pursuant to this Order shall not be modified, altered, or impaired in any manner, including, without limitation, by any other financing or extensions of credit or incurring of debt of Debtors pursuant to Bankruptcy Code Section 364 or otherwise.

25. All funds collected by the Debtors shall be immeditaly deposited in the Callidus lock-box account established by the Debtor's pre-petition (the "**Callidus Lock-Box Account**") to be used solely for the purposes and in the amounts set forth in the Budget. Callidus has a lien and security interest in all funds placed in the Callidus Lock-Box Account.

26. **Bank Authorization**. All banks with which the Debtors maintain Bank Accounts as of the commencement of this Chapter 11 case are authorized to continue to

maintain, service, and administer such Bank Accounts as accounts of the Debtors as debtors-in-possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks, drafts, wire transfers, account sweeps, or other debits drawn on any of the Bank Accounts after the Petition Date by the holders or makers thereof, to the extent funds are available as the case may be. This authorization specifically permits Wells Fargo to honor sweeps by Callidus of the Callidus Lock-Box Account at Wells Fargo Bank. Nothing contained herein shall authorize any such bank to honor any check issued or dated prior to the date of the commencement of the Debtors' Chapter 11 cases, except as otherwise provided by further order of this Court; provided, however, that y such bank may rely on the representations of the Debtors with respect to which any check drawn or issued by the Debtor prior to the Bankruptcy petition date should be honored pursuant to an order of this Court and that such bank shall have no liability to any party for relying on the representations of the Debtors as provided for herein.

27.     **Collateral Rights**.  The Adequate Protection Liens of Callidus are, and are deemed to be, valid, enforceable, and perfected liens, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code, or any other relevant law or regulation of any jurisdiction) no further notice, filing, possession, control, or other act shall be required to effect such perfection; provided, however, that Callidus is hereby authorized (and, to the extent the automatic stay applies, is granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to so do), but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens granted to them

hereunder. The Debtors shall execute and deliver to Callidus all such agreements, financing statements, instruments, and other documents as Callidus may request to evidence, confirm, validate, or perfect the liens granted pursuant hereto. If Callidus shall, in its sole discretion, choose to require the execution of and/or file (as applicable) such financing statements, control agreements, notices of liens, and other similar instruments and documents, all such financing statements, control agreements, notices of liens, or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded at the time and on the date of the Petition Date. A photocopy of this Order may, in the discretion of Callidus, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments. Each and every federal, state, and local government agency or department may accept the entry by this Court of this Interim Order as evidence of the validity, enforceability, and perfection on the Petition Date of the liens granted herein to or for the benefit of Callidus.

28.  **Good Faith Protections**. Callidus shall be deemed to allowed the use of Cash Collateral as provided herein in good faith and shall be entitled to the protections of Bankruptcy Code 363(m).

29.  **Subsequent Reversal or Modification**. Based on the findings set forth in this Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the use of Cash Collateral contemplated by this Order, in the event that any or all of the provisions of this Order, are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, no such modification, amendment, or vacation shall affect the validity, enforceability, or priority of any lien or claim authorized or created hereby or thereby including, without limitation, any Adequate Protection Lien or Adequate Protection Priority Claim incurred

hereunder or thereunder. Notwithstanding any such modification, amendment, or vacation, any Adequate Protection Obligations incurred and any claim or lien granted to Callidus hereunder arising prior to the effective date of such modification, amendment, or vacation shall be governed in all respects by the original provisions of this Order, and Callidus shall be entitled to all of the rights, remedies, privileges, and benefits, including the liens and priorities granted herein and therein, with respect to any such Adequate Protection Obligations.

30.     **Survival**.  The obligations of the Debtors in respect of the Adequate Protection Obligations, and the claims and liens granted to or for the benefit of Callidus pursuant to this Order shall not be discharged by the entry of an order (i) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (ii) to the extent authorized by applicable law, dismissing any of the Chapter 11 cases, (iii) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (iv) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court.

31.     **Reporting Requirements**.  The Debtors shall provide Callidus the following information during the period of this Order:

    a.  A thirteen week cash forecast on or before March 31, 2015;

    b.  On the third business day of the week, a report, in form and with supporting information in detail reasonably requested by Callidus, reconciling the Debtors' sources, uses and disbursements of cash for the week most recently ended;

    c.  As and when due under the Callidus Loan Agreement, all of the financial information and related reports, documents and analysis required under the terms of the Callidus Loan Agreement;

Case 15-20107   Document 84   Filed in TXSB on 03/27/15   Page 11 of 13

d.  All other financial statements, accounts receivable and accounts payable agings, inventory summaries, cash receipts and disbursement reports and other information reasonably requested by Callidus from time to time;

e.  Written notice of the occurrence of any event or matter which has resulted or will result in a material adverse change in Debtors' business, assets, operations or financial condition;

f.  The Debtors shall provide Callidus and any of its agents, advisors, appraisers, auditors and employees with reasonable access during normal business hours to all places of business, books and records, officers and employees of the Debtors.

32. **Termination of Debtors' Ability to Use Cash Collateral.** The Debtors ability to use Cash Collateral during the Second Interim Period will terminate immediately upon the occurrence of any of the following events, with no further notice or action by Callidus or the Court required:

a.  11:59 p.m. on April 3, 2015;

b.  The Debtors fail to comply in any material respect with any of the terms of this Order, including disbursements or payments that are not specifically identified in the Budget;

c.  (1) Any of the Debtors' cases are dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; (2) the Debtors file a motion, or other pleading, seeking to dismiss any of these cases or convert any case to arising under Chapter 7 of the Bankruptcy Code; or (3) a trustee under Chapter 11 of the Bankruptcy Code, a responsible officer or examiner shall be appointed or

elected in any of these cases except as consented to by Callidus;

d. (1) the Debtors assert in any pleading filed in any court that any material provision of this Order is not valid and binding for any reason; or (2) any material provision of this Order shall, for any reason, cease to be valid and binding without the prior written consent of Callidus; or

e. The Debtors shall fail to maintain the Collateral.

33. **Other Protections**. The Debtors' use of Callidus' Cash Collateral shall generate a super priority administrative claim of Callidus earning interest at the pre-petition non-default rate.

34. Callidus is also granted a super-priority administrative claim as additional adequate protection for all of its Cash Collateral used by the Debtors as provided in the Bankruptcy Code and Rules.

35. Callidus does not consent to a surcharge by Debtors or any subsequently appointed trustee under 11 U.S.C. Section 506(c) and nothing in this Order, Callidus' approval of this Order, or any other writing, action, or inaction is to be interpreted to be this consent.

36. This Interim Order is without prejudice to the rights of Callidus to seek a modification of this Interim Order, including a request for additional adequate protection or the termination of the Debtors' right to use Cash Collateral, after notice and hearing, including a hearing on an emergency basis.

37. There shall be a further hearing on entry of other, further, or permanent orders on April 16th, 2015 at 10:00 a.m. in the Bankruptcy Court for the Southern District of Texas, located at United States Courthouse, 1133 North Shoreline Boulevard, Suite 124, Corpus Christi, TX 78401.

38. The Debtors shall provide their proposed budget for any further expenditures to Callidus and its counsel on or before March 31, at 5 pm Central time.

Dated: 3/25/2015

Richard S. Schmidt
United States Bankruptcy Judge