UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CHAPTER 11** |
| **ESCO MARINE, INC.**[1] | § | |
| | § | **CASE NO. 15-20107** |
| **Debtors.** | § | |
| | § | |
| | § | **(Jointly Administered)** |

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**DEBTOR'S EMERGENCYMOTION FOR INTERIM ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363, 364 & 507 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 4001 & 9014: (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING AND UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING ON THE <u>MOTION</u>**

COMES NOW Esco Marine, Inc. ("Debtor") and files this its *Emergency Motion For*

---

[1] The Debtors also include ESCO Metals, LLC; ESCO Shredding, LLC; Texas Best Recycling, LLC, and Texas Best Equipment, LLC. The corporate address for all debtors is 16200 Joe Garza Sr., Road, Brownsville, Texas 72521. Joint administration under the above style and case number has been ordered by the United States Bankruptcy Court on March 10, 2015. The use of the term "Debtor" shall refer to all debtors.

*Interim and Final Orders Pursuant to 11 U.S.C. Sections 105, 362, 363, 364, & 507 and Federal Rules of Bankruptcy Procedure 2002, 4001, & 9014: (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Granting Granting Adequate Protection; and (III) Scheduling a Final Hearing on the Motion* (the "**Motion**"), and in suport theereof, shows the Court as follows:

## I.   JURISDICTION, VENUE, AND BACKGROUND

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. The relief requested herein is authorized under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code, Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Rules.

4. ESCO Marine, Inc. ("**ESCO Marine**") is a Delaware corporation doing business in Texas. It is an 88 acre full service marine yard and recycling operation located on approximately 3300 feet of frontage on the deepwater Brownsville ship channel in Brownsville, Texas. ESCO Marine and the related Debtors specialize in recyclable metals and the environmentally proper dismantling and recycling of obsolete maritime vessels.

5. On March 7, 2015 (the "**Petition Date**"), Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code in this Court. The Debtor remains in possession of its property and is operating its business as a debtor-in-possession, pursuant to section 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed. No creditors' committee has been appointed.

6. This case has been designated as a Complex Chapter 11 Case, but it is not a Fee

Guideline Case under the criteria set forth the by the office of the United States Trustee.

### The Pre-Petition Loans & Pre-Petition Collateral

7. Callidus made various pre-petition loans to the Debtors and has allowed use of Cash Collateral and limited funding pending approval of this Order pursuant to the *Interim Order Pursuant To 11 U.S.C. Sections 105, 361, 362, 363, 364 & 507 And Federal Rules Of Bankruptcy Procedure 2002, 4001 & 9014 (I) Authorizing Interim Use Of Cash Collateral; (II) Granting Post-Petition Replacement Liens; (III) Granting Adequate Protection; And (IV) Scheduling A Final Hearing On The Motion*; *Second Interim Order Pursuant To 11 U.S.C. Sections 105, 361, 362, 363, 364 & 507 And Federal Rules Of Bankruptcy Procedure 2002, 4001 & 9014 (I) Authorizing Interim Use Of Cash Collateral; (II) Granting Post-Petition Replacement Liens; (III) Granting Adequate Protection; And (IV) Scheduling A Final Hearing On The Motion;* and *Third Interim Order Pursuant To 11 U.S.C. Sections 105, 361, 362, 363, 364 & 507 And Federal Rules Of Bankruptcy Procedure 2002, 4001 & 9014 (I) Authorizing Interim Use Of Cash Collateral;(II) Granting Post-Petition Replacement Liens;(III) Granting Adequate Protection; And (IV) Scheduling A Final Hearing On The Motion* (collectively, the "**Cash Collateral Orders**".

8. For purposes of this Order, the following constitute "**Cash Collateral**" of Callidus within the meaning of § 363(a) of the Bankruptcy Code: (a) all of the Debtors' funds (including any funds subject to a right of setoff in favor of Callidus, any funds on deposit or held by the Debtors or maintained in any account subject to a control agreement with Callidus and any proceeds of the Collateral) as of the Petition Date, and (b) all cash proceeds of Collateral received after the Petition Date.

