**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

**ENTERED**
**05/27/2015**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CHAPTER 11** |
| **ESCO MARINE, INC.**[1] | § | |
| | § | **CASE NO. 15-20107** |
| **Debtors.** | § | |
| | § | |
| | § | **(Joint Administration Pending)** |

**FINAL ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363, 364 & 507 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 4001 & 9014: (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING AND UTILIZE CASH COLLATERAL; AND (II) GRANTING ADEQUATE PROTECTION**

The Debtors having filed their *Emergency Motion For Order Pursuant to 11 U.S.C. Sections 105, 362, 363, 364, & 507 and Federal Rules of Bankruptcy Procedure 2002, 4001, & 9014: (I) Authorizing Debtors to Obtain Postpetition Financing and Utilize Cash Collateral; (II) Granting Granting Adequate Protection; and (III) Scheduling a Final Hearing on the Motion* (the "**Motion**"), the Court having scheduled a final hearing on the Motion and having held a hearing regarding the Motion on May 26, 2015 at 8:30 a.m. (the "**Hearing**"), and being fully apprised on the premises, the Court hereby enters the following order authorizing Debtors to obtain postpetition financing, grant senior liens and superpriority unsecured claims as necessary to protect the interests of the first lien holder, Callidus Capital Corporation ("**Callidus**"), as follows:

---

[1]The Debtors also include ESCO Metals, LLC; ESCO Shredding, LLC; Texas Best Recycling, LLC, and Texas Best Equipment, LLC. The corporate address for all debtors is 16200 Joe Garza Sr., Road, Brownsville, Texas 72521. Joint administration under the above style and case number has been ordered by the United States Bankruptcy Court on March 10, 2015. The use of the term "Debtor" shall refer to all debtors.

## I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.     To continue to preserve the value of their assets on a post-petition basis, the Debtors need to use funds from operations that constitute the Cash Collateral (as defined below) of Callidus and continue borrowing funds (the "**Postpetition Loan**") under the Loan Documents (as defined below).  Notice of this Motion is appropriate, for the primary senior secured creditor has had adequate notice of the Debtors' proposed Motion and proposed budget, as well as the Office of the United States Trustee, and other interested parties who have filed an appearance in this matter.

### A.   JURISDICTION, VENUE AND NOTICE

2.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.     The relief requested herein is authorized under §§ 105, 361, 362, 363, and 364 of the Bankruptcy Code, Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Rules.

4.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     Notice of the Motion, the Hearing and the proposed entry of this Order has been provided by overnight mail, electronic mail, the Court's ecf system, or facsimile to: (i) the 20 largest unsecured creditors of the Debtors; (ii) the Office of the United States Trustee; (iii) counsel to Callidus; (iv) counsel to the United States Navy; (v) counsel to the United States Maritime Administration; (vi) counsel to the Port of Brownsville; (vii) the Internal Revenue Service and other government agencies to the extent required by the Bankruptcy Rules and local rules of this jurisdiction; and (viii) each party that has filed an appearance and requested notice in the Debtors' case.

## B.   **BACKGROUND**

6.      ESCO Marine, Inc. ("**ESCO Marine**") is a Delaware corporation doing business in Texas.   It is an 88 acre full service marine yard and recycling operation located on approximately 3300 feet of frontage on the deepwater Brownsville ship channel in Brownsville, Texas.   ESCO Marine and the related Debtors specialize in recyclable metals and the environmentally proper dismantling and recycling of obsolete maritime vessels.

7.      Callidus made various pre-petition loans to the Debtors and has allowed use of Cash Collateral and limited funding pending approval of this Order pursuant to the *Interim Order Pursuant To 11 U.S.C. Sections 105, 361, 362, 363, 364 & 507 And Federal Rules Of Bankruptcy Procedure 2002, 4001 & 9014 (I) Authorizing Interim Use Of Cash Collateral; (II) Granting Post-Petition Replacement Liens; (III) Granting Adequate Protection; And (IV) Scheduling A Final Hearing On The Motion, Second Interim Order Pursuant To 11 U.S.C. Sections 105, 361, 362, 363, 364 & 507 And Federal Rules Of Bankruptcy Procedure 2002, 4001 & 9014 (I) Authorizing Interim Use Of Cash Collateral; (II) Granting Post-Petition Replacement Liens; (III) Granting Adequate Protection; And (IV) Scheduling A Final Hearing On The Motion; Third Interim Order Pursuant To 11 U.S.C. Sections 105, 361, 362, 363, 364 & 507 And Federal Rules Of Bankruptcy Procedure 2002, 4001 & 9014 (I) Authorizing Interim Use Of Cash Collateral; (II) Granting Post-Petition Replacement Liens; (III) Granting Adequate Protection; And (IV) Scheduling A Final Hearing On The Motion Interim Order; Interim Order Pursuant To 11 U.S.C. Sections 105, 361, 362, 363, 364 & 507 And Federal Rules Of Bankruptcy Procedure 2002, 4001 & 9014 (I) Authorizing Debtors to Obtain Postpetition Financing and Utilize Cash Collateral; (II) Granting Adequate Protection; And (III) Scheduling*

3

*A Final Hearing On The Motion*; and *Second Interim Order Pursuant To 11 U.S.C. Sections 105, 361, 362, 363, 364 & 507 And Federal Rules Of Bankruptcy Procedure 2002, 4001 & 9014 (I) Authorizing Debtors to Obtain Postpetition Financing and Utilize Cash Collateral; (II) Granting Adequate Protection; And (III) Scheduling A Final Hearing On The Motion* (collectively, the "**DIP Orders**").

