

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

ENTERED
06/26/2015

| | | |
|---|---|---|
| In re: | § | |
| | § | **CHAPTER 11** |
| **ESCO MARINE, INC., et al.**[1] | § | |
| | § | **CASE NO. 15-20107-RSS** |
| **DEBTORS.** | § | |
| | § | **(Jointly Administered)** |

**ORDER APPROVING (A)(I)  BIDDING PROCEDURES IN CONNECTION WITH THE DEBTORS' SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS BY PUBLIC AUCTION; (II) SCHEDULING A HEARING TO CONSIDER THE SALE OF ASSETS; AND (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; (B)(I) AUTHORIZING AND APPROVING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF POTENTIAL DESIGNATED EXECUTORY  CONTRACTS AND UNEXPIRED LEASES; <u>AND (C) GRANTING RELATED RELIEF</u>**

This matter comes before the Court on Motion by Debtors[2] and Debtors in Possession for

Orders (A)(I) Approving Bidding Procedures in Connection with the Sale of Substantially All of

their Assets[3] and, if applicable, by Public Auction; (II) Scheduling a Hearing to Consider the

Sale of Assets; and (III) Approving the Form and Manner of Notice Thereof; (B)(I) Authorizing

and Approving the Sale of Assets Free and Clear of Liens, Claims, Encumbrances and Interests;

and (II) Approving the Assumption and Assignment of Potential Designated Executory Contracts

and Unexpired Leases; and (C) Granting Related Relief (the "**Motion**"); the Court having

---

[1]The Debtors also include ESCO Metals, LLC; ESCO Shredding, LLC; Texas Best Recycling, LLC, and Texas Best Equipment, LLC. The corporate address for all debtors is 16200 Joe Garza Sr, Road, Brownsville, Texas 72521. Joint administration under the above style and case number has been ordered by the United States Bankruptcy Court on March 10, 2015. The use of the term "Debtor" shall refer to all Debtors.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

[3] The term "Assets" shall have the meaning provided in the Bidding Procedures, not the Motion.  Specifically, Debtors' Assets shall not include (i) any claims or causes of actions under chapter 5 of title 11 of the United States Code belonging to the Debtors' bankruptcy estates; (ii) any claims or causes of action against the Debtors' former management, owners, directors, or officers; (iii) cash; or (iv) unscheduled or undisclosed assets.  Purchased Assets and Excluded Assets shall be further defined in the APA.

reviewed the Motion and having heard the statements of counsel and evidence adduced with respect to the Motion at a hearing before the Court to consider the relief requested therein with respect to a Bidding Procedure Order (the "**Hearing**"); the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) venue is proper in this district pursuant to 28 U.S.C. § 1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (d) notice of the Motion and the Hearing was sufficient under the circumstances; after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

IT IS HEREBY FURTHER FOUND AND DETERMINED THAT:

A.      The Court finds that under the facts and circumstances of these Chapter 11 Cases, good cause exists for the relief requested in the Motion.

B.      The Debtors have further demonstrated that the marketing and sale process in the Bidding Procedures set forth in Exhibit 1 hereto (1) provide an appropriate process and timetable for the Debtors to utilize in pursuing sales of their Assets, (2) will promote the Debtors' efforts to maximize the value of their estates, and (3) are in the best interests of the Debtors' and their estates, creditors and other stakeholders.

C.      A prompt sale of the Assets, as requested in the Motion, will maximize the value of the Debtors' estates and is in the best interests of creditors.

D.      The Bidding Procedures are reasonably designed to maximize the value to be obtained from a sale of the Assets.

E.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the relief requested in the Motion

for a Bidding Procedures Order, including approval of (1) the Bidding Procedures; (2) the Minimum Bid Increment; (3) the procedures for the assumption of Contracts; and (4) the form and manner of serving the Assignment Notice (attached as Exhibit 2) and the Sale Notice (attached as Exhibit 3).

F.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling one or more Sale Hearings to consider granting the other relief requested in the Motion, including approval of the sale and the transfer of the Assets to the Prevailing Bidder(s) free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED with respect to the request for a Bidding Procedures Order.

2.      The Bidding Procedures, as set forth in Exhibit 1 attached hereto and incorporated herein and as modified herein, are hereby approved in their entirety and shall govern all bids and other activities relating to the sale of the Assets.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.   The failure to specifically include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

3.      As further described in the Bidding Procedures, the deadline for submitting a Qualified Bid (as such term is defined in the Bidding Procedures) shall be July 17, 2015 at 4:00 p.m. prevailing Central time (the "**Bid Deadline**").

4.      If more than one Qualified Bid is received for the Assets, the Debtors shall conduct the Auction; provided, however, that the Debtors may hold an Auction even if only one Qualified Bid is received by the Bid Deadline and thereafter may qualify other Qualified Bids in advance of the commencement of the Auction.

5.      The Auction shall be organized and conducted by the Debtors commencing at 9:00 a.m. prevailing Central time on July 23, 2015, at Langley & Banack, Inc., 745 E. Mulberry, Suite 900, San Antonio, Texas 78251, or such other time or such other place as the Debtors shall notify all Qualified Bidders, the U.S. Trustee, Callidus, counsel for the Official Committee of Unsecured Creditors (the "**Committee**"), and any other parties invited by the Debtors.

6.      The first Qualified Bid at the Auction shall be deemed to have been made by the Initial Highest Bidder in the amount of the Initial Highest Bid.  The next Qualified Bid at the Auction shall be an amount equal to or greater than the Initial Highest Bid *plus* the Minimum Bid Increment (as defined below).  Thereafter, the Auction will continue in the manner determined by the Debtors above; provided, however, (i) additional Bids must be Qualified Bids (except that subsequent Qualified Bids made at the Auction, although received from a Qualified Bidder that made a Qualified Bid prior to the Bid Deadline, need not be received by the Bid Deadline) and (ii) additional Qualified Bids must be made in higher increments of at least $100,000 in cash (the "**Minimum Bid Increment**").

7.      Except as provided in paragraph 12 below, to be timely and eligible for consideration by the Court, any objections to the Sale and/or any component thereof (any such objection, a "**Sale Objection**") – other than an objection to the proposed assumption and assignment of the Potential Designated Contracts or to any proposed Cure Costs  – must:  (a) be in writing; (b) clearly specify the grounds for the objection; (c) conform to the Bankruptcy Rules

and the Local Rules; and (d) be filed with the Court and served so as to be received by the following parties by email (collectively, the "**Objection Notice Parties**") by no later than 12 Noon (Central time) on July 28, 2015 (the "**Objection Deadline**"): (1) counsel for the Debtors (i) R. Glen Ayers, Jr. gayers@langleybanack.com, and (ii) Natalie F. Wilson, nwilson@langleybanack.com; (2) the Debtors, c/o Richard Whitlock RWhitlock@alixpartners.com; (2) counsel for Callidus: (i) Peter Holzer pholzer@jhwclaw.com, (ii) Michael Hammer MHammer@dickinson-wright.com and (iii) Kristi Katsma KKatsma@dickinson-wright.com; (3) counsel for the Committee: (i) Barbara Barron BBarron@bn-lawyers.com, and (ii) Stephen Sather SSather@bn-lawyers.com; and (4) the U.S. Trustee, Stephen Statham, Stephen.Statham@usdoj.gov..

8.     The Court shall conduct the Prevailing Bidder Sale Hearing at 9:00 a.m. prevailing Central time on July 30, 2015, or such other date and time that the Court may direct, ^IN CORPUS CHRISTI. at which hearing the Court will consider (a) approval of the Sale to the Prevailing Bidder(s) and (b) objections, if any, to the proposed assumption and assignment of the Potential Designated Contracts solely to the extent such objections are premised on the Prevailing Bidder's ability to provide adequate assurance of future performance thereunder.

9.     The Contract Procedures, as modified herein, are approved in all respects.

10.    The Debtors shall file, and serve on all Contract Counterparties, no later than July 1, 2015, (the "**Mailing Deadline**"), an Assignment Notice, substantially in the form attached hereto as <u>Exhibit 2</u>, (the "**Assignment Notice**"), by overnight delivery service on each Non-Debtor Counterparty to an executory contract or unexpired lease with any of the Debtors (each a "**Non-Debtor Counterparty**") that may be assumed and assigned to the Prevailing Bidder (the "**Potential Designated Contracts**").  The Debtors shall attach to the Assignment Notice a list

identifying the Non-Debtor Counterparties to the Potential Designated Contracts and the proposed corresponding Cure Costs under the Potential Designated Contracts as of the Petition Date.

11.     At any time prior to the closing of any sale transaction for the Assets, the Prevailing Bidder may direct the Debtors to serve a notice excluding any of the Potential Designated Contracts on (i) the Non-Debtor Counterparty to such Potential Designated Contracts and (ii) all Objection Notice Parties other than the Debtors, indicating, by reasonably specific information, which Potential Designated Contracts have been excluded, and stating that the Prevailing Bidder has excluded such Potential Designated Contracts.  Upon service of such notice, but in no event later than the closing the of the sale transaction, the executory contracts and/or unexpired leases referenced in this paragraph (x) shall no longer be considered Potential Designated Contracts; (y) shall not be deemed to be, or to have been, assumed or assigned; and (z) shall remain subject to assumption, rejection or assignment by the Debtors; provided, however, that any Potential Designated Contract shall, at the election of the Non-Debtor Counterparty, be deemed rejected unless the Court orders otherwise.

12.     Objections, if any, to the proposed Cure Costs, or to the proposed assumption and assignment of the Potential Designated Contracts, excluding, objections related to adequate assurance of future performance or objections relating to whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, the Prevailing Bidder for purposes of section 365(c)(1) of the Bankruptcy Code, must be in writing and filed with this Court and served on the Objection Notice Parties so as to be received no later than 4:00 p.m. (prevailing Central time) on July 10, 2015 (the "**Cure Objection Deadline**"). Notwithstanding the foregoing, Non-Debtor Counterparties shall have until Noon (prevailing

Central time) on July 15, 2015, to submit an objection to the Debtors' ability to assign the Potential Designated Contract to the Prevailing Bidder without the Non-Debtor Counterparty's consent or to the adequate assurance of future performance to be provided (the "**Adequate Assurance Objection Deadline**," and together with the Cure Objection Deadline, the "**Contract Objection Deadlines**").

13.     To the extent that any lease between the Debtor and the Brownsville Navigation District is a "Potential Designated Contract," The Brownsville Navigation District shall have until noon on July 28, 2015 to submit an objection to the Debtors' ability to assign the Potential Designated Contract to the Prevailing Bidder without the Brownsville Navigation District consent or to the adequate assurance of future performance to be provided.

14.     Where a Non-Debtor Counterparty to a Potential Designated Contract files an objection meeting the requirements of paragraph 12 or 13, objecting to the assumption by the Debtors and assignment to the Prevailing Bidder of such Potential Designated Contract (the "**Disputed Designation**") and/or asserting a cure amount higher than the proposed Cure Costs listed on the Assignment Notice (the "**Disputed Cure Costs**"), the Debtors and the Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention.  If the Debtors and the Non-Debtor Counterparty determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Disputed Designation and/or the amount to be paid under section 365 of the Bankruptcy Code with respect to the Disputed Cure Costs will be determined by the Court at the Sale Hearing, unless the Debtors, the Prevailing Bidder, and the Non-Debtor Counterparty to the Potential Designated Contract in dispute agree otherwise.  If the Court determines at the Sale Hearing that the Potential Designated Contract will not be assumed and assigned, then such

executory contract or unexpired lease shall no longer be considered a Potential Designated Contract.  If any objection related to a Disputed Designation or Disputed Cure Costs is continued beyond the Sale Hearing, the Prevailing Bidding shall escrow the portion of the Cure Costs that is disputed pending such resolution.

15.     Any Non-Debtor Counterparty to a Potential Designated Contract who fails to timely file an objection to the proposed Cure Costs or the proposed assumption and assignment of a Potential Designated Contract by the Contract Objection Deadlines, as applicable, is deemed to have consented to such Cure Costs and the assumption and assignment of such Potential Designated Contract by the Debtor and to the Prevailing Bidder, and such party shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates or the Prevailing Bidder.

16.     If the Non-Debtor Counterparty to a Potential Designated Contract fails to timely object to the assumption and assignment of a Potential Designated Contract or the proposed Cure Cost relating thereto by the Contract Objection Deadlines, as applicable, or upon the resolution of any timely objection by agreement of the parties or order of the Court approving an assumption and assignment, such Potential Designated Contract shall be deemed to be assumed by the Debtors and assigned to the Prevailing Bidder and the proposed Cure Cost related to such Potential Designated Contract shall be established and approved in all respects, subject to the conditions set forth in paragraph 16 below.