9. The prepetition loans and other obligations arising under the Loan Agreement

among the Debtors and Callidus, including interest, costs, fees and expenses (collectively, the "**Prepetition Indebtedness**") are evidenced by certain revolving and term notes (collectively, the "**Prepetition Notes**") and other collateral documents. The documents, instruments and agreements executed in connection with the prepetition financing arrangements among Callidus the Debtors and certain guarantors are identified collectively as the "**Prepetition Loan Documents**". Capitalized terms not defined in this Order shall have the meanings set forth in the Prepetition Loan Documents.

10. The Prepetition Indebtedness is secured by all assets of the Debtors (collectively, the "**Collateral**") as more fully described in (i) the Security Agreement dated June 30, 2014; (ii) the Leasehold Deed of Trust Security Agreement – Financing Statement dated June 30, 2014 securing the Debtors' interest in real property leases located in the Port of Brownsville; and (iii) the Deed of Trust Security Agreement – Financing Statement dated June 30, 2014 securing the Debtors' interest in real property located in Donna, Texas.

## The Proposed Post-Petition Loans

11. To continue to preserve the value of their assets on a post-petition basis, the Debtors need to use funds from operations that constitute the Cash Collateral (as defined below) of Callidus and borrow funds in the principal amount of not more than $850,000.00 on the terms set forth in the Prepetition Loan Documents (the "**Postpetition Loan**"). Notice of this Motion is appropriate, for the primary senior secured creditor has had adequate notice of the Debtors' proposed Motion and proposed budget, as well as the Office of the United States Trustee, and other interested parties who have filed an appearance in this matter.

12. The Postpetition Loan will be governed by the Prepetition Loan Documents and this Order, including the following:

a. Interest on the Postpetition Loan will accrue at the rate of 18% per anum and shall be payable as set forth in the Loan Agreement. The postpetition credit extended by Callidus to Debtors, postpetition interest, professional fees and other expenses owing by Debtors to Callidus is identified as the "**Postpetition Indebtedness**". The Prepetition Indebtedness and the Postpetition Indebtedness is collectively referred to as the "**Indebtedness**". This Order and all other documents executed in connection with the Postpetition Indebtedness shall be identified, together with the Prepetition Loan Documents, as the "**Loan Documents**". To the extent any terms of this Order contradict the Prepetition Loan Documents, this Order shall govern.

b. Callidus may make, in its sole discretion, postpetition advances, provided that the principal amount of such requested postpetition advance and all other postpetition advances outstanding as of such date, shall not exceed the maximum amount of the Postpetition Loan.

c. Debtors may only use the funds borrowed under the Postpetition Loan to fund payment of expenses as and when budgeted, measured weekly for total budgeted disbursements only, with an adverse aggregate variance of up to 5% (which variance may be waived by Callidus in its sole discretion), in the budget attached as Exhibit A (the "**Budget**"). The Budget may be revised only upon consent of Callidus.

d. Debtors' ability to request advances under this Order shall terminate upon the earlier of (i) two weeks after entry of this order; or (ii) a default by Debtors of any material provision of this Order (each, a "**Termination Event**").

e. The Debtors shall conduct a sales process, in consultation with Callidus, for the sale of assets or stock and shall file an application to employ an investment banker (the "**Investment Banker**") approved by Callidus within three (3) business days of entry of this Order (unless a later date is requested by Callidus) and shall prosecute such application in good faith, with a sales process schedule agreed upon by Callidus after consultation with the Investment Banker.

f. The Debtors shall not recommence dismantling and recycling operations without the prior approval of Callidus.

g. The Debtors shall not sell inventory on hand and/or any other assets without the prior approval of Callidus.

h. Callidus is not waiving or releasing the Guarantors from any claims it may have against them by consenting to this Order and providing the financing contemplated herein.