8.      For purposes of this Order, the following constitute "**Cash Collateral**" of Callidus within the meaning of § 363(a) of the Bankruptcy Code: (a) all of the Debtors' funds (including any funds subject to a right of setoff in favor of Callidus, any funds on deposit or held by the Debtors or maintained in any account subject to a control agreement with Callidus and any proceeds of the Collateral) as of the Petition Date, and (b) all cash proceeds of Collateral received after the Petition Date.

9.      Without limitation, Debtors are indebted to Callidus as borrower or guarantor as follows:

      a.    Under a certain discretionary demand revolving credit note dated June 30, 2015 in the principal amount of up to $10,000,000 ("**Facility Note A**"). As of March 31, 2015, there was due and owing under Facility Note A the principal sum of $11,432,353.82, plus accrued and accruing interest, costs, fees and expenses;

      b.    Under a certain discretionary demand term note dated June 30, 2015 in the principal amount of up to $1,200,000 ("**Facility Note B**"). As of March 31, 2015, there was due and owing under Facility Note B the principal sum of $1,155,000, plus accrued and accruing interest, costs, fees and expenses;

      c.    Under a certain discretionary demand term note dated June 30, 2015 in the principal amount of up to $6,450,000 ("**Facility Note C**"). As of March 31, 2015 there was due and owing under Facility Note C the principal sum of $6,000,000, plus accrued and accruing interest, costs, fees and expenses;

      d.    Under a certain discretionary demand term note dated June 30, 2015 in the principal amount of up to $5,040,000 ("**Facility Note D**"). As of March 31, 2015, there was due and owing under Facility Note D the principal sum of $4,440,000, plus accrued and accruing interest, costs, fees and expenses;

e.   Under a certain discretionary demand term note dated June 30, 2015 in the principal amount of up to $4,800,000 ("**Facility Note E**"). As of March 31, 2015, there was due and owing under Facility Note E the principal sum of $4,500,000, plus accrued and accruing interest, costs, fees and expenses;

f.   Under a certain discretionary demand term note dated June 30, 2015 in the principal amount of up to $3,500,000 ("**Facility Note F**"). As of March 31, 2015, there was due and owing under Facility Note F the principal sum of $555,603.85, plus accrued and accruing interest, costs, fees and expenses.

All of the above notes are collectively referred to as the "**Prepetition Notes**". The liabilities evidenced by the Prepetition Notes and the other loan and collateral documents, including interest, costs, fees and expenses are identified a the "**Prepetition Indebtedness**". The documents, instruments and agreements executed in connection with the prepetition financing arrangements among Callidus and the Debtors are identified collectively as the "**Prepetition Loan Documents**". The postpetition credit extended by Callidus to Debtors, postpetition interest, professional fees and other expenses owing by Debtors to Callidus is identified as the "**Postpetition Indebtedness**". The Prepetition Indebtedness and the Postpetition Indebtedness is collectively referred to as the "**Indebtedness**". This Order and all other documents executed in connection with the Postpetition Indebtedness shall be identified, together with the Prepetition Loan Documents, as the "**Loan Documents**". To the extent any terms of this Order contradict the Prepetition Loan Documents, this Order shall govern. Capitalized terms not defined in this Order shall have the meanings set forth in the Prepetition Loan Documents.

10.   The Prepetition Indebtedness is secured by all assets of the Debtors (collectively, the "**Prepetition Collateral**") as more fully described in (i) the Security Agreement dated June 30, 2014; (ii)  the Leasehold Deed of Trust Security Agreement – Financing Statement dated June 30, 2014 securing the Debtors' interest in real property leases located in the Port of

Brownsville; and (iii) the Deed of Trust Security Agreement – Financing Statement dated June 30, 2014 securing the Debtors' interest in real property located in Donna, Texas.

### C.      Findings Regarding the Postpetition Loan.

11.      Good cause has been shown for the entry of this Order.

12.      The Debtors have an immediate need to obtain the Postpetition Loan and use Cash Collateral in order to, among other things and in accordance with the Budget (subject to permitted variances), permit the orderly limited continuation of the operation of their businesses, to conduct a sales process, and to pay administrative expenses of these cases. The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness pursuant to the Postpetition Loan and use of Cash Collateral is vital to the Debtors' sale efforts and the preservation and maintenance of the going concern values of the Debtors.