17.     The Debtors' decision to assume and assign the Potential Designated Contract is subject to Court approval and consummation of an Asset sale transaction with a Prevailing Bidder.  The Prevailing Bidder shall have no rights in and to a particular Potential Designated

Contract until such time as the particular Potential Designated Contract is assumed and assigned in accordance with the Contract Procedures.

18.    Except as may otherwise be agreed to in an APA with a Prevailing Bidder or by the parties to a Potential Designated Contract, the defaults under the Potential Designated Contract that must be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured as follows: the Purchaser shall pay all Cure Costs relating to an assumed executory contract or unexpired lease within ten (10) days after the later of (i) the closing date specified in the APA entered into with a Prevailing Bidder or (ii) the date on which such executory contract or unexpired lease is deemed assumed and assigned, in accordance with paragraph 15 hereof.

19.    The form of the Sale Notice attached hereto as Exhibit 3 is hereby approved in all respects.  All parties in interest shall receive or be deemed to have received good and sufficient notice of all remaining relief sought in the Motion, including but not limited to the Sale Hearing, the proposed Sale Order, and the proposed sale of the Assets if, by the Mailing Deadline, the Debtors serve the Sale Notice by first class mail, postage prepaid upon: (a) counsel Callidus; (b) counsel to the Committee; (c) any party that expressed in writing to the Debtors or their professional advisors an interest in acquiring the Assets; (d) non-Debtor counterparties to all Potential Designated Contracts; (e) all parties who are known to assert liens upon the Assets; (f) counsel for the United States Navy; (g) counsel to MARAD; (h) the Internal Revenue Service and applicable state and local taxing authorities; (i) all applicable state attorneys general, local environmental enforcement agencies and local regulatory authorities; (j) the U.S. Trustee; (k) counsel to the Port of Brownsville; (l) the United States Attorney General/Antitrust Division of Department of Justice; (m) the U.S. Environmental Protection Agency and similar state agencies;

(n) the United States Attorney's Office; and (o) all entities that have requested notice in these Chapter 11 Cases under Bankruptcy Rule 2002.

20.     The failure of any objecting person or entity to timely file and serve a Sale Objection as set forth herein shall be a bar to the assertion of any objection to the consummation and performance of any sale contemplated by any APA, including the transfer free and clear of all Claims asserted against each of the Assets transferred as part of such sale.

21.     Notwithstanding anything in this order or in the attachments to this order including the bid procedures, the Anti-Assignment Act, 41 U.S.C.A. § 6305, FAR 42.1204(a) [42 CFR 1204] and other federal statutes and regulations control the novation and assignment of the Navy and MarAd contracts. The Prevailing Bidder must promptly comply with these federal laws and regulations and provide a written request to the Government for consideration to recognize a successor in interest under all federal government contracts. The Prevailing Bidder must also promptly obtain necessary security clearances satisfactory to the Navy.

22.     Notwithstanding anything to the contrary herein, the Debtors, in the exercise of their sole discretion, and in consultation with Callidus, the Committee, the United States Navy and MARAD, and the Brownsville Navigation District shall retain the right under the Bidding Procedures to modify the Bidding Procedures, including without limitation any deadlines thereunder, if such modification is determined by the Debtors to be in the best interests of the estates and to enhance the likelihood of the sale process to maximize the sale value of the Assets,[4] provided that in no event shall the Debtors waive, limit, or modify the option to deem a Potential Designated Contract rejected as provided herein.

---

[4] To the extent the Committee challenges any such modification and seeks expedited consideration of its challenge, the Debtors will not object to such expedited hearing request.

23.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Order shall be effective immediately upon its entry.

24.     Notwithstanding anything herein, this Bidding Procedures Order shall not be construed as affecting any party's rights under 11 U.S.C. § 365(n), if any exist.  Further, this order shall not be interpreted as affecting any party's right to object to any court finding related to 11 U.S.C. § 363(m).

25.     This Order shall not be construed as affecting the rights of any parties that filed an objection to the Motion (or their affiliates or their subsidiaries) arising from any documents or agreements related to the Debtors (including documents or agreements with third parties) including, but not limited to, any insurance policies, letters of credit, performance bonds, or agreements with the Debtors.

26.     If Callidus, the Committee, the United States Navy and MARAD, or the Brownsville Navigation District files a motion or objection relating to a determination made in the Debtor's discretion after consultation with the foregoing parties, including without limitation, naming a Potential Bidder as a Qualified Bidder, declining to name a Potential Bidder as a Qualified Bidder, designated the Highest Initial Bid, or modifying the bid procedures, any such motion or objection shall be filed under seal.  The Debtor will not oppose an expedited setting on any such motion or objection.

27.     The Court shall retain jurisdiction over any matter or disputes arising from or relating to the interpretation, implementation or enforcement of this Order.

**IT IS SO ORDERED**.

June 26, 2015

**Dated** June __, 2015

_____

RICHARD S. SCHMIDT
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 1**

*[Bidding Procedures]*

## BIDDING PROCEDURES

By motion dated June 15, 2015 (the "**Bidding Procedures Motion**"), ESCO Marine, Inc., ESCO Metals, LLC; ESCO Shredding, LLC; Texas Best Recycling, LLC, and Texas Best Equipment, LLC as debtors and debtors in possession (collectively, the "**Debtors**") sought approval of, among other things, the procedures through which they will solicit bids ("**Bids**") to determine the highest or otherwise best offer for the sale of the Debtors' assets (collectively, the "**Assets**" [1]) at a public auction (the "**Auction**") under the provisions of title 11 of the United States Code (the "**Bankruptcy Code**").  Pursuant to the Bidding Procedures Motion, the Debtors sought authority to establish procedures to sell the Assets free and clear of liens, claims, encumbrances, and interests to a Stalking Horse Bidder or other Qualified Bidder (each as defined below) that is determined to have made the highest and best offer in accordance with the Bidding Procedures set forth below (the "**Prevailing Bidder**").

On June 22, 2015, the United Stated Bankruptcy Court for the Sothern District of Texas (the "**Court**") entered an order (the "**Bidding Procedures Order**")[2] that, among other things, authorized the Debtors to determine the highest or otherwise best bid for the Assets through the process and procedures set forth below (the "**Bidding Procedures**").

### *Participation Requirements and Due Diligence*

1.  In order to participate in the bidding process, the Auction, or otherwise be considered for any purpose hereunder, a person interested in purchasing the Assets (a "**Potential Bidder**") must first deliver the following materials to the Debtors and their counsel:

    (a)  An executed confidentiality agreement in form and substance satisfactory to the Debtors and their counsel (the "**Confidentiality Agreement**").  Without limiting the foregoing sentence, the Confidentiality Agreement will provide that all non-public information about the Debtors received by a Potential Bidder, or if the bidder is qualified, a Qualified Bidder (as defined below), will be kept strictly confidential and used only in connection with analyzing a transaction for the purchase of the Assets.  The Confidentiality Agreement also will provide that the Debtors and their advisors will have access to information provided about a Potential Bidder by the Potential Bidder and that any confidential information received from a Potential Bidder will be used only in connection with analyzing whether the Potential Bidder will be qualified as a Qualified Bidder and a potential transaction for the Assets.

    (b)  Written evidence that enables the Debtors and their advisors to determine, in their sole discretion, in consultation with Callidus, the Committee, the United States

---

[1] Debtors' Assets shall not include (i) any claims or causes of actions under chapter 5 of title 11 of the United States Code belonging to the Debtors' bankruptcy estates; (ii) any claims or causes of action against the Debtors' former management, owners, directors, or officers; (iii) cash; or (iv) unscheduled or undisclosed assets.  Purchased Assets and Excluded Assets shall be further defined in the APA.

[2] Capitalized terms not otherwise defined in these Bidding Procedures shall have the meanings ascribed to them in the Bidding Procedures Order or Sale Motion, as applicable.

Navy and Maritime Administration (MARAD), and the Brownsville Navigation District, whether the Potential Bidder has the financial and other ability to close the contemplated sale transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in connection therewith.

(c)     The Debtors shall provide these Bidding Procedures, together with a copy of a form Asset Purchase Agreement (the "**APA**"), to each Potential Bidder.   All Potential Bidders, whether deemed Qualified Bidders (as defined below) or not, consent to the jurisdiction of this Bankruptcy Court to determine matters concerning the sale, their Bid and otherwise with respect to the process and waive any right to any other venue.

2.     Any Potential Bidder wishing to conduct due diligence concerning a prospective acquisition transaction of the Assets shall be granted access to all relevant, unclassified information regarding the Assets and the related business of each of the Debtors reasonably necessary to enable a Potential Bidder to evaluate the Assets and the prospective transaction.   The Debtors shall make such access available to Potential Bidders during normal business hours as soon as reasonably practicable following execution of the Confidentiality Agreement.   Potential Bidders interested in conducting due diligence should contact Thomas Kane, Managing Director, at Chatsworth Securities ((516) 658-1371 or tkane@chatsworthgroup.com).   Notwithstanding the foregoing, the Debtors are not required to provide confidential or proprietary information to any person if the Debtors, in consultation with Callidus, believe that such disclosure would be detrimental to the interests of the Debtors' estates.   Additionally, the Debtors are not required to provide classified information to Potential Bidders without the approval and consent of the United States Navy, MARAD, the Defense Security Service, or any other applicable government agency or office.   All due diligence must be completed before the Bid Deadline (as defined below) unless the Debtors in their sole discretion, but in consultation with Callidus and the Committee, agree otherwise.   No condition(s) allowing or regarding further due diligence will be accepted or authorized after the Bid Deadline. Potential Bidders are required to exercise their own discretion before relying on any information regarding the Assets provided by the Debtors.   Neither the Debtors nor their representatives (nor Callidus or its representatives) are responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders pursuant hereto.

3.     The Debtors shall: (i) receive and evaluate any Bids from Potential Bidders; (ii) request information from Potential Bidders, engage in discussions with Potential Bidders, and take such other actions to determine whether any Bid constitutes or could lead to a Qualified Bid (as defined below); and (iii) take any other actions contemplated under these Bidding Procedures.

*Submission of Bids*

4.      Any Qualified Bidder interested in purchasing the Assets must submit a Bid prior to 4:00 p.m. prevailing Central time on July 17, 2015 (the "**Bid Deadline**").

5.      The Debtors and their advisors, in consultation with Callidus, the Committee, the United States Navy and MARAD, and the Brownsville Navigation District, will determine if a Bid is a Qualified Bid based on the requirements herein.  A Potential Bidder will be deemed to be a "Qualified Bidder" if the Debtors, in their sole discretion, but in consultation with Callidus and the Committee, determine that such Potential Bidder submitted a Qualified Bid.

6.      A Bid will be considered a "Qualified Bid" only if the Bid fulfills the following requirements on or prior to the Bid Deadline (capitalized terms used in this section are defined later in the Bidding Procedures):

(a)      Provides that the Qualified Bidder's Bid shall remain open and irrevocable until the earlier of (X) thirty (30) days following the date of entry of a Prevailing Bidder Sale Order; or (Y) the date of the closing of the sale of the Assets pursuant to the Prevailing Bidder Sale Order (the "**Bid Expiration Date**");

(b)      Provides that the Qualified Bidder is obligated to perform as a Back-Up Bidder (as defined below) in the event such Qualified Bidder is not the Prevailing Bidder;

(c)      Is made by a person or entity that demonstrates evidence of fully committed and firm financing for each component of debt or equity in support of such Bid and other ability to consummate the proposed transaction, in each case acceptable to the Debtors in their sole discretion, but in consultation with Callidus and the Committee;

(d)      The minimum amount of the bid must be sufficient to pay in full all secured claims allowed under 11 U.S.C. § 502 that are superior to Callidus' liens on the purchased Assets;

(e)      Provides written evidence that the Qualified Bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its Bid and the execution of the APA, or a representation that no such authorization or approval is required;

(f)      Provides that the purchase price will be, unless the DIP Lender and the Debtors otherwise mutually agree, for a purchase price paid in cash, cash equivalents, or such other consideration acceptable to the Debtors, in consultation with Callidus and the Committee;

(g)      Provides by wire transfer or immediately available funds to the Debtors or an appropriate escrow agent before the Bid Deadline of an earnest money deposit equal to (X) 10% of the dollar amount of the purchase price of such Bid; or (Y) 10% of the value of such Bid, (the "**Deposit**");

h) Provides evidence satisfactory to the Debtors, in their sole discretion, that the Qualified Bidder is reasonably likely to obtain prompt regulatory approval, including without limitation approval from the United States Navy and MARAD or the Brownsville Navigation District for assumption of the lease, if any is required, to purchase the Assets;

(i) Is submitted in a writing in the form of the APA provided by the Debtors with any proposed changes to the APA set forth in an electronic form both clean and marked to reflect such changes signed by the Qualified Bidder, that:

   (i) Identifies the Qualified Bidder and any members of its investor group, if applicable;

   (ii) identifies what Assets the Qualified Bidder seeks to purchase;

   (iii) Is not subject to conditions, representations or terms that the Debtors determine, in consultation with Callidus, the Committee, the United States Navy and MARAD, and the Brownsville Navigation District to be unacceptable;

   (iv) Is not conditioned upon the Bankruptcy Court's approval of any Bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment; provided, however, the Debtors may accept an Initial Highest Bid (as defined below) with such bid protections to the extent authorized by the Court according to the procedure outlined below;

   (v) Does not contain any financing or due diligence contingencies to closing of the proposed transaction unless the Debtors and Callidus otherwise agree that such contingencies are acceptable;

   (vi) Does not contain any condition to closing of the transaction relating to the receipt of any third party approvals (excluding required Bankruptcy Court approval and any required governmental and/or regulatory approval);

   (vii) Expressly acknowledges and represents that the Qualified Bidder: (A) has had an opportunity to conduct any and all due diligence regarding the Assets and the proposed transaction prior to making its Bid, (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and the Assets in making its Bid or that of any of its legal, financial or other advisors, and (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business of the Debtors or the Assets or the proposed transaction, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the APA ultimately accepted and executed by the Debtors;

(viii)   Identifies each and every executory contract and unexpired lease that the Qualified Bidder desires the Debtors to assume and assign to the Qualified Bidder at the closing and provides evidence of such Qualified Bidder's ability to provide adequate assurance of future performance of such contracts or leases (as required by section 365(f)(2)(B) of the Bankruptcy Code) along with the Bid; provided that any Qualified Bidder's ability to show adequate assurance of future performance under any lease from the Brownsville Navigation District shall be shown by submitting the Leasing Application of the Port of Brownsville, attached as Exhibit 4 to the Bid Procedures Order;

(ix)   Contains other information reasonably requested by the Debtors; and

(x)   Identifies by contract number, the unexpired leases for which the Qualified Bidder wishes for Debtors to deliver a notice of assumption and assignment pursuant to these Bidding Procedures. The deadline for each Qualified Bidder to amend the list of unexpired leases it wishes for Debtors to deliver a notice of assumption and assignment shall be the Bid Deadline.

7.   A Qualified Bidder that desires to make a Bid must deliver written electronic copies of its Bid on or prior to the Bid Deadline to any of the following representatives of the Debtors: (1) R. Glen Ayers, Jr. and Natalie F. Wilson, Langley & Banack, Inc., 745 E. Mulberry, Suite 900, San Antonio, Texas 78212; (2) Richard Whitlock 16200 Joe G Garza Sr Rd, Brownsville, TX 78521; and (3) David Sieradzki and Noah Goldstein, Duff & Phelps Canada Restructuring, Inc.,150 King Street West, suite 2308, Toronto, ON, M5H 1J9 . The Debtors shall deliver copies of any such Bids to Callidus, the Committee, the United States Navy and MARAD, and the Brownsville Navigation District.

8.   After the Bid Deadline, the Debtors, in their sole discretion but in consultation Callidus and the Committee, shall determine which Qualified Bid (or Qualified Bids) represents the then-highest or otherwise best bid (the "**Initial Highest Bid**" and the entity submitting such Bid, the "**Initial Highest Bidder**").   Prior to or at the start of the Auction, each Qualified Bidder that timely submitted a Qualified Bid will be advised of such Initial Highest Bid and the Debtors may:  (a) distribute copies of other Qualified Bids to other Qualified Bidders prior to or during the Auction; or (b) proceed with the open or sealed bidding process set forth in the Bidding Procedures Order to the extent authorized therein.

*Callidus' Right to Credit Bid*

9.   Callidus has an agreed pre-petition secured claim of approximately $28 million under the pre-petition loan.  Subject to the Committee's pending Motion for Reconsideration [Dkt. No. 217], Callidus also has an agreed, super-priority post-petition administrative claim arising under the Cash Collateral Orders and the Interim and Final DIP Orders entered in this case.  *See* Dkts. 55, 85, 122, 136, 169, and 180.  Based on the Debtor's use of cash collateral and post-petition funds to date, as well as the budget approved pursuant to the

Final DIP Order, it is estimated that Callidus' claim will total $32 million as of July 31, 2015. No later than July 12, 2015, Callidus will file a notice stating the exact amount of the claim that it believes it is entitled to credit bid and any party-in-interest may object to the same and request that the Court determine the amount of Callidus' allowed claim for purposes of credit bidding at the Auction prior to the date of the Auction.

10.     Callidus asserts that its pre-petition and post-petition claims are secured by substantially all of the Debtors' assets, including those Assets that would be sold in the sale contemplated by these Bidding Procedures

11.     Callidus may submit a credit bid (or bid using a similar mechanism, including a bid by one of its affiliates) under these Bidding Procedures, up to the full amount of its pre-petition and post-petition claims (the "**Callidus Credit Bid**"). The Callidus Credit Bid, if any, shall provide for payment of Chatsworth fees in accordance with the terms of the Order approving the retention of Chatsworth as the Debtors' Investment Banker, as previously agreed to by Callidus. In the event that the Callidus Credit Bid is either the Initial Highest Bid or the Prevailing Bid, Callidus may, in its sole discretion, choose to waive its credit bid and allow the Debtor to accept the next-highest bid as the Initial Highest Bid or the Prevailing Bid, in which case Callidus will receive the proceeds from Prevailing in return for a release of its liens on the purchased assets, subject to any prior and superior liens on the purchased assets. In the event that the Prevailing Bid does not satisfy Callidus' claims in full, Callidus' claim shall be reduced by the cash proceeds received by it from the sale and Callidus' liens against any of the Debtors' assets not sold to the Prevailing Bidder shall remain in full force and effect.

12.     The Callidus Credit Bid, if any, shall not require a Deposit, nor shall Callidus be required to provide any financial due diligence to the Debtors relating to a credit bid.

13.     In the event that Callidus' Credit Bid is the Prevailing Bid, and, in the event that the Assets purchased by Callidus include the collateral of other creditors whose lien on such collateral is prior and superior to Callidus' lien, Callidus' purchase of said collateral shall be subject to the prior and superior lien unless Callidus reaches a consensual agreement with the secured lender otherwise.

14.     Callidus may, in its sole discretion, submit a Qualified Bid that is higher than the amount it may credit bid.

***Due Diligence From Potential Bidders or Qualified Bidders***

15.     Other than Callidus, each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the acquisition transaction of the Assets. Failure by a Potential Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a Potential Bidder is not a Qualified Bidder. Similarly, each Qualified Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Qualified Bidder's financial wherewithal to consummate and perform

obligations in connection with the acquisition transaction of the Assets as the Auction progresses. Failure by a Qualified Bidder to comply with requests for additional information may be a basis for the Debtors to determine that the Qualified Bidder may no longer participate in the Auction.

### *"As Is, Where Is"*

16.     The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or estates or any other party, except to the extent set forth in the APA between the Debtors and the Prevailing Bidder. Except as otherwise provided in the Prevailing Bidder's APA, all of the Debtors' right, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests therein (collectively, the "**Claims**") pursuant to section 363(f) of the Bankruptcy Code, such Claims to attach to the net proceeds of the sale of the Assets, with the same validity and priority as existed immediately prior to such sale; provided however, that the statutory restrictions on use in trade related to the vessel inventory shall not be in any way abrogated or released.

### *Later Award of Break-Up Fee to Stalking Horse Bidder*

17.     Pursuant to the Bidding Procedures Order, on or prior to July 3, 2015, the Debtors or Callidus may designate a Stalking Horse Bidder. The Debtors may agree to pay the Stalking Horse Bidder (i) a break-up fee in an amount up to 1.5% (or such higher percentage as the Debtors shall agree, subject to Court approval) of the total guaranteed cash price in its Initial Highest Bid plus (ii) reimbursement of reasonable expenses in an amount to be determined (item (i) and (ii) together, the "Break-Up Fee"); provided that the Break-Up Fee may only be paid upon the closing and from the sale proceeds of a sale of the Assets to a Prevailing Bidder other than the Stalking Horse Bidder. Any agreement to provide a Break-Up Fee shall be (a) approved by the Court by separate order entered no later than July 10, 2015, following a hearing upon no less than three (3) days notice to: (i) counsel to Callidus; (ii) counsel to the Committee; and (iii) the Office of the U.S. Trustee. If the Debtors or Callidus designate a Stalking Horse Bidder and obtain the Court's approval of a Break-Up Fee on or before July 10, 2015, the Debtors shall provide notice of the order approving same prior to the Bid Deadline to any other party that expressed an interest in acquiring the Assets.

### *The Auction*

18.     If more than one Qualified Bid has been submitted for the Assets in accordance with these Bidding Procedures, the Debtors will conduct the Auction on July 23, 2015 at 9:00 a.m., prevailing Central time, with respect to such Qualified Bids in order to determine the highest and best Bid (the "**Prevailing Bid**") to submit for approval by the Bankruptcy Court at the Prevailing Bidder Sale Hearing (as defined below). The Auction shall be organized and conducted by the Debtors at Langley & Banack, Inc., 745 E. Mulberry, Suite 900, San Antonio, Texas, 78251, or such other location as may be announced prior to the Auction to all Qualified Bidders, Callidus, the U.S. Trustee, the Committee, the

United States Navy and MARAD, and the Brownsville Navigation District. The Auction will be recorded by video or stenographic means.

19.     The only persons or entities who will be permitted to Bid at the Auction are the authorized representatives of each Qualified Bidder (the "**Auction Participants**"). While only the Auction Participants may make Qualified Bids at the Auction, the Auction may be attended and viewed also by the Debtors, Callidus, the Committee, the United States Navy and MARAD, and the Brownsville Navigation District and their respective counsel, financial advisors, and/or other authorized representatives.

20.     The Debtors are authorized to conduct the Auction in accordance with such procedures and requirements as may be established at the discretion of the Debtors and their counsel, in consultation with counsel to Callidus,the Committee, the United States Navy and MARAD, and the Brownsville Navigation District, which rules may include the determination of the amount of time between Qualified Bids, whether to adjourn the Auction at any time and from time to time, the conducting of multiple rounds of open or sealed bidding with notice only to the parties entitled to attend the Auction, and to declare that the Auction has ended when no further Bids are timely made or otherwise.

21.     The first Qualified Bid at the Auction shall be deemed to have been made by the Initial Highest Bidder in the amount of the Initial Highest Bid. The next Qualified Bid at the Auction shall be an amount equal to or greater than the Initial Highest Bid plus the amount of the approved Break-up Fee (if any) plus the Minimum Bid Increment (as defined below). Thereafter, the Auction will continue in the manner determined by the Debtors above; provided, however, (i) additional Bids must be Qualified Bids (except that subsequent Qualified Bids made at the Auction, although received from a Qualified Bidder that made a Qualified Bid prior to the Bid Deadline, need not be received by the Bid Deadline) and (ii) additional Qualified Bids must be made in higher increments of at least $100,000 in cash (the "**Minimum Bid Increment**").

22.     The Debtors, in consultation with Callidus, the Committee, the United States Navy and MARAD, and the Brownsville Navigation District, shall determine, in their sole discretion, whether a Qualified Bid by a Qualified Bidder at the Auction matches or is higher and better than the prior Qualified Bid.

23.     At the conclusion of the Auction: (i) the Debtors shall, in their sole discretion but in consultation with Callidus, the Committee, the United States Navy and MARAD, and the Brownsville Navigation District, select (X) the Prevailing Bid and (Y) the second highest or best offer for the Assets (the "**Back-Up Bid**"); (ii) the Debtors shall notify the Prevailing Bidder that such person's offer has been determined by the Debtors to be the Prevailing Bid and will be contingent only on Bankruptcy Court approval, and shall notify the person that made the Back-Up Bid (the "**Back-Up Bidder**") that such person's offer has been determined by the Debtors to be a Back-Up Bid and will be contingent only on the failure of the Prevailing Bid to close as set forth below and Bankruptcy Court approval; and (iii) the Debtors shall file a notice with the Bankruptcy Court announcing the Prevailing Bidder. Prior to the commencement of the Prevailing Bidder Sale Hearing, the Prevailing Bidder shall complete and sign all agreements and documents as necessary

to bind the Prevailing Bidder to all of the terms and conditions contemplated by the Prevailing Bid.

24.     No later than 5:00 p.m. (Central Time) on July 24, 2015, the Debtor shall file with the Court and shall serve on (i) counsel for Callidus, (ii) counsel for the Committee, (iii) counsel for the United States Navy and MARAD, (iv) counsel for the Brownsville Navigation District, (v) the United States Trustee, (vi) every party that has requested notice in this case, and (vi) each party on the Limited Service List approved in this case a "**Prevailing Bidder Notice**" which shall identify the Prevailing Bidder and the Back Up Bidder and which shall attach the APA executed by the Prevailing Bidder and Back Up Bidder, respectively, as well as a proposed order approving the proposed sale to the Prevailing Bidder.