i. Debtor shall provide Callidus, its attorneys, accountants, employees and agents with access to Debtors' books and records for the purpose of audit,

examination, and inspection thereof, and observation of the Collateral and Debtors operations, and shall provide all reasonable information and documents requested by Callidus or its designated agents. Callidus, its attorneys, accountants, employees and agents shall have the right to enter Debtors' business premises during reasonable business hours for the purpose of examining and appraising the Collateral. Debtor shall pay the cost of any audit requested or performed by Callidus.

j. Debtors shall seek approval to retain Duff & Phelps as its financial advisor prior to entry of this Order and shall continue to retain Duff & Phelps during the pendency of this case absent approval by Callidus of Duff & Phelps replacement.

k. Within seven days of the entry of this Order, Debtors shall enter into employment agreements satisfactory to Callidus with the Vice Presidents of Contracts/Administration and Environmental matters.

l. Debtors shall request security clearance a proposed Chief Restructuring Officer recommended by Callidus ("**Proposed CRO**") as follows:

   (i) Within one business day of direction by Callidus identifying the Proposed CRO, Debtors shall cause their facility security officer to fill out an investigation request through the Joint Personnel Adjudication System and simultaneously create a login for the Proposed CRO in the online system called Electronic Questionnaires for Investigations Process ("**E-Tip**").

   (ii) Upon receipt of signature pages from the Proposed CRO, the security officer shall immediately scan and upload the SF-86 form electronically through E-Tip.

   (iii) Within one (1) business day of receipt of interim "SECRET" security clearance for the Proposed CRO, Debtors shall submit a motion to appoint him/her as their Chief Restructuring Officer with full authority to make all decisions for the Debtors. Upon entry of an order appointing a Chief Restructuring Officer, Andrew Levy shall remove himself as Chief Executive Office of the Debtors and shall have no further employment or decision making authority at the Debtors, except as a director of the Debtors; provided, however, Mr. Levy shall not have authority to and is prohibited from, in any way, removing the Chief Restructuring Officer, interfering with, taking contrary actions to, and/or disputing any decision, duty, direction and/or action of the Chief Restructuring Officer so long as such Chief Restructuring Officer remains in place over the Debtors.

  m. Debtors shall supply financial information and information related to the Collateral as required by the Loan Documents and as requested by Callidus. In addition to the requirements under the Loan Agreement, Debtors shall deliver to Callidus:

    (i) a weekly cash flow statement, comparing actual receipts and disbursements to the projected receipts and disbursements set forth in the Budget;

    (ii) a weekly report on metal prices;

    (iii) within seven days of the date of this Order, an account receivable listing and action plan to collect accounts, including enforcement action satisfactory to Callidus;

    (iv) within seven days of the date of this Order, a cost and projected revenue analysis of all marine vessels, together with a timeline for completion of dismantling;

    (v) as and when filed, all reports and other documents and pleadings filed by Debtors with the Bankruptcy Court or the Office of the U.S. Trustee;

    (vi) weekly progress reports relating to the sales process; and

    (vii) any other reporting reasonably requested by Callidus.

13. The Postpetition Indebtedness shall be secured by a first and paramount security interest and lien, superior to all other creditors and claimaints of the Debtors' estates, in all of the property of Debtor, whether arising preptition or postpetition, pursuant to Bankruptcy Code §364(d)(1) and § 364 (c)(2) (collectively, the "**Postpetition Collateral**" and identified together with the Prepetition Collateral as the "**Collateral**"), including without limitation: (a) all of the following, whether now owned or existing or hereafter created or acquired, wherever located, together with all additions and accessions and all proceeds and products thereof: all accounts, accounts receivable, instruments, documents, drafts, notes, acceptances, chattel paper, general intangibles (including, without limitation, all goodwill, copyrights, patents, trademarks, trade names and franchises), software, contract rights, rights to payment evidenced by chattel paper, documents or instruments, deposit accounts, rights to payment for money or funds advanced or