13.      The Debtors are unable to obtain sufficient financing on more favorable terms from sources other than Callidus under the Loan Documents and are unable to obtain financing in the form of unsecured credit or unsecured debt allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to § 364(a) or (b) of the Bankruptcy Code, unsecured debt having the priority affected by § 363(c)(1) of the Bankruptcy Code or debt secured as provided by §364(c)(2) or (3) of the Bankruptcy Code.

14.      Callidus has consented to the Debtors' use of Cash Collateral on the terms set forth herein and in the Loan Documents.

15.      Based on the record presented to the Court, the terms of the Postpetition Loan and the use of Cash Collateral under the terms and conditions set forth herein and in the Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and the Postpetition Loan and Callidus' consent to use of

Cash Collateral constitute reasonably equivalent value and fair consideration for the Debtors' incurrence of indebtedness under this Order.

16.     The terms of the Loan Documents and terms of use of Cash Collateral have been negotiated in "good faith," as that term is used in § 364(e) of the Bankruptcy Code, and at arm's length among the Debtors and Callidus, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the Postpetition Loan and the Loan Documents, shall be deemed to have been extended by Callidus in good faith, as that term is used in § 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by § 364(e) of the Bankruptcy Code, and Callidus and the Postpetition Loan shall be entitled to the full protection of § 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

17.     The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and applicable local rules.  Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed.  Immediate consummation of the Postpetition Loan and authorization of the Debtors' use of Cash Collateral in accordance with this Order and the terms and conditions set forth in the Loan Documents is therefore in the best interests of the Debtors' estates.  Except as explicitly set forth herein, this Order does not waive any claims the Debtors may have arising out of the Prepetition Loan Documents.  Callidus does not release or waive any claims it may have against the Debtors and the Guarantors.

**NOW, THEREFORE, IT IS ORDERED AND ADJUDGED:**

<u>**ORDERS**</u>

18.     The Motion is granted on an interim basis pending final approval of the Motion by this Court as required under Bankruptcy Rule 4001(c ).

19.     Debtors may obtain postpetition financing from Callidus, and may grant the security, liens and other protections set forth above which are incorporated into this Order.

20.     The Postpetition Loan will be governed by the Prepetition Loan Documents and this Order, including the following modifications:

a.     The Postpetition Loan shall be a discretionary, demand, multiple advance loan; provided, however, absent a Termination Event (as defined in Paragraph 20(d)), Callidus shall fund the maximum principal amount of $2,256,924 through June 28, 2015 pursuant to the attached Budget.  Thereafter, an additional budget shall be proposed by Debtors which decreases professional fees and other costs as reasonable, which if accepted by Callidus shall become the 'Budget' under this Order. All Budgets shall be filed with the Court. In addition to the forgoing, Callidus may at its option fund any necessary expenditures to satisfy senior lien interests and such amount funded shall be added to the Postpetition Loan.  Interest will accrue at the rate of 18% per anum and shall be payable as set forth in the Loan Agreement.

b.     After the initial Budget, Callidus may make, in its sole discretion, postpetition advances, provided that the principal amount of such requested postpetition advance and all other postpetition advances outstanding as of such date, shall not exceed the Postpetition Loan and reserves instituted in Callidus's discretion.

c.     Debtors may only use the funds borrowed under the Postpetition Loan to fund payment of expenses as and when budgeted, measured weekly for total budgeted disbursements only with an adverse aggregate variance of up to 5% (which variance may be waived by Callidus in its sole discretion), in the budget attached as Exhibit A (the "**<u>Initial Budget</u>**"), and any subsequent budgets approved by Callidus (collectively, the "**<u>Budget</u>**"). The Budget may be revised only upon consent of Callidus.

d.     Debtors' ability to request advances under this Order and the Postpetition Loan shall terminate on the earlier of (a "**<u>Termination Event</u>**"): (i)

8

consummation of a sale, confirmation of a plan or July 31, 2015, unless otherwise extended by Callidus in writing; (ii) a default by the Debtors under this Order or any DIP Order; (iii) a postpetition default by the Debtors under the Loan Documents; (iv) a failure by Debtors to meet a sale milestone established with the investment banker retained by the Debtors as consented to by Callidus; (v) Richard Whitlock fails to be the appointed Chief Restructuring Officer unless a replacement consented to by Callidus is appointed by order of this Court; (vi) a trustee is appointed (except as consented to by Callidus); (vii) this case is converted to a case under Chapter 7; or (viii) upon demand made by Callidus.

e.  The Debtors shall not recommence dismantling and recycling operations without the prior approval of Callidus.

f.  The Debtors shall not sell inventory on hand without the prior approval of Callidus.

g.  Callidus is not waiving or releasing the guarantors of the Indebtedness from any claims it may have against them by consenting to this Order and providing the financing contemplated herein.

h.  The appointment of Richard Whitlock as Chief Restructuring Officer of the Debtors is a condition precedent to any funding under this Order.