25.     The Deposit of the Prevailing Bidder or the Back-Up Bidder, as the case may be, shall be applied by the Debtors against the purchase price to be paid by the Prevailing Bidder or the Back-Up Bidder, as applicable, at the closing of the relevant transaction approved by the Bankruptcy Court.  The Prevailing Bidder's Deposit shall be held by the Debtors and forfeited to the Debtors if the Prevailing Bidder breaches its obligations to close under the APA in accordance with the Prevailing Bid.

26.     The Debtors shall not be deemed to have finally accepted any Qualified Bid unless and until such Qualified Bid and the Debtors' acceptance thereof have been authorized by order of the Bankruptcy Court following the conclusion of the Prevailing Bidder Sale Hearing.

### *Back-Up Bidder*

27.     If for any reason the Prevailing Bidder fails to consummate the acquisition of the Assets in accordance with the Prevailing Bid, and in any event no later than ten (10) days from the entry of the Prevailing Bidder Sale Order, the Prevailing Bidder's deposit shall be forfeited to the Debtors and the Debtors are authorized to proceed with the sale of the Assets to the Back-Up Bidder in accordance with the Back-Up Bid without further order of the Bankruptcy Court.  If for any reason the Back-Up Bidder fails to consummate the acquisition of the Assets in accordance with the Back-Up Bid, the Back-Up Bidder's Deposit shall be forfeited to the Debtors.

### *Deposit*

28.     No later than the third (3rd) business day following the entry of the Prevailing Bidder Sale Order, the Debtors shall return to each Qualified Bidder(s), other than the Prevailing Bidder and the Back-Up Bidder, their respective Deposit(s).  No later than the third (3rd) business day after the closing of the sale of the Assets to the Prevailing Bidder, the Debtors shall return the Back-Up Bidder's Deposit to the Back-Up Bidder.

### *Prevailing Bidder Sale Hearing and Objection Deadline*

29.     The sale hearing to consider the relief requested in the Sale Motion (defined below) and to consider whether to approve the Prevailing Bid and the Back-Up Bid (the "**Prevailing**

**Bidder Sale Hearing**") shall be held before the Bankruptcy Court on July 30, 2015 at 9:00 a.m., prevailing Central time, at which time the Court will enter the "Prevailing Bidder Sale Order."

30.    Objections, if any, to the to approval of the sale of Assets to the Prevailing Bidder (the "**Sale Motion**") —other than an objection to the proposed assumption and assignment of the Designated Agreements or to any proposed Cure Costs—including, but not limited to, the sale of the Assets free and clear of Claims pursuant to section 363(f) of the Bankruptcy Code shall be (a) be in writing; (b) clearly specify the grounds for the objection; (c) conform to the Bankruptcy Rules and the Local Rules; and (d) be filed with the Court and served so as to be received by the following parties by email (collectively, the "**Objection Notice Parties**") by no later than 12 Noon (Central time) on July 28, 2015 (the "**Objection Deadline**"): (1) counsel for the Debtors (i) R. Glen Ayers, Jr. gayers@langleybanack.com, and (ii) Natalie F. Wilson, nwilson@langleybanack.com; (2) the Debtors, c/o Richard Whitlock RWhitlock@alixpartners.com; (2) counsel for Callidus: (i) Peter Holzer pholzer@jhwclaw.com, (ii) Michael Hammer MHammer@dickinson-wright.com and (iii) Kristi Katsma KKatsma@dickinson-wright.com; (3) counsel for the Committee: (i) Barbara Barron BBarron@bn-lawyers.com, and (ii) Stephen Sather SSather@bn-lawyers.com; and (4) the U.S. Trustee, Stephen Statham, Stephen.Statham@usdoj.gov.

31.    Any person objecting to the Sale Motion that has not filed an objection by the Objection Deadline shall not be heard at the Prevailing Bidder Sale Hearing and shall be barred from objecting to the Sale Motion.

*Modifications*

32.    The Debtors in their sole discretion, but in consultation with Callidus, the Committee, the United States Navy and MARAD, and the Brownsville Navigation District, may adopt, implement, and/or waive such other, additional or existing procedures or requirements that serves to further an orderly Auction and bid process, including, but not limited to, the imposition of a requirement that all Qualified Bidders submit sealed Qualified Bids during the Auction, all without further notice except to those parties that would be entitled to attend at an Auction or participated in the Auction, as appropriate provided that in no event shall the Debtors waive, limit or modify the option to deem a Potential Designated Contract rejected as provided for in the Bidding Procedures Order.

33.    The Debtors, in their sole discretion but in consultation with Callidus, the Committee, the United States Navy and MARAD, and the Brownsville Navigation District may (a) determine which Qualified Bid, if any, is the Prevailing Bid, and (b) reject at any time before entry of the Prevailing Bidder Sale Order approving the Prevailing Bid, any Bid that, in the discretion of the Debtors, in consultation with the DIP Lender and any Committee is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors. At or before the conclusion of the Auction, the Debtors in their sole discretion, but in consultation with Callidus, the Committee, the United States Navy and MARAD, and the Brownsville Navigation District may impose

such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in this case.

34.    The Debtors, in their sole discretion but in consultation with Callidus, the Committee, the United States Navy and MARAD, and the Brownsville Navigation District, may at any time, determine that it is in the best interests of the Debtors' estates to postpone the Auction and may modify the deadlines and procedures described above upon notice to (i) counsel for Callidus, (ii) counsel for the Committee, (iii) the United States Trustee, (iv) counsel for the United States Navy, (v) counsel for MARAD, (vi) counsel for the Brownsville Navigation District, and (vii) any party that has expressed interest in submitting a bid pursuant to these procedures (through their counsel, if represented).

**EXHIBIT 2**

*[Assumption Notice]*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **CHAPTER 11** |
| **ESCO MARINE, INC., et al.**[1] | § | |
| | § | **CASE NO. 15-20107-RSS** |
| **DEBTORS.** | § | |
| | § | **(Jointly Administered)** |

**NOTICE OF (I) CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES TO BE ASSUMED AND ASSIGNED AND**
**(II) POTENTIAL ASSUMPTION AND ASSIGNMENT OF**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      Pursuant to the *Order (A)(I) Approving Bidding Procedures In Connection With The Sale Of The Debtors' Assets And, If Applicable, By Public Auction; (II) Scheduling A Hearing To Consider The Sale Of Assets; And (III) Approving Form And Manner Of Notice Thereof; And (B) Granting Related Relief* [Docket No. ___] (the "**Bidding Procedures Order**")[2] entered by the United States Bankruptcy Court for Southern District of Texas, Corpus Christi Division (the "**Court**") on June __, 2015, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby provide notice (the "**Notice**") that they are a party to various executory contracts and unexpired leases set forth on Exhibit 1 attached hereto (each a "**Contract**" and, collectively, the "**Contracts**") and that they intend to seek to assume and assign some or all of the Contracts (each a "**Potential Designated Contract**" and, collectively, the

---

[1] The Debtors also include ESCO Metals, LLC; ESCO Shredding, LLC; Texas Best Recycling, LLC, and Texas Best Equipment, LLC. The corporate address for all debtors is 16200 Joe Garza Sr, Road, Brownsville, Texas 72521. Joint administration under the above style and case number has been ordered by the United States Bankruptcy Court on March 10, 2015. The use of the term "Debtor" shall refer to all Debtors.

[2] Capitalized terms used but not herein defined shall have the meanings set forth in the Bidding Procedures approved as part of the Bidding Procedures Order.

"**Potential Designated Contract**") to the Prevailing Bidder in connection with the proposed sale of certain of the Debtors' assets.

2.     You have been identified as a party to a Potential Designated Contract.  The Potential Designated Contract to which you have been identified as a non-Debtor counterparty is set forth on Exhibit 1 attached hereto.  If this Contract is **actually** to be assumed or assigned, a subsequent notice of such assumption and assignment will be provided.

3.     Also set forth on Exhibit 1 is the amount the Debtors' records reflect is owing to cure any and all defaults under the Potential Designated Contract to which you are a party (the "**Cure Amount**") so as to permit the assumption and assignment of such Potential Designated Contract (if designated for assumption and assignment by the Prevailing Bidder) pursuant to 11 U.S.C. § 365.

4.     Objections, if any, to the proposed Cure Amount, or to the possible assumption, assignment and/or transfer of any Potential Assumed Contract to the Prevailing Bidder, as applicable ("**Cure Objections**"), must be filed with the Court and served so as to **be actually received** on or before the later of (i) 4:00 p.m. on July 10, 2015and (ii) ten (10) days after service of any Supplemental Notice of Potential Designation and Assignment, if applicable (together, the "**Cure Objection Deadline**").  Service should be made by  email to: 1) counsel for the Debtors (i)   R.   Glen   Ayers,   Jr.   gayers@langleybanack.com,   and   (ii)   Natalie   F.   Wilson, nwilson@langleybanack.com;        (2)        the        Debtors,        c/o        Richard        Whitlock RWhitlock@alixpartners.com; (2) counsel for Callidus: (i) Peter Holzer pholzer@jhwclaw.com, (ii)   Michael   Hammer   MHammer@dickinson-wright.com   and   (iii)   Kristi   Katsma KKatsma@dickinson-wright.com;   (3)   counsel   for   the   Committee:   (i)   Barbara   Barron

BBarron@bn-lawyers.com, and (ii) Stephen Sather SSather@bn-lawyers.com; and (4) the U.S. Trustee, Stephen Statham, Stephen.Statham@usdoj.gov.

5.       Objections, if any, by Non-Debtor Counterparties other than the Brownsville Navigation District[3] to the Debtors' ability to assign the Potential Designed Contract to the Prevailing Bidder without the Non-Debtor Counterparty's consent or to the adequate assurance of future performance to be provided (the "**Adequate Assurance Objection Deadline**,")[4] must be filed with the Court and served so as to **be actually received** on or before the later of (i) 4:00 p.m. on July 15, 2015and (ii) ten (10) days after service of any Supplemental Notice of Potential Designation and Assignment, if applicable.  Service should be made by  email to: 1) counsel for the Debtors (i) R. Glen Ayers, Jr. gayers@langleybanack.com, and (ii) Natalie F. Wilson, nwilson@langleybanack.com;      (2)      the      Debtors,      c/o      Richard      Whitlock, RWhitlock@alixpartners.com; (2) counsel for Callidus: (i) Peter Holzer pholzer@jhwclaw.com, (ii)    Michael    Hammer    MHammer@dickinson-wright.com    and    (iii)    Kristi    Katsma KKatsma@dickinson-wright.com;  (3)  counsel  for  the  Committee:  (i)  Barbara  Barron BBarron@bn-lawyers.com, and (ii) Stephen Sather SSather@bn-lawyers.com; and (4) the U.S. Trustee, Stephen Statham, Stephen.Statham@usdoj.gov.

6.       Any Cure/Assignment Objection must (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules of the Court; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) if challenging a Cure Amount, set forth the prepetition cure amount being claimed by the objecting party with appropriate documentation in support thereof.

---

[3] Pursuant to the Bidding Procedures Order, the deadline for the Brownsville Navigation District to file and serve its Adequate Assurance Objection is July 28, 2015 at 12:00 noon (Central Time).

[4] Together, the Cure Objection Deadline and the Adequate Assurance Objection Deadline shall be referred to as the "**Contract Objection Deadlines**".

7.      Cure/Assignment Objections that are timely filed and cannot be resolved by the Debtors and the counterparty to the Potential Designated Contract will be heard at the Prevailing Bidder Sale Hearing unless the Debtors, Callidus, and the Committee agree otherwise or the Court orders otherwise.

8.      Unless a non-debtor counterparty to any Potential Designated Contract files a Cure/Assignment Objection by the Cure/Assignment Objection Deadline, such counterparty shall be (i) forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Contract in the event it is assumed and/or assigned by the Debtors and the Debtors shall be entitled to rely solely upon the Cure Amount, and (ii) deemed to have consented to the assumption, assignment and/or transfer of such Contract (including the transfer of any related rights and benefits thereunder) to the Prevailing Bidder or any other assignee of the relevant Contract, and shall be forever barred and estopped from asserting or claiming against the Debtors, the Prevailing Bidder, or any other assignee of the relevant Contract that any additional amounts are due or defaults exist as of the Petition Date, or conditions to assumption, assignment, and/or transfer must be satisfied under such Contract, or that any related right or benefit under such Contract cannot or will not be available to the Prevailing Bidder or any other assignee of the relevant Contract.