sold, causes of action, choses in action, commercial tort claims, letters of credit, letter of credit rights, supporting obligations, investment property or other property in possession or control of Callidus, all personal property received as returns and repossessions, all other forms of receivables, tax refunds of any form, all inventory, including all goods held for sale and documents evidencing inventory, all equipment (together with spare and repair parts, special tools and equipment and replacements), the proceeds of credit and other forms of insurance coverage of any of the foregoing and all books and records pertaining to all of the foregoing; and (b) all interests in real property and fixtures; provided, however, that (i) if Debtor's interest in any of the foregoing property as of the Petition Date was encumbered by a valid, binding and unavoidable lien senior to the prepetition lien held by Callidus and not subject to a subordination agreement in favor of Callidus, pursuant to §364(c)(3), the lien on that property granted to Callidus under this Order shall be junior to such existing senior lien only, and (ii) the lien granted to Callidus is subject to any unavoidable prepetition lien in favor of Callidus. Callidus is also granted a security interest and lien in the Postpetition Collateral to serve as adequate protection for the Prepetition Indebtedness, provided, however, that such lien in assets that were not encumbered prepetition (as opposed to replacement collateral) shall be junior to the lien granted to secure the Postpetition Indebtedness.

14. The Indebtedness shall have priority under § 364(c)(1) of the Code and § 507(b) of the Code over all administrative expenses incurred in this Chapter 11 proceeding of the kind specified in § 503(b) or § 507(b) of the Code and over any and all administrative expenses or other claims arising under §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code (the "**Superpriority Claims**"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or

attachment, which Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve-Out (as defined below) to the extent specifically provided for herein. The foregoing provision shall not restrict Debtors' payment of administrative expenses, including professional fees, provided, that such expenses are in the Budget and Debtors are not then, and will not as a result of such payment be, in default under this Order or the Loan Documents.

15. The security interest and lien granted to Callidus under this Order shall be evidenced by the entry of this Order, and except as otherwise provided herein, shall be deemed to be first, valid and perfected as against all third parties upon entry of this Order, without regard to applicable federal, state or local filing and recording statutes, as of the date of the filing of this case, provided, however, that Callidus may take such steps as it deems appropriate to comply with such recording statutes and Debtors shall execute and deliver such additional documents and shall take any and all additional action to comply with such recording statutes as Callidus may request. At Callidus' discretion, it may attach this Order to financing statements bearing Callidus' name as the creditor and file them with any state or local office to further evidence the liens granted hereby without the signature of Debtors.

16. All cash and cash equivalents, and the proceeds of all Collateral (subject to the Carveout), which are now in or hereafter come into Debtors' possession shall be applied by Callidus to the Indebtedness as Callidus as allowed under the Prepetition Loan Documents and Callidus is specifically authorized to apply any proceeds of Collateral to the Prepetition Indebtedness until paid in full prior to application to the Postpetition Indebtedness.

17. Callidus' security interests in the Collateral and Superpriority Claims will be subject to payment of the following (the "**Carve-Out**"):

a. (i) all fees required to be paid to the clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930; and (ii) accrued but unpaid fees and expenses of professionals retained by the Debtors and allowed by the Court under §§ 328, 330 and 331 of the Bankruptcy Code (such allowed fees and expenses, "**Professional Fees**"), in an amount not to exceed $20,000 (the "**Professional Fees Carve-Out Amount**"); *provided* that (x) the Professional Fees Carve-Out Amount shall not be reduced by the payment of Professional Fees allowed by the Court under §§ 328, 330 and 331 of the Bankruptcy Code at any time prior to a Termination Event and any payments of allowed Professional Fees after a Termination Event has occurred shall reduce the amount of the Professional Fees Carve-Out Amount by the amount of any such payment. In no event shall any of the Carve-Out be used to pay any fees or expenses of any person retained in a chapter 7 case under §§ 326, 327 or 328 of the Bankruptcy Code. Notwithstanding the foregoing, no portion of the Carve-Out and no portion of any amounts approved for payment prior to a Termination Event shall be utilized in a manner prohibited under this Order.

b. No portion of the Postpetition Loan, the Collateral, the Cash Collateral, or the Carve-Out shall be used or be available to pay any fees, disbursements, costs or expenses incurred by any party in connection with: (i) challenging the amount, extent, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations under the Loan Documents, or the security interests and liens of Callidus in respect thereof; or (ii) the investigation (including discovery proceedings), assertion, initiation or prosecution of any other claims, causes of action, adversary proceedings or other litigation against Callidus.

c. Nothing herein shall impair the right of any party in interest in the Bankruptcy Cases to object to the reasonableness of any of the fees, expense reimbursement or other compensation described in this Paragraph 29.