i.  Debtor shall provide Callidus, its attorneys, accountants, employees and agents with access to Debtors' books and records for the purpose of audit, examination, and inspection thereof, and observation of the Collateral and Debtors operations, and shall provide all reasonable information and documents requested by Callidus or its designated agents. Callidus, its attorneys, accountants, employees and agents shall have the right to enter Debtors' business premises during reasonable business hours for the purpose of examining and appraising the Collateral. Debtor shall pay the cost of any audit requested or performed by Callidus.

j.  Debtors shall supply financial information and information related to the Collateral as required by the Loan Documents and as requested by Callidus. In addition to the requirements under the Loan Agreement, Debtors shall deliver to Callidus:

(i)  a weekly cash flow statement, comparing actual receipts and disbursements to the projected receipts and disbursements set forth in the Budget;

(ii)  a weekly report on metal prices;

9

(iii) any additional reports requested by Callidus related to the account receivable listing and action plan to collect accounts, including enforcement action satisfactory to Callidus;

(iv) any additional reports requested by Callidus relating to the cost and projected revenue analysis of all marine vessels, together with a timeline for completion of dismantling;

(v) as and when filed, all reports and other documents and pleadings filed by Debtors with the Bankruptcy Court or the Office of the U.S. Trustee;

(vi) weekly progress reports relating to the sales process; and

(vii) any other reporting reasonably requested by Callidus.

21. The Postpetition Indebtedness shall be secured by a first and paramount security interest and lien, superior to all other creditors and claimants of the Debtors' estates except as specifically set forth in this paragraph, in the Prepetition Collateral and all of the property of the Debtors and the Debtors' estates, whether now owned or acquired at a later date, pursuant to Bankruptcy Code §§ 364(d)(1) and 364(c)(2)(collectively, the "**Postpetition Collateral**" and identified together with the Prepetition Collateral as the "**Collateral**"), including without limitation: (a) all of the following, whether now owned or existing or hereafter created or acquired, wherever located, together with all additions and accessions and all proceeds and products thereof: all accounts, accounts receivable, instruments, documents, drafts, notes, acceptances, chattel paper, general intangibles (including, without limitation, all goodwill, copyrights, patents, trademarks, trade names and franchises), software, contract rights, rights to payment evidenced by chattel paper, documents or instruments, deposit accounts, rights to payment for money or funds advanced or sold, causes of action, choses in action, commercial tort claims, letters of credit, letter of credit rights, supporting obligations, investment property or other property in possession or control of Callidus, all personal property received as returns and repossessions, all other forms of receivables, tax refunds of any form, all inventory, including all

goods held for sale and documents evidencing inventory, all equipment (together with spare and repair parts, special tools and equipment and replacements), the proceeds of credit and other forms of insurance coverage of any of the foregoing, all books and records pertaining to all of the foregoing and all proceeds and products of all of the foregoing; and (b) all interests in real property and fixtures; provided, however, that if Debtor's interest in any of the foregoing property as of the Petition Date was encumbered by a valid, binding and unavoidable lien senior to the prepetition lien held by Callidus and not subject to a subordination agreement in favor of Callidus, pursuant to § 364(e)(3), the lien on that property granted to Callidus under this Order shall be junior to such existing senior lien only.  Callidus is also granted a security interest and lien in the Postpetition Collateral to serve as adequate protection for the Prepetition Indebtedness, provided, however, that such lien in assets that were not encumbered prepetition (as opposed to replacement collateral) shall be junior to the lien granted to secure the Postpetition Indebtedness.

22.     The Indebtedness shall have priority under § 364(c)(1) of the Code and § 507(b) of the Code over all administrative expenses incurred in this Chapter 11 proceeding of the kind specified in § 503(b) or § 507(b) of the Code and over any and all administrative expenses or other claims arising under §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code (the "**Superpriority Claims**"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve-Out (as defined below) to the extent specifically provided for herein.  The foregoing provision shall not restrict Debtors' payment of administrative expenses, including professional

fees, provided, that such expenses are in the Budget and Debtors are not then, and will not as a result of such payment be, in default under this Order or the Loan Documents.

23.     The security interest and lien granted to Callidus under this Order shall be evidenced by the entry of this Order, and except as otherwise provided herein, shall be deemed to be first, valid and perfected as against all third parties upon entry of this Order, without regard to applicable federal, state or local filing and recording statutes, as of the date of the filing of this case, provided, however, that Callidus may take such steps as it deems appropriate to comply with such recording statutes and Debtors shall execute and deliver such additional documents and shall take any and all additional action to comply with such recording statutes as Callidus may request. At Callidus' discretion, it may attach this Order to financing statements bearing Callidus' name as the creditor and file them with any state or local office to further evidence the liens granted hereby without the signature of Debtors.

24.     All cash and cash equivalents, and the proceeds of all Collateral (subject to the Carveout), which are now in or hereafter come into Debtors' possession shall be applied by Callidus to the Indebtedness in the manner provided under the Prepetition Loan Documents and Callidus is specifically authorized to apply any proceeds of Collateral to the Prepetition Indebtedness until such is paid in full prior to application to the Postpetition Indebtedness.