9.      At the Sale Hearing, the Debtors shall present evidence necessary to demonstrate adequate assurance of future performance by the Prevailing Bidder.

10.     The presence of a contract, lease, or other agreement on the attached <u>Exhibit 1</u> does not constitute an admission that such contract, lease, or other agreement is an executory contract or unexpired lease or that such contract or lease will be assumed by the Debtors and

assigned to any Prevailing Bidder. The Debtors reserve all of their rights, claims, and causes of action with respect to the contracts, leases, and other agreements listed on Exhibit 1.

11.     The Debtors may determine not to assume or assign any Contract.  At any time prior to the closing of any sale transaction for the Assets, the Prevailing Bidder may direct the Debtors to serve a notice excluding any of the Potential Designated Contracts on (i) the Non-Debtor Counterparty to such Potential Designated Contracts and (ii) all Objection Notice Parties other than the Debtors, indicating, by reasonably specific information, which Potential Designated Contracts have been excluded, and stating that the Prevailing Bidder has excluded such Potential Designated Contracts.  Upon service of such notice, but in no event later than the closing the of the sale transaction, the executory contracts and/or unexpired leases referenced in this paragraph (x) shall no longer be considered Potential Designated Contracts; (y) shall not be deemed to be, or to have been, assumed or assigned; and (z) shall remain subject to assumption, rejection or assignment by the Debtors; provided, however, that any Potential Designated Contract shall, at the election of the Non-Debtor Counterparty, be deemed rejected unless the Court orders otherwise.

Dated:  June __, 2015

Respectfully submitted,


LANGLEY & BANACK, INCORPORATED
745 East Mulberry, Suite 900
San Antonio, TX  78212-3166
Telephone:  (210)-736-6600
Fax: (210) 735-6889

By:     */s/ R. Glen Ayers, Jr.*
        R. Glen Ayers, Jr.
        State Bar No. 01467500
        David S. Gragg
        State Bar No. 08253300
        Natalie F. Wilson
        State Bar No. 24076779

        ATTORNEYS FOR THE DEBTORS

## **EXHIBIT 3**

*[Sale Notice]*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CHAPTER 11** |
| **ESCO MARINE, INC., et al.**[1] | § | |
| | § | **CASE NO. 15-20107-RSS** |
| **DEBTORS.** | § | |
| | § | **(Jointly Administered)** |

**NOTICE OF ENTRY OF ORDER (I) APPROVING BIDDING PROCEDURES IN
CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS BY PUBLIC
AUCTION AND (II) SCHEDULING A HEARING TO CONSIDER THE SALE OF
ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, ENCUMBRANCES AND INTERESTS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

***The Sale Motion***

1.      On March 7, 2015 (the "<u>Petition Date</u>"), the above-captioned debtors and

debtors in possession (collectively, the "<u>Debtors</u>") filed voluntary petitions under chapter

11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States

Bankruptcy Court for the Western District of Texas (the "<u>Bankruptcy Court</u>").

2.      The Debtors filed a motion (the "<u>Sale Motion</u>") requesting, among other

forms of relief: (a) the institution of certain bidding, auction and notice procedures for the

solicitation and consideration of competing offers for the Assets (collectively, the

"<u>Bidding Procedures</u>," attached as <u>Exhbit 1</u> to the Bidding Procedures Order (as defined

below)); (b) the sale of the Debtors' assets (the "<u>Assets</u>") free and clear of all liens,

claims (as such term is defined by section 101(5) of the Bankruptcy Code),

---

[1] The Debtors also include ESCO Metals, LLC; ESCO Shredding, LLC; Texas Best Recycling, LLC, and
Texas Best Equipment, LLC. The corporate address for all debtors is 16200 Joe Garza Sr, Road,
Brownsville, Texas 72521. Joint administration under the above style and case number has been ordered by
the United States Bankruptcy Court on March 10, 2015. The use of the term "Debtor" shall refer to all
Debtors.

encumbrances, and other interests to the Prevailing Bidder; and (c) the assumption and assignment of certain executory contracts and unexpired leases to the Prevailing Bidder.

***The Bidding Procedures Order***

3.      The Debtors are soliciting offers for the purchase of the Assets, and the Bankruptcy Court has entered an order (the "<u>Bidding Procedures Order</u>") approving auction and Bidding Procedures (the "<u>Bidding Procedures</u>") for the Assets.  The Bidding Procedures are set forth in detail in <u>Exhibit 1</u> to the Bidding Procedures Order.[2]

***Obtaining Copies of Papers***

4.      You may obtain a copy of the Sale Motion, the Bidding Procedures Order and any Asset Purchase Agreement (once available) free of charge by contacting:  R. Glen Ayers. Jr. and Natalie F. Wilson, Langley & Banack, Inc., 745 E. Mulberry Street, Suite 900, San Antonio, Texas  78212.

***Free and Clear Nature of the Sale***

5.      In connection with any APA, the Debtors and the applicable Prevailing Bidder will seek an order or orders from the Bankruptcy Court approving the sale (a "<u>Sale Order</u>").  Please note that a Sale Order is expected to provide that the Prevailing Bidder is not liable for certain claims, liens and other interests related to or connected with the Assets that could have arisen prior to closing.  ***The specific terms of sale will be provided in the proposed Sale Order and APA entered proposed to be into among the Debtors and the Prevailing Bidder.***  These materials will be filed with the Bankruptcy Court and shall be available upon request.  Promptly following the designation of the

---

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Bidding Procedures Order or the Bidding Procedures.

"Prevailing Bid" at the Auction, the Debtors will file such Bid (including the applicable APA) with the Bankruptcy Court.

### *Certain Key Dates in the Sale Process*

6.      The Bidding Procedures describe certain requirements for interested parties to participate in the bidding for the Assets.  Interested bidders are encouraged to review these requirements carefully and, for further information, are invited to contact.

7.      Bids for the Debtors' Assets meeting certain requirements set forth in the Bidding Procedures ("Qualified Bids") are due by 4:00 p.m. prevailing Central time on July 17, 2015 (or as otherwise permitted by the Bidding Procedures).

8.      Consistent with the Bidding Procedures Order, an auction of the Assets (the "Auction") is scheduled to be conducted by the Debtors commencing at 9:00 a.m. on July 23, 2015, prevailing Central time, at Langley & Banack, Inc., 745 E. Mulberry Street, Suite 900, San Antonio, Texas  78212.  All interested parties are invited to submit a Qualified Bid to purchase the Assets pursuant to the Bidding Procedures.  Only Qualified Bidders and certain other invited parties identified in the Bidding Procedures are permitted to attend the Auction, the time and place of which may change with notice only to the relevant invited parties.

9.      Additional details about these matters, and other deadlines relevant to bidding on the Assets, are contained in the Bidding Procedures.

### *Sale Hearing*

10.      A hearing to approve the APA and the sale of the Assets to the Prevailing Bidder(s) is scheduled to be conducted at 9:00 a.m. prevailing Central time on July 30, 2015 at the United States Bankruptcy Court for the Southern District of Texas, 1133 N Shoreline Blvd Corpus Christi, TX 78401, or as soon thereafter as counsel may be heard.

11.     The Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the Bankruptcy Court's calendar.

### Deadline and Procedures for Objecting to the Sale

12.     The Debtors propose that, to be timely and otherwise eligible for consideration by the Court, objections to the approval of the sale of Assets to the Prevailing Bidder, other than an objection to the proposed assumption and assignment of the Potential Designated Contracts or to any proposed Cure Costs including, but not limited to, the sale of the Assets free and clear of Claims pursuant to section 363(f) of the Bankruptcy Code for all parties in interest must: (a) be in writing; (b) clearly specify the grounds for the objection; (c) conform to the Bankruptcy Rules and the Local Rules; and (d) be filed with the Court and served so as to be received by the following parties (collectively, the "Objection Notice Parties") by no later than 12 Noon (Central time) by email on July 28, 2015 (the "Objection Deadline"): (1) counsel for the Debtors (i) R. Glen Ayers, Jr. gayers@langleybanack.com, and (ii) Natalie F. Wilson, nwilson@langleybanack.com; (2) the Debtors, c/o Richard Whitlock RWhitlock@alixpartners.com; (2) counsel for Callidus: (i) Peter Holzer pholzer@jhwclaw.com, (ii) Michael Hammer MHammer@dickinson-wright.com and (iii) Kristi Katsma KKatsma@dickinson-wright.com; (3) counsel for the Committee: (i) Barbara Barron BBarron@bn-lawyers.com, and (ii) Stephen Sather SSather@bn-lawyers.com; and (4) the U.S. Trustee, Stephen Statham, Stephen.Statham@usdoj.gov.

### Contract Procedures

13.     The Sale Order, if approved, shall authorize the assumption by the Debtors and assignment to the Prevailing Bidder of various executory contracts and unexpired

leases that are the property of the Debtors (collectively, the "Assumed Agreements"). The Court has approved certain procedures (the "Contract Procedures") that govern the Debtors' designation executory contracts and unexpired leases that may constitute an Assumed Agreement.  The Contract Procedures are set forth in detail in the Sale Motion and were approved in the Bidding Procedures Motion.

14.     The Debtors will file a notice (the "Assignment Notice") of the potential assumption and assignment of such executory contracts and unexpired leases and the proposed amounts necessary to cure defaults related thereto (the "Cure Costs") no later than July 1, 2015.  Such Assignment Notice shall be filed with the Court and shall be served by overnight delivery service on each non-debtor counterparty to an executory contract or unexpired lease with any of the Debtors (each a "Non-Debtor Counterparty") that may be assumed and assigned to the Prevailing Bidder (the "Potential Designated Contracts").  The Debtors shall attach to the Assignment Notice a list identifying the Non-Debtor Counterparties to the Potential Designated Contracts and the proposed corresponding Cure Costs under the Potential Designated Contracts as of the Petition Date.

### *Debtors' Reservation of Rights to Modify Procedures*

15.     The Debtors reserve the right to modify the Bidding Procedures as necessary, including, without limitation, any deadlines thereunder, if such modification is determined by the Debtors, in consultation with Callidus, the Committee, the United States Navy and MARAD, and the Port of Brownsville, after or as they deem appropriate to maximize value for the Debtors' estates and creditors provided that in no event shall the Debtors waive, limit, or modify the option to deem a Potential Designated Contract rejected as provided for in the Bidding Procedures Order.

16.     This Notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures Order, the Bidding Procedures and the Contract Procedures, which shall control in the event of any conflict.  The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated:  June __, 2015

Respectfully submitted,

LANGLEY & BANACK, INC.
745 East Mulberry, Suite 900
San Antonio, TX  78212-3166
Telephone:  (210)-736-6600
Fax: (210) 735-6889

By:     */s/ R. Glen Ayers, Jr.*
R. Glen Ayers, Jr.
State Bar No. 01467500
David S. Gragg
State Bar No. 08253300
        Natalie F. Wilson
State Bar No. 24076779

ATTORNEYS FOR THE DEBTORS

Brownsville Navigation District

C306<br>(EXHIBIT)

LEASING
EXHIBIT A – LEASE APPLICATION

## EXHIBIT A

## LEASE APPLICATION

GENERAL INFORMATION                          DATE: _____

COMPANY NAME: _____
ADDRESS: _____
CITY: _____ STATE: _____ ZIP: _____
PHONE:_____ FAX: _____
E-MAIL: _____ WEBPAGE: _____

REFERRED BY: _____
_____

SITE INFORMATION

AREA REQUIRED: _____
_____

SPECIAL NEEDS (RAIL, WATERFRONT, ETC.): _____
_____

PURPOSE/INDUSTRIAL ACTIVITY: _____
_____

EFFECTIVE DATE: _____ INITIAL LEASE TERM (1-5 YEARS): _____
RENEWAL OPTIONS DESIRED: _____ FTZ STATUS DESIRED: _____
ESTIMATED ANNUAL TONNAGE: _____ ESTIMATED ANNUAL RAILCARS: _____
ESTIMATED TOTAL EMPLOYEES: _____
RENT PAYABLE TERMS: _____
_____

CORPORATE INFORMATION

CORPORATION _____
PARTNERSHIP _____
INDIVIDUAL  _____
LLC         _____

<strong>INDUSTRIAL DEVELOPMENT DEPT.</strong><br>
<strong>1000 Foust Road    Brownsville, TX 78521    Ph (956) 831-4592  Fax (956) 831-6185</strong>

Date Issued: 10/17/1979                                    Page **22** of 50
Date Updated: 11/20/2012
C306(EXHIBIT A)

Brownsville Navigation District

C306
(EXHIBIT)

LEASING
EXHIBIT A – LEASE APPLICATION

PRINCIPAL OFFICERS AND TITLES:

_____
_____
_____

PERSON RESPONSIBLE FOR LEASE APPLICATION: _____

TITLE: _____ PH: _____

EMAIL: _____

SIGNATURE: _____

*The Brownsville Navigation District Board of Commissioners reserves the right to withhold approval of any lease, sublease, assignment of lease or amendment if the party requesting such approval (the "Applicant) or any affiliate of such party has an account with the BND which is not current.*

FOR CORPORATION OR LIMITED PARTNERSHIPS ONLY:
Are the principals able to individually guarantee the lease, or would they prefer to post a bond? _____

CREDIT INFORMATION

LIST BANK/CREDIT REFERENCES:

_____

_____

_____

CORPORATIONS:      Provide copy of Charter and Resolution naming person(s) authorized to sign lease documents, etc.
PARTNERSHIPS:      Provide copy of Partnership Agreement.
INDIVIDUALS:       Provide an Assumed Name Certificate.
LLC:               Provide Articles of Organization.