18. Debtors shall pay all reasonable fees and out-of-pocket disbursements incurred by Callidus, in any way arising from or in connection with this Order, the Loan Documents or the Indebtedness, including, without limitation, the reasonable fees of counsel for Callidus for the preparation, examination and approval of this Order, for the payment of all fees and out-of-pocket disbursements incurred by Callidus, including reasonable attorney fees incurred by Callidus, in any way arising from or in connection with any action taken by Callidus as holders of the Prepetition Notes, the Cash Collateral Orders and this Order to monitor, advise, enforce or collect the Indebtedness, or enforce any obligations of Debtors or any other party under this

Order, the Loan Documents or any other document or agreement arising from or relating to the business relationship among Callidus and Debtors, or otherwise securing the Indebtedness, including any actions to lift the automatic stay or otherwise in any way participate in this bankruptcy proceeding. Debtors shall also be responsible for such fees and disbursements of Callidus for any defense of any litigation instituted against Callidus arising from or relating to the Indebtedness, this Order, the Loan Documents or the business relationship among Callidus and Debtors. All of these expenses and fees shall be part of the Postpetition Indebtedness. Payment of such fees shall be made on demand, but not less frequent than monthly. Notwithstanding that attorney fees for counsel for Callidus are in the Budget, such budgeted amount is for planning purposes only and is not a cap on such fees and expenses.

19. Callidus' rights and interests shall further be protected as follows:

   a. All Collateral shall be free and clear of all liens, claims and encumbrances, except for those liens, claims and encumbrances expressly permitted under this Order and the Loan Documents.

   b. In no event shall Callidus be subject to the equitable doctrine of "marshaling", "equitable subordination", or any similar doctrines with respect to the Collateral. The failure of Callidus to seek relief or otherwise exercise or enforce its rights and remedies under the Loan Documents or this Order shall not constitute a waiver of Callidus' rights or remedies hereunder, thereunder or otherwise.

   c. Except to the extent of the Carve-Out, no costs or expenses of administration which have been or may be incurred in these proceedings (including any conversion of these proceedings under § 1112 of the Code, or any other related proceedings), and no priority claims are, or will be, prior to or on a parity with the claims of Callidus arising out of the Indebtedness, or with the security interest of Callidus in the Collateral, and no such cost or expenses of administration shall be imposed against Callidus, its claims or its Collateral under § 506(c) or § 552 of the Code or otherwise, without the prior written consent of Callidus and no such consent shall be implied from any other action, inaction, or acquiescence by Callidus.

   d. In addition to the Termination Events set forth in Paragraph 24(d), unless all Indebtedness shall have been indefeasibly paid in full, it shall constitute a Termination Event if there is entered (i) an order modifying this Order without the prior written consent of Callidus, and no such consent shall be implied by any

other action, inaction or acquiescence by Callidus, or (ii) an order converting or dismissing any of the bankruptcy cases. If an order dismissing any of the bankruptcy cases under § 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (A) the security interests, liens and the Superpriority Claims granted to Callidus pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all Indebtedness shall have been indefeasibly paid and satisfied in full (and that such security interests, liens and Superpriority Claims shall, notwithstanding such dismissal, remain binding on all parties in interest), (B) the other rights under this Order shall not be affected, and (C) this Court shall retain jurisdiction, notwithstanding such dismissal and to the fullest extent permitted by law, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph.