25.     Callidus' security interests in the Collateral and Superpriority Claims will be subject to payment of the following (the "**Carve-Out**"):

      a.     (i) all fees required to be paid to the clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930; (ii) accrued but unpaid fees and expenses of professionals retained by the Debtors and allowed by the Court under §§ 328, 330 and 331 of the Bankruptcy Code (such allowed fees and expenses, "**Professional Fees**"), in an amount not to exceed $120,000 (the "**Professional Fees Carve-Out Amount**"); *provided* that (x) the Professional Fees Carve-Out Amount shall not be reduced by the payment of Professional Fees allowed by the Court under §§ 328, 330 and 331 of the Bankruptcy Code

at any time prior to a Termination Event and any payments of allowed Professional Fees after a Termination Event has occurred shall reduce the amount of the Professional Fees Carve-Out Amount by the amount of any such payment.  In no event shall any of the Carve-Out be used to pay any fees or expenses of any person retained in a chapter 7 case under § 326, 327 or 328 of the Bankruptcy Code.  Notwithstanding the foregoing, no portion of the Carve-Out and no portion of any amounts approved for payment prior to a Termination Event shall be utilized in a manner prohibited under this Order.

b.  No portion of the Postpetition Loan, the Collateral, the Cash Collateral, or the Carve-Out shall be used or be available to pay any fees, disbursements, costs or expenses incurred by any party in connection with: (i) challenging the amount, extent, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations under the Loan Documents, or the security interests and liens of Callidus in respect thereof; or (ii) the investigation (including discovery proceedings), assertion, initiation or prosecution of any other claims, causes of action, adversary proceedings or other litigation against Callidus.

c.  Nothing herein shall impair the right of any party in interest in the Bankruptcy Cases to object to the reasonableness of any of the fees, expense reimbursement or other compensation described in this paragraph 25.

26.  Debtors shall pay all reasonable fees and out-of-pocket disbursements incurred by Callidus, in any way arising from or in connection with this Order, the Loan Documents or the Indebtedness, including, without limitation, the reasonable fees of counsel for Callidus for the preparation, examination and approval of this Order, for the payment of all fees and out-of-pocket disbursements incurred by Callidus, including reasonable attorney fees incurred by Callidus, in any way arising from or in connection with any action taken by Callidus as holders of the Prepetition Notes, the DIP Orders and this Order to monitor, advise, enforce or collect the Indebtedness, or enforce any obligations of Debtors or any other party under this Order, the Loan Documents or any other document or agreement arising from or relating to the business relationship among Callidus and Debtors, or otherwise securing the Indebtedness, including any actions to lift the automatic stay or otherwise in any way participate in this bankruptcy proceeding.  Debtors shall also be responsible for such fees and disbursements of Callidus for

any defense of any litigation instituted by any of the Debtors or any third party against Callidus arising from or relating to the Indebtedness, this Order, the Loan Documents or the business relationship among Callidus and Debtor.  All of these expenses and fees shall be part of the Postpetition Indebtedness.  Payment of such fees shall be made on demand, but not less frequent than monthly.  Notwithstanding that attorney fees for counsel for Callidus are in the Budget, such budgeted amount is for planning purposes only and is not a cap on such fees and expenses.

27.     Callidus' rights and interests shall further be protected as follows:

a.      All Collateral shall be free and clear of all liens, claims and encumbrances, except for those liens, claims and encumbrances expressly permitted under this Order and the Loan Documents.

b.      Notwithstanding § 362 of the Bankruptcy Code, without further order or application to the Court, the automatic stay is hereby vacated and modified to the extent necessary to permit Callidus, upon the occurrence and during the continuation of any Termination Event, and upon five (5) business days' written notice to the Debtors, the U.S. Trustee and counsel to the Committee (if any), to exercise all rights and remedies provided for in this Order, the Loan Documents or applicable law, including, without limitation:  (i) terminating the Postpetition Loan; (ii) declaring all or any portion of the Indebtedness to be due and payable; and (iii) subject to the Carve-Out, realizing upon all collateral and exercise any and all remedies under the Loan Documents, any applicable control agreement and applicable law.

c.      In no event shall Callidus be subject to the equitable doctrine of "marshaling", "equitable subordination", or any similar doctrines with respect to the Collateral.  The failure of Callidus to seek relief or otherwise exercise or enforce its rights and remedies under the Loan Documents or this Order shall not constitute a waiver of Callidus' rights or remedies hereunder, thereunder or otherwise.

d.      Except to the extent of the Carve-Out, no costs or expenses of administration which have been or may be incurred in these proceedings (including any conversion of these proceedings under § 1112 of the Code, or any other related proceedings), and no priority claims are, or will be, prior to or on a parity with the claims of Callidus arising out of the Indebtedness, or with the security interest of Callidus in the Collateral, and no such cost or expenses of administration shall be imposed against Callidus, its claims or its Collateral under § 506(c) or § 552 of the Code or otherwise, without the prior written consent of Callidus and no such consent shall be implied from any other action, inaction, or acquiescence by Callidus.