### ALL APPLICANTS MUST FURNISH FINANCIAL STATEMENTS

For BND Use:

**INDUSTRIAL DEVELOPMENT DEPT.**
**1000 Foust Road      Brownsville, TX 78521      Ph (956) 831-4592   Fax (956) 831-6185**

Date Issued: 10/17/1979
Date Updated:  11/20/2012
C306(EXHIBIT A)

Page **23** of **50**

## BROWNSVILLE NAVIGATION DISTRICT
Potable Water Service Agreement

**PURPOSE.** The Brownsville Navigation District Water System is responsible for protecting the drinking water supply from contamination which could result from improper plumbing practices. The purpose of this service agreement is to notify each customer of the plumbing restrictions which are in place to provide this protection. The Brownsville Navigation District enforces these restrictions to ensure the public health and welfare. Each customer must sign this agreement before the Brownsville Navigation District will begin service. In addition, when service to an existing connection has been suspended or terminated, the Brownsville Navigation District will not re-establish service unless it has a signed copy of this agreement.

**PLUMBING RESTRICTIONS.** The following undesirable plumbing practices are prohibited by State regulations.
No direct connection between the public drinking water supply and a potential source of contamination is permitted. Potential sources of contamination will be isolated from the public water system by an air-gap or an appropriate backflow prevention device.
No cross-connection between the public drinking water supply and a private water system is permitted. These potential threats to the public drinking water supply shall be eliminated at the service connection by the installation of an air-gap or a reduced pressure-zone backflow prevention device.
No connection which allows water to be returned to the public drinking water supply is permitted.
No pipe or pipe fitting which contains more than 8.0% lead may be used for the installation or repair of plumbing at any connection which provides water for human use.
No solder or flux which contains more than 0.2% lead can be used for the installation or repair of plumbing at any connection which provides water for human use.

**SERVICE AGREEMENT.** The following are the terms of the service agreement between the Brownsville Navigation District (the Water System) and the below named customer (the Customer).
The Water System will maintain a copy of this agreement as long as the customer and/or the premises is connected to the water system.
The Customer shall allow his property to be inspected for possible cross-connections and other undesirable plumbing practices. These inspections shall be conducted by the Water System or its designed representative prior to initiating service and periodically thereafter. The inspections shall be conducted during the Water System's normal business hours.
The Water System shall notify the customer in writing of any cross-connection or other undesirable plumbing practice which has been identified during the initial inspection or the periodic inspection.
The Customer shall immediately correct any undesirable plumbing practice on his premises.
The Customer shall, at his expense, properly install, test, and maintain any backflow prevention device required by the Water System. Copies of all testing and maintenance records shall be provided to the Water System.

Brownsville Navigation District

LEASING
EXHIBIT A – LEASE APPLICATION

---

**ENFORCEMENT.**  If the Customer fails to comply with the terms of this Service Agreement, the Water System shall, at its option, either terminate service or properly install, test, and maintain an appropriate backflow prevention device at the service connection.  Any expenses associated with the enforcement of this agreement shall be billed to the customer.

CUSTOMER'S NAME:  _____

CUSTOMER'S
SIGNATURE:  _____

DATE:  _____

Brownsville Navigation District

LEASING
EXHIBIT B – FINANCIAL INFORMATION

## EXHIBIT B

## FINANCIAL INFORMATION

### CORPORATIONS

1.  Name and corporate headquarters address, phone number and state in which incorporated.

2.  Related companies and their relationship to this corporation, identifying address of corporate headquarters, phone number, state in which incorporated and officer to contact.

3.  Financial Statements (Balance Sheet and Profit and Loss Statement) for the most recent two years, audited by CPA.

4.  Interim Statement for current year, if available.

5.  Principals of the Corporation, name address and phone number.

6.  Bank references, including bank accounts numbers, officers who handle the accounts, and reference letters from the banks to BND.

7.  Six Trade references from whom purchases are made on a 30-day basis.

8.  Dun & Bradstreet report.

**Note**:  Additional financial information may be required of principals.

### NEW CORPORATIONS

1. Same as above to the extent possible plus above item 3, 6 and 7 for the principal of the corporation.

### INDIVIDUALS AND PARTNERSHIPS

1. Requirements are the same as for Corporations as applicable.

## FINANCIAL STATEMENTS MUST BE SIGNED BY
## AUTHORIZED OFFICIAL.

Brownsville Navigation District
1000 Foust Road • Ph (956) 831-4592 • (800) 378-5395 • Fax (956) 831-5006
www.portofbrownsville.com

---

Date Issued: 10/17/1979
Date Updated:  11/20/2012
C306(EXHIBIT B)

Page **26** of **50**

Brownsville Navigation District

LEASING
EXHIBIT C – LEASING REFERRAL MEMORANDUM

## EXHIBIT C

## LEASING REFERRAL MEMORANDUM

Referrals by authorized agents, when signed by both Customer and Agent, are by the Brownsville Navigation District (BND) for six months. The referral imposes no obligation or additional lease cost upon the customer.

*CUSTOMER INFORMATION*:

Name of Firm: _____

Name of Representative: _____

Mailing Address: _____
_____

Phone Number: _____ Fax Number: _____

Date: _____ Signature: _____

-------------------------------------------------------------------------------------------------------

*AGENT INFORMATION:*

Name of Agent: _____

Mailing Address: _____
_____

Phone Number: _____ Fax Number: _____

Date: _____ Signature: _____

Industrial Development Dept.
Ph. (956) 831-4592 – Fax. (956) 831-6185
Revised: 03/11/98

Brownsville Navigation District
1000 Foust Road • (956) 831-4592 • (800) 378-5395 • Fax (956) 831-5006
www.portofbrownsville.com

Date Issued: 10/17/1979
Date Updated: 11/20/2012
C306(EXHIBIT C)

Brownsville Navigation District

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

## EXHIBIT D

## BROWNSVILLE NAVIGATION DISTRICT
## INSURANCE REQUIREMENTS
### Level One

These requirements are applicable to lessees who meet the following criteria and who have no employees who are not officers or family members.

- Sole Proprietors, Partnerships, or Limited Liability Corporations
- Lease sites up to 5 acres (all sites for a particular lessee will be combined for comparison to this qualification)
- Lessees who do not operate liquid bulk terminals
- Lessees who do not perform ship breaking or ship repairs
- Lessees who do not receive, process or store scrap materials
- Lessees who do not handle hazardous materials

| **Workers' Compensation** |
|---|
| Not Required - *The requirement for Workers' Compensation Insurance is waived for lessees who meet the above criteria.* |

| **Comprehensive General Liability** | |
|---|---|
| Comprehensive General Liability including Broad Form Liability, Personal Injury Liability, Contractual Liability, Products/completed operations Liability and including coverage for: <br> (1) Explosion, collapse, and underground, and <br> (2) For goods, vessels and property of whatever description belonging to others while in the care, custody, and control of the lessee. <br> An acceptable option would be Warehouse Legal and/or Wharfingers Legal Liability coverage. | |
| a.  Bodily Injury | $ 1,000,000 Each occurrence |
| b.  Property Damage | $ 2,000,000 Each aggregate |
| c.  Alternate to a. & b. | Combined single limit of $ 2,000,000 |

| **Comprehensive Automobile Liability** | | |
|---|---|---|
| a.  Bodily Injury | $ 1,000,000 <br> each person | $ 1,000,000 <br> each occurrence |
| b.  Property Damage | $ 1,000,000 each occurrence | |
| c.  Alternate to a. & b. | Combined single limit of $ 1,000,000 | |
| Automobile Liability Coverage to include: <br> - All owned vehicles <br> - All non-owned vehicles <br> - All hired vehicles | *In the event automobile liability is written with split limits, there should not be less than $1,000,000 per accident for bodily injury liability nor less than $1,000,000 per accident for property damage liability.* | |

Date Issued: 10/17/1979
Date Updated:  11/20/2012
C306(EXHIBIT D)

Brownsville Navigation District

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

| |
|---|
| Personal automobile liability policies used to satisfy all or part of this requirement must be submitted in full and must not contain an exclusion for business use of a vehicle. |
| If lessee has not owned automobiles, non-owned and hired automobile coverage may be provided as a part of the Comprehensive General Liability Policy. |

| Protection and Indemnity (P & I) | |
|---|---|
| If a vessel is to be used by the lessee, P & I must be provided to include the vessel and the crew. | Value of the vessel or $1,000,000 limit, whichever is greater. |

| Pollution Liability Insurance | | |
|---|---|---|
| The following types of Pollution Liability Insurance are required: | | |
| X | Pollution Liability | $ 1,000,000 Each occurrence |
| | Environmental Impairment Liability | $ 1,000,000 Each occurrence |
| | Storage Tank Liability | $ 1,000,000 Each occurrence |
| X | Sudden and Accidental | $ 1,000,000 Each occurrence<br>No less than 72 hours' discovery requirement<br>No less than 30 day's reporting requirement |

| Deductible |
|---|
| These insurance policies shall have a combined deductible and/or self insured retention of no more than<br>$1,000.00.<br>Umbrella policies may carry a self-insured retention of up to $25,000 |

| Proof of Insurance Required |
|---|
| Certificates of insurance as well as the declarations page from all policies will be submitted to the District as proof of insurance. |

| Additional Insured and Notice of Cancellation or Change Endorsements |
|---|
| All policies shall be endorsed to name the Brownsville Navigation District d/b/a The Port of Brownsville as an additional insured and shall be endorsed to require that the insurance will not be cancelled or changed without giving the District 30 days prior written notice. |

| Endorsements Required |
|---|
| Copies of endorsements regarding deductible and/or self insurance and the required additional insured and notice of cancellation or change notices. Copies of all endorsements that limit coverage or impose exclusions to coverage must also be submitted. |

| Notes |
|---|
| The above minimum requirements may be covered exclusively by primary insurance or may be covered by a combination of primary and umbrella liability insurance. The insurance shall have a combined deductible and/or self insured retention of no more than $1,000.00. |

Brownsville Navigation District

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

---

**The District reserves the right to request a copy of any and all insurance policies for review.**

Individual exceptions to any of the above requirements may be granted or required due to unavailability of coverage, risk factor, magnitude of operations, or other individual reasons.

*The requirements and limits in this document are acceptable for the lessee at the time of the preparation of the lease. The District reserves the right to amend these requirements in response to changes in the lessee's business, such as the addition of outside employees or a change in the lessees' business organization or the purpose of the lease.*

---

Case 1:22-cv-01007 Document 24-3 Filed in TXSB on 06/26/15 Page 48 of 61

Brownsville Navigation District

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

**Brownsville Navigation District**
**INSURANCE REQUIREMENTS**

## Workers' Compensation Insurance Disclaimer

The Insurance Requirements – Level One of the Brownsville Navigation District do not impose a requirement for certain lessees to carry Workers' Compensation Insurance. In order for a lessee to qualify for this level of insurance, the following criteria must be met:

Level One Insurance requirements are applicable to lessees who have no employees who are not officers or family members, and meet the following additional criteria:

- They are Sole Proprietors, Partnerships, or Limited Liability Corporations
- They lease sites up to 5 acres
- They do not operate liquid bulk terminals
- They do not perform ship breaking or ship repairs
- They do not receive, process or store scrap materials
- They do not handle hazardous materials

By signing below, I certify that I meet all of the following criteria and am therefore qualified for Insurance Requirements – Level One.