e. If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity of any Indebtedness incurred prior to the actual receipt of written notice by Callidus of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any lien, or the priority thereof authorized or created hereby or pursuant to the Loan Documents or this Order. Notwithstanding any such reversal, modification, vacatur or stay, any use of Cash Collateral, or Indebtedness incurred by the Debtors to Callidus before the actual receipt of written notice by Callidus of the effective date of such reversal, modification, stay or vacatur shall be governed in all respects by the original provisions of this Order, and Callidus shall be entitled to all the rights, remedies, privileges and benefits granted in §§ 363(m) and 364(e) of the Bankruptcy Code, this Order and pursuant to the Loan Documents, with respect to all uses of Cash Collateral and Indebtedness.

f. Except as expressly provided in this Order or in the Loan Documents, the liens, security interests, Superpriority Claims and all other rights and remedies of Callidus granted by the provisions of this Order and the Loan Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the bankruptcy cases to a case under chapter 7, dismissing any of the bankruptcy cases, or terminating the joint administration of these bankruptcy cases, or (ii) the entry of an order confirming a Chapter 11 plan in any of the bankruptcy cases. The terms and provisions of this Order and the Loan Documents shall continue in these bankruptcy cases, in any successor cases if these bankruptcy cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the liens, security interests, the Superpriority Claims and all other rights and remedies of Callidus granted by the provisions of this Order and the Loan Documents shall continue in full force and effect until the Indebtedness is indefeasibly paid in full in cash.

20. No borrowings under the Loan Documents, Collateral (including Cash Collateral) or the Carve-Out may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under this Order or the Loan Documents, or the liens, security interests and/or claims granted under this Order or the Loan Documents; (b) assert any claims, defenses or causes of action against Callidus or its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) oppose the Callidus' assertion, enforcement or realization on the Collateral or Cash Collateral in accordance with the Loan Documents and this Order; (d) seek to modify any of the rights granted to Callidus hereunder or under the Loan Documents, without Callidus' prior written consent; or (e) unless such payments are approved by an order of this Court and otherwise permitted by the Loan Documents and the Budget, pay any amount on account of any claims arising prior to the Petition Date.

21. Debtors and all parties receiving notice of the Order shall have no claim, cause of action or defense on account of Callidus' exercise of the foregoing rights. Debtors acknowledge that Callidus has not waived by entering into this Order, its right to seek relief from the Bankruptcy Court on any matter it deems appropriate in its sole discretion, including but not limited to, *inter alia*, the appointment of a Trustee or terminating Debtors' exclusivity periods.

35. The Debtors are authorized and directed to perform all acts and execute and comply with the terms of all documents, instruments and agreements as Callidus may reasonably require to effectuate the terms and conditions of this Order.

36. The transactions contemplated by this Order are not intended to provide Callidus with sufficient control over the Debtors so as to subject Callidus to any liability (including, without limitation, environmental liability as an "owner", "operator", or "responsible person")

and Callidus shall not be deemed in control of the Debtors, their operations or sale or be deemed acting as a "responsible person", "owner or operator" with respect the operation, management or sale of the Debtors.

## II. ARGUMENT AND AUTHORITY

22. The Debtors seek authority to incur the above-descriebd post-petition indebtedness under 11 U.S.C. § 364(c), because they are not able to obtain unsecured credit, and are only able to obtain post-petition financing by granting the post-petition lender a priority claim as collateral.

23. Additionally, pursuant to Rule 4001(c) of the Bankruptcy Rules and sections 361, 363, 364(c) and 364(d) of the Bankruptcy Code, the Debtors respectfully request the Court: (a) grant the relief requested herein on an interim basis pending final approval of the Motion by this Court, authorizing the Debtors to obtain adequate working capital postpetition by entering into the Post-Petition Loan; (b) grant Superpriority Leins as contemplated herein and in the Interim Order; and (c) prescribe the form and manner of notice for, and schedule a final hearing under Bankruptcy Rule 4001(c) following the fourteen (14) day period provided for in that Bankruptcy Rule (the "**Final Hearing**") to consider final approval of the Post-Petition Loan in accordance with the terms of the order approving it, and the agreements, documents and instruments executed and/or delivered by the Debtors in favor of Callidus Lender in connection therewith.