14

e.   In addition to the Termination Events set forth in Paragraph 20(d), unless all Indebtedness shall have been indefeasibly paid in full, it shall constitute a Termination Event if there is entered (i) an order modifying this Order without the prior written consent of Callidus, and no such consent shall be implied by any other action, inaction or acquiescence by Callidus, (ii) an order converting or dismissing any of the bankruptcy cases, or (iii) confirming a chapter 11 plan that modifies this Order or any Loan Documents without the prior written consent of Callidus.  If an order dismissing any of the bankruptcy cases under § 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (A) the security interests, liens and the Superpriority Claims granted to Callidus pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all Indebtedness shall have been indefeasibly paid and satisfied in full (and that such security interests, liens and Superpriority Claims shall, notwithstanding such dismissal, remain binding on all parties in interest), (B) the other rights under this Order shall not be affected, and (C) this Court shall retain jurisdiction, notwithstanding such dismissal and to the fullest extent permitted by law, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph.

f.   If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity of any Indebtedness incurred prior to the actual receipt of written notice by Callidus of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any lien, or the priority thereof authorized or created hereby or pursuant to the Loan Documents or this Order.  Notwithstanding any such reversal, modification, vacatur or stay, any use of Cash Collateral, or Indebtedness incurred by the Debtors to Callidus before the actual receipt of written notice by Callidus of the effective date of such reversal, modification, stay or vacatur shall be governed in all respects by the original provisions of this Order, and Callidus shall be entitled to all the rights, remedies, privileges and benefits granted in §§ 363(m) and 364(e) of the Bankruptcy Code, this Order and pursuant to the Loan Documents, with respect to all uses of Cash Collateral and Indebtedness.

g.   Except as expressly provided in this Order or in the Loan Documents, the liens, security interests, Superpriority Claims and all other rights and remedies of Callidus granted by the provisions of this Order and the Loan Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the bankruptcy cases to a case under chapter 7, dismissing any of the bankruptcy cases, or terminating the joint administration of these bankruptcy cases, or (ii) the entry of an order confirming a Chapter 11 plan in any of the bankruptcy cases.  The terms and provisions of this Order and the Loan Documents shall continue in these bankruptcy cases, in any successor cases if these bankruptcy cases cease to be

15

jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the liens, security interests, the Superpriority Claims and all other rights and remedies of Callidus granted by the provisions of this Order and the Loan Documents shall continue in full force and effect until the Indebtedness is indefeasibly paid in full in cash.

28.     Callidus shall have the right to "credit bid" the full amount of its claims, including without limitation, claims on account of outstanding principal, interest and any other amounts due and owing under the Loan Documents, during any sale of the Debtors' assets (excluding sales in the ordinary course of business), including without limitation, sales occurring pursuant to § 363 of the Bankruptcy Code or included as part of any restructuring plan.

29.     Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings under the Loan Documents, Collateral (including Cash Collateral) or the Carve-Out may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under this Order or the Loan Documents, or the liens, security interests and/or claims granted under this Order or the Loan Documents; (b) assert any claims, defenses or causes of action against Callidus or its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) oppose the Callidus' assertion, enforcement or realization on the Collateral or Cash Collateral in accordance with the Loan Documents and this Order; (d) seek to modify any of the rights granted to Callidus hereunder or under the Loan Documents, without Callidus' prior written consent; or (e) unless such payments are approved by an order of this Court and otherwise permitted by the Loan Documents and the Budget, pay any amount on account of any claims arising prior to the Petition Date.

30.     The Debtors acknowledge and agree, and the Court finds and orders that (a) the Loan Documents are valid and binding obligations of the Debtors; (b) Callidus' security interest in the Prepetition Collateral is valid, perfected, first in priority (other than certain allowed

prepetition liens that existed prior to June 30, 2014, including certain allowed liens of taxing authorities), and unavoidable, (c) there are no setoffs, counterclaims or defenses to the Prepetition Indebtedness, and (d) the Prepetition Indebtedness is a valid, binding and unavoidable obligation of each of Debtors jointly and severally.

31.     In consideration for the agreement of Callidus to enter into this Order, each of the Debtors (each, a "**Releasing Party**") fully and forever remise, release and discharge Callidus, and each and all of its parent, subsidiary and affiliated corporations, companies and divisions, together with its or their predecessors, successors and assigns, and each and all of its or their directors, officers, employees, attorneys, accountants, consultants, and other agents (collectively, "**Releasees**"), of and from any and all claims, demands, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, costs, expenses, accounts, damages, judgments, losses, liabilities, and defenses, of whatsoever kind or nature, in law, equity or otherwise, whether known or unknown, whether concealed or hidden, which any Releasing Party has had, may have had or now has, or which any of its predecessors, successors or assigns hereafter can, shall or may have, for or by reason of any matter, cause or thing whatsoever, whenever arising, to and including the date this Order is entered, including without limitation, (a) claims arising from or in any way related to this Order, the Indebtedness, the Loan Documents or the business relationship among any of the Debtors and Callidus, and (b) claims under the avoidance provisions of §§ 544, 547, 548, 549 and 550 of the Code.