_____  ___        _____

Signature                                          Date

Brownsville Navigation District

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

**Brownsville Navigation District**
**INSURANCE REQUIREMENTS**
<u>**Level Two**</u>

These requirements are applicable to lessees who meet the following criteria and who have employees who are not officers or family members:

- Small Business, other than Sole Proprietors, Partnerships and Limited Liability Corporations
- Lease sites up to 5 acres (all sites for a particular lessee will be combined for comparison to this qualification)
- Lessees who do not operate liquid bulk terminals
- Lessees who do not perform ship breaking or ship repairs
- Lessees who do not receive, process or store scrap materials
- Lessees who do not handle hazardous materials

| Workers' Compensation | |
|---|---|
| a. Employer's Liability | $1,000,000 limit |
| b. Longshoremen and Harbormaster's Act (if applicable) | Statutory |
| c. Jones Act (if applicable) <br> Jones Act coverage may be included in the P & I policy, if required. | $1,000,000 |
| Waiver of Subrogation Endorsement in favor of the Brownsville Navigation District d/b/a The Port of Brownsville for this policy must be submitted. | |

| Comprehensive General Liability | |
|---|---|
| Comprehensive General Liability including Broad Form Liability, Personal Injury Liability, Contractual Liability, Products/completed operations Liability and including coverage for: <br> (3) Explosion, collapse, and underground, and <br> (4) For goods, vessels and property of whatever description belonging to others while in the care, custody, and control of the lessee <br> An acceptable option would be Warehouse Legal and/or Wharfingers Legal Liability coverage. | |
| d. Bodily Injury | $ 1,000,000 Each occurrence |
| e. Property Damage | $ 2,000,000 Each aggregate |
| f. Alternate to a. & b. | Combined single limit of $ 2,000,000 |

| Comprehensive Automobile Liability | | |
|---|---|---|
| d. Bodily Injury | $ 1,000,000 each person | $ 1,000,000 each occurrence |
| e. Property Damage | $ 1,000,000 each occurrence | |
| f. Alternate to a. & b. | Combined single limit of $ 1,000,000 | |

Date Issued: 10/17/1979
Date Updated: 11/20/2012
C306(EXHIBIT D)

Brownsville Navigation District

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

C306
(EXHIBIT)

| Automobile Liability Coverage to include: <br> - All owned vehicles <br> - All non-owned vehicles <br> - All hired vehicles | *In the event automobile liability is written with split limits, there should not be less than $1,000,000 per accident for bodily injury liability nor less than $1,000,000 per accident for property damage liability.* |
|---|---|

Personal automobile liability policies used to satisfy all or part of this requirement must be submitted in full and must not contain an exclusion for business use of a vehicle.

If lessee has no owned automobiles, non-owned and hired automobile coverage may be provided as part of the Comprehensive General Liability Policy.

**Protection and Indemnity (P & I)**

| If a vessel is to be used by the lessee, P & I must be provided to include the vessel and the crew. Hull coverage must be equal to the value of the vessel. | Value of the vessel or $1,000,000 limit, whichever is greater. |
|---|---|

**Pollution Liability Insurance**

The following types of Pollution Liability Insurance are required:

| | | |
|---|---|---|
| X | Pollution Liability | $ 1,000,000 Each occurrence |
| | Environmental Impairment Liability | $ 1,000,000 Each occurrence |
| | Storage Tank Liability <br> *(if storage tanks are located on the lease site)* <br> All underground and above-ground storage tanks need to be included for coverage. | $ 1,000,000 Each occurrence |
| X | Sudden and Accidental | $ 1,000,000 Each occurrence <br> No less than 72 hours' discovery requirement <br> No less than 30 day's reporting requirement |
| X | Water Pollution Liability | $ 5,000,000 Each occurrence |

**Subcontractor Insurance Requirements**

- Each subcontractor hired by the lessee must carry, at the minimum, the same levels of insurance coverage that is required by the lessee. The subcontractor must adhere to the same requirements listed in "Additional Insurance and Notice of Cancellation or Change Endorsements", "Endorsements Required", below.
- Subcontractors will be required to carry "Contractor's Pollution Liability" and/or "Errors and Omissions Coverage", as appropriate.
- Certificates of Insurance and other Proofs of Insurance must be provided to, and must be maintained by the lessee.

**Deductible**

Each of the required policies should not have a deductible and/or self-insured retention in excess of:
$2,500.00.
Umbrella policies may carry a self-insured retention of up to $25,000.

Date Issued: 10/17/1979
Date Updated: 11/20/2012
C306(EXHIBIT D)

Page **33** of **50**

Brownsville Navigation District

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

---

**Proof of Insurance Required**

Certificates of insurance as well as the declarations page from all policies will be submitted to the District as proof of insurance.

---

**Additional Insured and Notice of Cancellation or Change Endorsements**

All policies shall be endorsed to name the Brownsville Navigation District d/b/a The Port of Brownsville as an additional insured and shall be endorsed to require that the insurance will not be cancelled or changed without giving the District 30 days prior written notice. All policies must be endorsed with a Waiver of Subrogation in favor of the District.

---

**Endorsements Required**

Copies of endorsements regarding deductible and/or self insurance and the required additional insured and notice of cancellation or change notices. Copies of all endorsements that limit coverage or impose exclusions to coverage must also be submitted.

---

**Notes**

The above minimum requirements may be covered exclusively by primary insurance or may be covered by a combination of primary and umbrella liability insurance. The insurance shall have a combined deductible and/or self-insured retention of no more than $2,500.00.

---

**The District reserves the right to request a copy of any and all insurance policies for review.**

---

Individual exceptions to any of the above requirements may be granted or required due to unavailability of coverage, risk factor, magnitude of operations, or other individual reasons.

---

*The requirements and limits in this document are acceptable for the lessee at the time of the preparation of the lease. The District reserves the right to amend these requirements in response to changes in the lessee's business, such as the addition of outside employees or a change in the lessees' business organization or the purpose of the lease.*

---

Brownsville Navigation District

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

**Brownsville Navigation District**
**INSURANCE REQUIREMENTS**
**Level Three**

These requirements are applicable to lessees who meet the following criteria and who have employees who are not officers or family members:

- Lease sites of more than 5 acres but less than 20 acres (all sites for a particular lessee will be combined for comparison to this qualification)
- Lessees who do not operate liquid bulk terminals
- Lessees who do not perform ship breaking or ship repairs
- Lessees who do not receive, process or store scrap materials
- Lessees who do not handle hazardous materials

| Workers' Compensation | |
|---|---|
| d. Employer's Liability | $1,000,000 limit |
| e. Longshoremen and Harbormaster's Act (if applicable) | Statutory |
| f. Jones Act (if applicable)<br>Jones Act coverage may be included in the P & I policy, if required. | $1,000,000 |

Waiver of Subrogation Endorsement in favor of the Brownsville Navigation District d/b/a The Port of Brownsville for this policy must be submitted.

| Comprehensive General Liability | |
|---|---|

Comprehensive General Liability including Broad Form Liability, Personal Injury Liability, Contractual Liability, Products/completed operations Liability and including coverage for:
  (5) Explosion, collapse, and underground, and
  (6) For goods, vessels and property of whatever description belonging to others while in the care, custody, and control of the lessee
An acceptable option would be Warehouse Legal and/or Wharfingers Legal Liability coverage.

| g. Bodily Injury | $ 3,000,000 Each occurrence |
|---|---|
| h. Property Damage | $ 3,000,000 Each aggregate |
| i. Alternate to a. & b. | Combined single limit of $ 3,000,000 |

| Comprehensive Automobile Liability | | |
|---|---|---|
| g. Bodily Injury | $ 1,000,000<br>each person | $ 1,000,000<br>each occurrence |
| h. Property Damage | $ 1,000,000 each occurrence | |
| i. Alternate to a. & b. | Combined single limit of $ 1,000,000 | |

Date Issued: 10/17/1979
Date Updated: 11/20/2012
C306(EXHIBIT D)

Brownsville Navigation District

C306
(EXHIBIT)

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

| Automobile Liability Coverage to include:<br>- All owned vehicles<br>- All non-owned vehicles<br>- All hired vehicles | *In the event automobile liability is written with split limits, there should not be less than $1,000,000 per accident for bodily injury liability nor less than $1,000,000 per accident for property damage liability.* |
|---|---|
| Personal automobile liability policies used to satisfy all or part of this requirement must be submitted in full and must not contain an exclusion for business use of a vehicle. | |
| If lessee has no owned automobiles, non-owned and hired automobile coverage may be provided as part of the Comprehensive General Liability Policy. | |

| **Protection and Indemnity (P & I)** | |
|---|---|
| If a vessel is to be used by the lessee, P & I must be provided to include the vessel and the crew.  Hull coverage must be equal to the value of the vessel. | Value of the vessel or $1,000,000 limit, whichever is greater. |

| **Pollution Liability Insurance** | | |
|---|---|---|
| The following types of Pollution Liability Insurance are required: | | |
| X | Pollution Liability | $ 2,000,000 Each occurrence |
| | Environmental Impairment Liability | $ 2,000,000 Each occurrence |
| | Storage Tank Liability<br>*(if storage tanks are located on the lease site)*<br>All underground and above-ground storage tanks need to be included for coverage. | $ 2,000,000 Each occurrence |
| X | Sudden and Accidental | $ 2,000,000 Each occurrence<br>No less than 72 hours' discovery requirement<br>No less than 30 day's reporting requirement |
| X | Water Pollution Liability | $ 5,000,000 Each occurrence |

| **Subcontractor Insurance Requirements** |
|---|
| • Each subcontractor hired by the lessee must carry, at the minimum, the same levels of insurance coverage that is required by the lessee.  The subcontractor must adhere to the same requirements listed in "Additional Insurance and Notice of Cancellation or Change Endorsements", "Endorsements Required", below.<br>• Subcontractors will be required to carry "Contractor's Pollution Liability" and/or "Errors and Omissions Coverage", as appropriate.<br>• Certificates of Insurance and other Proofs of Insurance must be provided to, and must be maintained by the lessee. |

| **Deductible** |
|---|
| Each of the required policies should not have a deductible and/or self-insured retention in excess of:<br>$10,000.00. |

Brownsville Navigation District

C306
(EXHIBIT)

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

---

**Proof of Insurance Required**

Certificates of insurance as well as the declarations page from all policies will be submitted to the District as proof of insurance.

**Additional Insured and Notice of Cancellation or Change Endorsements**

All policies shall be endorsed to name the Brownsville Navigation District d/b/a The Port of Brownsville as an additional insured and shall be endorsed to require that the insurance will not be cancelled or changed without giving the District 30 days prior written notice. All policies must be endorsed with a Waiver of Subrogation in favor of the District.

**Endorsements Required**

Copies of endorsements regarding deductible and/or self insurance and the required additional insured and notice of cancellation or change notices. Copies of all endorsements that limit coverage or impose exclusions to coverage must also be submitted.

**Notes**

The above minimum requirements may be covered exclusively by primary insurance or may be covered by a combination of primary and umbrella liability insurance. The insurance shall have a combined deductible and/or self insured retention of no more than $10,000.00.

**The District reserves the right to request a copy of any and all insurance policies for review.**

Individual exceptions to any of the above requirements may be granted or required due to unavailability of coverage, risk factor, magnitude of operations, or other individual reasons.

*The requirements and limits in this document are acceptable for the lessee at the time of the preparation of the lease. The District reserves the right to amend these requirements in response to changes in the lessee's business, such as the addition of outside employees or a change in the lessees' business organization or the purpose of the lease.*

Brownsville Navigation District

C306<br>(EXHIBIT)

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

**Brownsville Navigation District**
**INSURANCE REQUIREMENTS**
<u>**Level Four**</u>

These requirements are applicable to lessees of all business types who have lease sites that are:

- Lease sites of more than 20 acres (all sites for a particular lessee will be combined for comparison to this qualification)
- Lessees who do not operate liquid bulk terminals
- Lessees who do not perform ship breaking or ship repairs
- Lessees who do not receive, process or store scrap materials
- Lessees who do not handle hazardous materials

| **Workers' Compensation** | |
|---|---|
| g. Employer's Liability | $1,000,000 limit |
| h. Longshoremen and Harbormaster's Act (if applicable) | Statutory |
| i. Jones Act (if applicable) <br> Jones Act coverage may be included in the P & I policy, if required. | $1,000,000 |

Waiver of Subrogation Endorsement in favor of the Brownsville Navigation District d/b/a The Port of Brownsville for this policy must be submitted.

| **Comprehensive General Liability** | |
|---|---|

Comprehensive General Liability including Broad Form Liability, Personal Injury Liability, Contractual Liability, Products/completed operations Liability and including coverage for:

(7) Explosion, collapse, and underground, and
(8) For goods, vessels and property of whatever description belonging to others while in the care, custody, and control of the lessee

An acceptable option would be Warehouse Legal and/or Wharfingers Legal Liability coverage.

| | |
|---|---|
| j. Bodily Injury | $ 5,000,000 Each occurrence |
| k. Property Damage | $ 5,000,000 Each aggregate |
| l. Alternate to a. & b. | Combined single limit of $ 5,000,000 |

| **Comprehensive Automobile Liability** | | |
|---|---|---|
| j. Bodily Injury | $ 1,000,000 <br> each person | $ 1,000,000 <br> each occurrence |
| k. Property Damage | $ 1,000,000 each occurrence | |
| l. Alternate to a. & b. | Combined single limit of $ 1,000,000 | |