24. The Debtors have an immediate need to obtain the Postpetition Loan and use Cash Collateral in order to, among other things and in accordance with the Budget (subject to permitted variances), permit the orderly limited continuation of the operation of their businesses, to conduct a sales process, and to pay administrative expenses of these cases. The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness

pursuant to the Postpetition Loan and use of Cash Collateral is vital to the Debtors' sale efforts and the preservation and maintenance of the going concern values of the Debtors.

25.  The Debtors are unable to obtain sufficient financing on more favorable terms from sources other than Callidus under the Loan Documents and are unable to obtain financing in the form of unsecured credit or unsecured debt allowable under § 503(b)(1) of the Bankruptcy Code, as an administrative expense pursuant to § 364(a) or (b) of the Bankruptcy Code, unsecured debt having the priority afforded by § 364(c)(1) of the Bankruptcy Code or debt secured as provided by § 364(c)(2) or (3) of the Bankruptcy Code.

26.  Callidus has consented to the Debtors' use of Cash Collateral on the terms set forth herein and in the Loan Documents.

27.  Based on the record presented to the Court, the terms of the Postpetition Loan and the use of Cash Collateral under the terms and conditions set forth herein and in the Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and the Postpetition Loan and Callidus' consent to use of Cash Collateral constitute reasonably equivalent value and fair consideration for the Debtors' incurrence of indebtedness under this Order.

28.  The terms of the Loan Documents and terms of use of Cash Collateral have been negotiated in "good faith," as that term is used in § 364(e) of the Bankruptcy Code, and at arm's length among the Debtors and Callidus, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the Postpetition Loan and the Loan Documents, shall be deemed to have been extended by Callidus in good faith, as that term is used in § 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by § 364(e) of the Bankruptcy Code, and Callidus and the Postpetition Loan shall be entitled to the full protection

of § 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

29. Absent granting the relief sought by this Motion, the Debtors' estates will be immediately and irreparably harmed. Immediate consummation of the Postpetition Loan and authorization of the Debtors' use of Cash Collateral in accordance with the proposed Order and the terms and conditions set forth in the Loan Documents is therefore in the best interests of the Debtors' estates. Except as explicitly set forth herein, this Order does not waive any claims the Debtors may have arising out of the Prepetition Loan Documents. Callidus does not release or waive any claims it may have against the Debtors and the Guarantors.

### III.  NOTICE

30. Notice of the Motion, the Interim Hearing and the proposed entry of this Interim Order has been provided by overnight mail, electronic mail, the Court's ecf system, or facsimile to: (i) the 20 largest unsecured creditors of the Debtors; (ii) the Office of the United States Trustee; (iii) counsel to Callidus; (iv) counsel to the United States Navy; (v) counsel to the United States Maritime Administration; (vi) counsel to the Port of Brownsville; (vii) the Internal Revenue Service and other government agencies to the extent required by the Bankruptcy Rules and local rules of this jurisdiction; and (viii) each party that has filed an appearance and requested notice in the Debtors' case.

WHEREFORE, PREMISES CONSIDERED, the Debtors pray that the Court enter the *Interim Order Pursuant to 11 U.S.C. Sections 105, 362, 363, 364, & 507 and Federal Rules of Bankruptcy Procedure 2002, 4001, & 9014: (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Granting Granting Adequate Protection; and (III) Scheduling a Final Hearing on the Motion* submitted herewith and for such other relief to which they may be entitled at law

or equity.

Dated: April 23, 2015.

Respectfully submitted,

By: */s/ Natalie F. Wilson*
    R. Glen Ayers, Jr.
    State Bar No. 01467500
    David S. Gragg
    State Bar No. 08253300
    Natalie F. Wilson
    State Bar No. 24076779

    ATTORNEYS FOR THE DEBTORS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of April, 2015, a true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, including the US Trustee and upon the parties listed on the limited service list attached hereto. Parties entitled to receive notice that are not registered to receive electronic notice via the Court's CM/ECF system will be served via US Mail, postage prepaid on the 27th of April, 2015.

    /s/ *Natalie F. Wilson*
    Natalie F. Wilson