32.     The Debtors admit that they have no defenses, offsets or counterclaims with respect to the payment of any sum owing to Callidus, with respect to the validity and/or enforceability of the Loan Documents, with respect to the validity, perfection and enforceability of the liens granted to Callidus pursuant to the Loan Documents, the Cash Collateral Orders, and

17

this Order, or with respect to the Indebtedness. In addition, the Debtors irrevocably waive any right, without the prior written consent of Callidus, (a) to grant or impose, under § 364 of the Code or otherwise, liens or security interests in any Collateral, whether senior, equal or subordinate to Callidus' liens and security interests; (b) to use, or seek to use Cash Collateral; or (c) to modify or affect any of the rights of Callidus under this Order or the Loan Documents by any plan of reorganization confirmed in these cases or subsequent order entered in these cases.

33.     Defaults have occurred under the Prepetition Loan Documents. The Debtors, to the fullest extent allowed under applicable law, waive all notices that Callidus might be required to give but for this waiver, including any notices otherwise required under Section 6 of Article 9 of the Uniform Commercial Code as enacted in the State of Texas or other relevant state (the "UCC") concerning the Collateral. Furthermore, the Debtors waive (a) the right to notification of disposition of the Collateral under § 9-611 of the UCC, (b) the right to require disposition of the Collateral under § 9-620(e) of the UCC, and (c) all rights to redeem any of the Collateral under § 9-623 of the UCC.

34.     Debtors agree that they shall not seek any extension of the exclusivity periods set forth in §§ 1121(b) and 1121(c) of the Code without the express written consent of Callidus, which consent Callidus may withhold in its sole discretion. Debtors and all parties receiving notice of this Order shall have no claim, cause of action or defense on account of Callidus' exercise of the foregoing rights. Debtors acknowledge that Callidus has not waived by entering into this Order, its right to seek relief from the Bankruptcy Court on any matter it deems appropriate in its sole discretion, including but not limited to, *inter alia*, the appointment of a Trustee or terminating Debtors' exclusivity periods.

35.     The releases, waivers and acknowledgments contained within this Order shall become effective upon entry of this Order.  No agent of the Debtors, including the Chief Restructuring Officer, the Debtors' professionals, Callidus or any officer, director, lawyer, accountant, consultant, employee or agent of Callidus (collectively, the "**Released Parties**") shall be liable in any manner to the guarantors of the Indebtedness or any third party by reason of agreement or consent to entry of this Order, and/or any provisions contained herein, including but not limited to any waiver, acknowledgment or release contained herein and such Released Parties are forever released from any claim, action, dispute, damage or liability arising therefrom.

36.     The provisions of this Order, which shall be immediately effective upon entry, and any actions taken under this Order, shall survive entry of, and shall govern with respect to, any conflict with any order which may be entered subsequently, and the terms and provisions of this Order, as well as the liens and security interests under the Loan Documents, this Order, and all rights of Callidus and obligations of Debtors created or arising under this Order, shall continue in these proceedings or any superseding proceedings under the Bankruptcy Code, and such liens and security interests shall maintain their priority as provided by this Order until satisfied and discharged.  If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other court, such stay, modification or vacation shall not affect: (a) the validity of any debt to Callidus incurred under this Order and which is incurred prior to the effective date of such stay, modification or vacation; (b) the validity and enforceability of any lien or priority authorized hereby with respect to any such debt to Callidus; or (c) the conduct of Callidus with respect to the rights granted to Callidus in this Order prior to the effective date of such stay, modification or vacation, and notwithstanding such

stay, modification or vacation, all amounts owed to Callidus by Debtors under this Order prior to the effective date of such modification, stay or vacation, shall be governed in all respects by the original provisions of this Order and Callidus shall be entitled to all the rights, privileges and benefits, including the security interests and priorities granted herein, with respect to all such advances and the course of conduct established in connection therewith.

37.     All funds collected by the Debtors shall be immeditaly deposited in the Callidus lock-box account established by the Debtors pre-petition (the "**Callidus Lock-Box Account**") to be used solely for the purposes and in the amounts set forth in the Budget.  Callidus has a lien and security interest in all funds placed in the Callidus Lock-Box Account.

38.     Debtors and all parties receiving notice of this Order shall have no claim, cause of action or defense on account of Callidus' exercise of the rights contained in this Order.  Debtors acknowledge that Callidus has not waived by entering into this Order its right to seek relief from the Bankruptcy Court on any matter it deems appropriate in its sole discretion, including but not limited to, *inter alia*, the appointment of a Trustee or terminating Debtors' exclusivity periods.