Date Issued: 10/17/1979
Date Updated: 11/20/2012
C306(EXHIBIT D)

Page **38** of **50**

Brownsville Navigation District

C306<br>(EXHIBIT)

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

| Automobile Liability Coverage to include:<br>- All owned vehicles<br>- All non-owned vehicles<br>- All hired vehicles | *In the event automobile liability is written with split limits, there should not be less than $1,000,000 per accident for bodily injury liability nor less than $1,000,000 per accident for property damage liability.* |
|---|---|
| Personal automobile liability policies used to satisfy all or part of this requirement must be submitted in full and must not contain an exclusion for business use of a vehicle. | |
| If lessee has no owned automobiles, non-owned and hired automobile coverage may be provided as part of the Comprehensive General Liability Policy. | |

| **Protection and Indemnity (P & I)** | |
|---|---|
| If a vessel is to be used by the lessee, P & I must be provided to include the vessel and the crew.  Hull coverage must be equal to the value of the vessel. | Value of the vessel or $1,000,000 limit, whichever is greater. |
| Tower's and Charter's Liability must be provided as appropriate. | |

| **Pollution Liability Insurance** | | |
|---|---|---|
| The following types of Pollution Liability Insurance are required: | | |
| X | Pollution Liability | $ 5,000,000 Each occurrence |
| | Environmental Impairment Liability | $ 5,000,000 Each occurrence |
| | Storage Tank Liability<br>*(if storage tanks are located on the lease site)*<br>All underground and above-ground storage tanks need to be included for coverage. | $ 5,000,000 Each occurrence |
| X | Sudden and Accidental | $ 5,000,000 Each occurrence<br>No less than 72 hours' discovery requirement<br>No less than 30 day's reporting requirement |
| X | Water Pollution Liability | $ 5,000,000 Each occurrence |

| **Subcontractor Insurance Requirements** |
|---|
| • Each subcontractor hired by the lessee must carry, at the minimum, the same levels of insurance coverage that is required by the lessee.  The subcontractor must adhere to the same requirements listed in "Additional Insurance and Notice of Cancellation or Change Endorsements", "Endorsements Required", below.<br>• Subcontractors will be required to carry "Contractor's Pollution Liability" and/or "Errors and Omissions Coverage", as appropriate.<br>• Certificates of Insurance and other Proofs of Insurance must be provided to, and must be maintained by the lessee. |

| **Deductible** |
|---|
| Each of the required policies should not have a deductible and/or self-insured retention in excess of:<br>$50,000.00. |

Brownsville Navigation District

C306
(EXHIBIT)

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

---

**Proof of Insurance Required**

Certificates of insurance as well as the declarations page from all policies will be submitted to the District as proof of insurance.

---

**Additional Insured and Notice of Cancellation or Change Endorsements**

All policies shall be endorsed to name the Brownsville Navigation District d/b/a The Port of Brownsville as an additional insured and shall be endorsed to require that the insurance will not be cancelled or changed without giving the District 30 days prior written notice. All policies must be endorsed with a Waiver of Subrogation in favor of the District.

---

**Endorsements Required**

Copies of endorsements regarding deductible and/or self insurance and the required additional insured and notice of cancellation or change notices. Copies of all endorsements that limit coverage or impose exclusions to coverage must also be submitted.

---

**Notes**

The above minimum requirements may be covered exclusively by primary insurance or may be covered by a combination of primary and umbrella liability insurance. The insurance shall have a combined deductible and/or self insured retention of no more than $50,000.00.

---

**The District reserves the right to request a copy of any and all insurance policies for review.**

---

Individual exceptions to any of the above requirements may be granted or required due to unavailability of coverage, risk factor, magnitude of operations, or other individual reasons.

---

*The requirements and limits in this document are acceptable for the lessee at the time of the preparation of the lease. The District reserves the right to amend these requirements in response to changes in the lessee's business, such as the addition of outside employees or a change in the lessees' business organization or the purpose of the lease.*

Date Issued: 10/17/1979
Date Updated: 11/20/2012
C306(EXHIBIT D)

Brownsville Navigation District

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

**Brownsville Navigation District**
**INSURANCE REQUIREMENTS**
**Level Five**

These requirements are applicable to lessees of all business types who have lease sites that are:

- Lessees who operate liquid bulk terminals
- Lessees who perform ship breaking or ship repairs
- Lessees who receive, process or store scrap materials
- Lessees who handle hazardous materials

| Workers' Compensation | |
|---|---|
| j. Employer's Liability | $1,000,000 limit |
| k. Longshoremen and Harbormaster's Act (if applicable) | Statutory |
| l. Jones Act (if applicable) <br> Jones Act coverage may be included in the P & I policy, if required. | $1,000,000 |
| Waiver of Subrogation Endorsement in favor of the Brownsville Navigation District d/b/a The Port of Brownsville for this policy must be submitted. | |

| Comprehensive General Liability | |
|---|---|
| Comprehensive General Liability including Broad Form Liability, Personal Injury Liability, Contractual Liability, Products/completed operations Liability and including coverage for: <br>   (9) Explosion, collapse, and underground, and <br>   (10)    For goods, vessels and property of whatever description belonging to others while in the care, custody, and control of the lessee <br> An acceptable option would be Warehouse Legal and/or Wharfingers Legal Liability coverage. | |
| m. Bodily Injury | $ 21,000,000 Each occurrence |
| n. Property Damage | $ 21,000,000 Each aggregate |
| o. Alternate to a. & b. | Combined single limit of $ 21,000,000 |

| Comprehensive Automobile Liability | | |
|---|---|---|
| m. Bodily Injury | $ 1,000,000 <br> each person | $ 1,000,000 <br> each occurrence |
| n. Property Damage | $ 1,000,000 each occurrence | |
| o. Alternate to a. & b. | Combined single limit of $ 1,000,000 | |
| Automobile Liability Coverage to include: <br> - All owned vehicles <br> - All non-owned vehicles <br> - All hired vehicles | *In the event automobile liability is written with split limits, there should not be less than $1,000,000 per accident for bodily injury liability nor less than $1,000,000 per accident for property damage liability.* | |

Date Issued: 10/17/1979
Date Updated: 11/20/2012
C306(EXHIBIT D)

Brownsville Navigation District

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

| |
|---|
| Personal automobile liability policies used to satisfy all or part of this requirement must be submitted in full and must not contain an exclusion for business use of a vehicle. |
| If lessee has no owned automobiles, non-owned and hired automobile coverage may be provided as part of the Comprehensive General Liability Policy. |

| **Protection and Indemnity (P & I)** | |
|---|---|
| If a vessel is to be used by the lessee, P & I must be provided to include the vessel and the crew.  Hull coverage must be equal to the value of the vessel. | Value of the vessel or $1,000,000 limit, whichever is greater. |

**Vessels/Rigs/Barges brought into the Port of Brownsville to be scrapped or to be repaired must have P & I coverage for the duration of the port call.  Proof of this insurance is to be submitted with the Berth Application.**

Towers' and Charterer's Liability must be provided as appropriate.

| **Pollution Liability Insurance** | | |
|---|---|---|
| The following types of Pollution Liability Insurance are required: | | |
| X | Pollution Liability | $ 50,000,000 Each occurrence |
| X | Environmental Impairment Liability | $ 50,000,000 Each occurrence |
| X | Storage Tank Liability *(if storage tanks are located on the lease site)* All underground and above-ground storage tanks need to be included for coverage. | |
| | • Up to 500,000 bbl. capacity | $20,000,000 Each occurrence |
| | • 500,000 to 1,000,000 bbl. capacity | $30,000,000 Each occurrence |
| | • 1,000,000 to 1,500,000 bbl. capacity | $40,000,000 Each occurrence |
| | • 1,500,000 bbl. and over capacity | $50,000,000 Each occurrence |
| X | Sudden and Accidental | $ 50,000,000 Each occurrence No less than 72 hours' discovery requirement No less than 30 day's reporting requirement |
| X | Water Pollution Liability | $ 5,000,000 Each occurrence |

| **Subcontractor Insurance Requirements** |
|---|
| <ul><li>Each subcontractor hired by the lessee must carry, at the minimum, the same levels of insurance coverage that is required by the lessee.  The subcontractor must adhere to the same requirements listed in "Additional Insurance and Notice of Cancellation or Change Endorsements", "Endorsements Required", below.</li><li>Subcontractors will be required to carry "Contractor's Pollution Liability" and/or "Errors and Omissions Coverage", as appropriate.</li><li>Certificates of Insurance and other Proofs of Insurance must be provided to, and must be maintained by the lessee.</li></ul> |

Date Issued: 10/17/1979
Date Updated: 11/20/2012
C306(EXHIBIT D)

Brownsville Navigation District

C306<br>(EXHIBIT)

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

---

**Deductible**

Each of the required policies should not have a deductible and/or self-insured retention in excess of:<br>$100,000.00.

---

**Proof of Insurance Required**

Certificates of insurance as well as the declarations page from all policies will be submitted to the District as proof of insurance.

---

**Additional Insured and Notice of Cancellation or Change Endorsements**

All policies shall be endorsed to name the Brownsville Navigation District d/b/a The Port of Brownsville as an additional insured and shall be endorsed to require that the insurance will not be cancelled or changed without giving the District 30 days prior written notice. All policies must be endorsed with a Waiver of Subrogation in favor of the District.

---

**Endorsements Required**

Copies of endorsements regarding deductible and/or self insurance and the required additional insured and notice of cancellation or change notices. Copies of all endorsements that limit coverage or impose exclusions to coverage must also be submitted.

---

**Notes**

The above minimum requirements may be covered exclusively by primary insurance or may be covered by a combination of primary and umbrella liability insurance. The insurance shall have a combined deductible and/or self insured retention of no more than $100,000.00.

---

**The District reserves the right to request a copy of any and all insurance policies for review.**

---

Individual exceptions to any of the above requirements may be granted or required due to unavailability of coverage, risk factor, magnitude of operations, or other individual reasons.

---

*The requirements and limits in this document are acceptable for the lessee at the time of the preparation of the lease. The District reserves the right to amend these requirements in response to changes in the lessee's business, such as the addition of outside employees or a change in the lessees' business organization or the purpose of the lease.*

Brownsville Navigation District

LEASING
EXHIBIT D – INSURANCE REQUIREMENTS

**Brownsville Navigation District**
**Insurance Requirements**
**Pollution Insurance Coverages**

**Pollution Liability** – This insurance is utilized to cover property contamination liabilities and costs. Coverage is to include third party claims for cleanup, bodily injury, and property damage, first party (policy holder) claims for property damage, including cleanup required by regulators and legal defense costs. This is usually a stand-alone policy.

**Contractor's Pollution Liability** – This coverage is required of contractors and consultants. It is to provide coverage for bodily injury, property damage and environmental damage arising out of covered operations performed by the insured contractor or consultant on a third party's real property, pollution arising out of professional services rendered by the insured contractor or consultant, on and off-site cleanup costs and defense costs. This is usually a stand-alone policy.

**Errors and Omissions Insurance** – This coverage is required of environmental consultants and environmental laboratories. Coverage is to be included for damages (including pollution liability) from acts, errors or omissions in professional services. Events such as failure of the consultant to detect contamination during a Phase I or a Phase II audit, or the negligent design of a remedial system are to be included. This may be a stand-alone policy or may be purchased in conjunction with a Contractor's Pollution Liability policy.

**Pollution Legal Liability** – This policy mitigates the environmental risks associated with real estate ownership or operation. This policy is to include coverage for both cleanup costs for discover of on-site newly discovered or pre-existing pollution conditions, third-party claims for on-site and off-site cleanup of newly discovered or pre-existing conditions, third-party claims for on-site and off-site bodily injury and property damage arising from pollution conditions, response to sudden and gradual pollution conditions and can be endorsed to meet RCRA compulsory financial responsibility requirements for hazardous waste treatment. This is usually a stand-alone policy.

**Environmental Impairment Insurance** – This coverage is utilized to address pollution risks typically excluded under general liability policies and is often referred to as Pollution Legal Liability. Coverage is to provide financial protections against losses related to pollution releases while responding directly to regulatory obligations and contract/lender/landlord requirements. Coverage is to include sudden and gradual pollution conditions, on-site cleanup costs for pre-existing and/or new conditions, off-site cleanup costs for pre-existing and/or new conditions, including pollution released on non-owned waste disposal sites, third-party claims for bodily injury and/or property damage, first-party business interruption expenses related to a pollution condition, defense costs, and pollution releases resulting from the transportation of waste products. This is typically a stand-alone policy.

**Storage Tank Liability** – This policy is to provide coverage for third-party bodily injury and/or property damage claims resulting from pollution releases from above-ground and/or underground storage tanks, cleanup