39.     The Debtors are authorized and directed to perform all acts and execute and comply with the terms of all documents, instruments and agreements as Callidus may reasonably require to effectuate the terms and conditions of this Order.

40.     The transactions contemplated by this Order are not intended to provide Callidus with sufficient control over the Debtors so as to subject Callidus to any liability (including, without limitation, environmental liability as an "owner", "operators", or "responsible person") and Callidus shall not be deemed in control of the Debtors, their operations or sale or be deemed acting as a "responsible person", "owner or operator" with respect to the operation, management or sale of the Debtors.

41.     Notice of this Order shall be given by Debtor within 24 hours of its entry.

SIGNED: _____MAY 2 7 2015_____

Richard S. Schmidt,
United States Bankruptcy Judge

AGREED AND APPROVED BY:

*/s/ R. Glen Ayers with permission by N.P. Holzer*
R. Glen Ayers
Texas State Bar No. 01467500
Natalie F. Wilson
Texas State Bar No. 24076779
**LANGLEY& BANACK, INCORPORATED**
Suite 900, Trinity Plaza II
745 East Mulberry
San Antonio, TX  78212-3166
Telephone:     (210) 736-6600
Facsimile:     (210) 735-6889
gayers@langleybanack.com
nwilson@langleybanack.com
**ATTORNESY FOR DEBTORS AND DEBTORS-IN-POSSESSION**

*/s/ Nathaniel Peter Holzer*
Shelby A. Jordan
Texas Bar No. 11016700
Nathaniel Peter Holzer
Texas Bar No. 00793971
**JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX 78401-0341
Telephone:     (361) 884-5678
Facsimile:     (361) 888-5555
sjordan@jhwclaw.com
pholzer@jhwclaw.com
**ATTORNEYS FOR CALLIDUS CAPITAL CORPORATION**

21

Esco Marine Inc.
**Debtor in Possession - Projected Cash Flow Statement**
For the period ending June 28, 2015
(Unaudited; USD)

| | Note | Actual 26-Apr-15 | Actual 3-May-15 | Actual 10-May-15 | Actual 17-May-15 | Actual 24-May-15 | Actual 31-May-15 | Projected 7-Jun-15 | Projected 14-Jun-15 | Projected 21-Jun-15 | Projected 28-Jun-15 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | |
| Receivable collections | | - | - | - | - | - | - | - | - | - | - | - |
| **Operating disbursements** | | | | | | | | | | | | |
| Insurance | | 31,945 | 73,234 | 14,602 | 55,854 | 14,602 | 22,752 | 14,602 | 14,602 | 31,945 | 22,752 | 296,890 |
| Payroll | | 19,466 | 19,515 | 17,894 | 20,876 | 20,379 | 23,690 | 23,690 | 23,690 | 23,690 | 23,690 | 216,579 |
| Equipment rental | | 15,580 | 8,624 | - | - | - | 87,410 | - | - | - | 78,786 | 190,400 |
| Occupancy | | - | 7,898 | - | 11,692 | 331 | - | 100,599 | - | - | 331 | 120,852 |
| Hazardous waste disposal | | - | - | - | - | - | 2,318 | 130,000 | - | 15,000 | - | 147,318 |
| Utilities | | 25,295 | 9,400 | 10,736 | 4,700 | 4,700 | 4,700 | 14,780 | 4,700 | 4,700 | 4,700 | 88,411 |
| Sundry | | 2,500 | 2,500 | 2,500 | 31,140 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 53,640 |
| Performance bond (Saratoga) | | - | - | - | - | - | 50,000 | - | - | - | - | 50,000 |
| **Professional fees** | | | | | | | | | | | | |
| Legal (Callidus) | | - | 31,747 | - | 50,940 | - | - | 325,000 | - | - | - | 407,686 |
| CRO | | - | 75,000 | - | - | - | 90,000 | - | 90,000 | - | 90,000 | 345,000 |
| Investment Banker | | - | - | - | - | - | - | 25,000 | - | - | - | 25,000 |
| Financial Advisor | | - | 120,072 | - | - | - | - | - | 85,979 | - | - | 206,051 |
| Legal (debtor) | | - | - | - | - | - | - | - | 69,097 | - | - | 69,097 |
| Tax | | - | - | - | - | - | - | - | - | - | 20,000 | 20,000 |
| Legal (Unsecured Creditors' Committee) | 1 | - | - | - | - | - | - | - | - | - | 20,000 | 20,000 |
| **Total disbursements** | | 94,786 | 347,989 | 45,732 | 175,202 | 42,512 | 283,370 | 636,171 | 290,568 | 77,835 | 262,759 | 2,256,924 |
| **Net cash flow** | | (94,786) | (347,989) | (45,732) | (175,202) | (42,512) | (283,370) | (636,171) | (290,568) | (77,835) | (262,759) | (2,256,924) |

Note:
1.  For use only if an Unsecured Creditors' Committee is appointed in this case.