UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| In re:                              §<br>                                     §<br>ESCO MARINE, INC., et al            §<br>                                     §<br>        Debtors.                    §<br>                                     §<br>                                     § | CHAPTER 11<br><br>CASE NO. 15-20107<br><br>Jointly Administered |

CALLIDUS CAPITAL CORPORATION'S
OMNIBUS RESPONSE TO OBJECTIONS TO APPROVAL OF SALE

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Callidus Capital Corporation ("Callidus") responds as follows to the timely-filed objections to sale:

**A.    Most Objections Are Anticipated to Be Resolved By Close of Sale Hearing.**

Certain objections to the sale were filed by the United States, the Brownsville Navigation District of Cameron County, Texas d/b/a The Port of Brownsville, Harris Machine Tools, Inc., E. David Nagy d/b/a Associated Installation Services, De Lage Landen Financial Services, Inc., and, although filed after the deadline, Cameron County. Callidus anticipates that these objections will be resolved by the inclusion of agreed upon language in the proposed sale order.

**B.    The Official Committee of Unsecured Creditors' Objection Should Be Overruled.**

The Committee objects on several bases, none of which have any factual or legal merit. First, the Committee states that it "believes" that Callidus did not timely submit its bid. This is untrue. The Bidding Procedures, to the extent applicable to Callidus, required prospective bidders to submit their bids to Debtors' counsel, Mr. Whitlock, and Duff & Phelps by 4:00 p.m. CT on July 24. (See Docket No. 260, Bidding Procedures, ¶¶ 4 and 7, as amended by Docket No. 331, Notice of Amendment of Auction-Related Deadlines, ¶ 3). Callidus submitted its bid,

including a term sheet and a proposed Asset Purchase Agreement, to all required parties by email *four days early*, on July 20 at 3:30 p.m., and then submitted an updated bid to address certain concerns expressed by the Debtors' and certain other parties in interest on July 24 at 3:33 p.m. Both the original bid and the amended bid were more than timely submitted by Callidus.

Second, the Committee complains that Callidus did not state the exact amount of its credit bid during the auction. However, Callidus was the only qualified bidder at the auction, and even then Callidus advised the Debtors at the auction that its credit bid would exceed in dollar value even the highest "expression of interest" (what the Committee refers to as "letters of intent") that the Debtors had received from any other potential bidder prior to the auction. Callidus thereafter advised that its exact credit bid amount was $26,488,788.93, which Mr. Whitlock and others can testify did exceed in dollar value even the highest "expression of interest" that the Debtors received from any other potential bidder.

Third, the Committee states that Callidus' bid submitted prior to the auction was not a "Qualified Bid" as defined in the Bidding Procedures. However, the Bidding Procedures approved by the Court allowed Callidus to credit bid at the auction regardless of whether it submitted a "Qualified Bid" prior to the auction and expressly excused Callidus from complying with general bidding requirements. (See Docket No. 260, Bidding Procedures, ¶¶ 9, 11, 12, 13, 14, and 15).

Moreover, Callidus did submit a "Qualified Bid" in any event. In particular, the Committee takes issue with contingencies in the Callidus bid and claims these contingencies disqualify it, but these are allowed to Callidus under the Bidding Procedures. Specifically, paragraph 6(i)(v) of the Bidding Procedures provides that a qualified bid may not contain any financing or due diligence contingencies to closing of the proposed transaction "*unless the*

*Debtors and Callidus otherwise agree that such contingencies are acceptable.*" In addition, paragraph 32 of the Bidding Procedures allowed the Debtors to "adopt, implement, and/or waive such other, additional or existing procedures or requirements that serves to further an orderly Auction and bid process." *See also* Bidding Procedures, ¶¶ 33, 34.

The Committee also objects to other purported aspects of Callidus' bid which simply are not factually correct. For example: (1) Callidus' bid does contain an amount; (2) Callidus' bid does provide for the payment of Chatsworth's fees; (3) Callidus' bid is in the form of an Asset Purchase Agreement; and (4) Callidus' bid does provide for the cure of contracts and leases to be assigned.

Fourth, the Committee argues that the sale is not in the best interests of the estate. The Committee provides no support whatsoever for this position. Again, as Mr. Whitlock and others will testify, the sale is in the best interests of the estate and, after a vigorous marketing process conducted by qualified professions, no other potential bidders (qualified or otherwise) even provided "expressions of interest" that matched Callidus' credit bid.

Fifth and finally, the Committee's objection that Callidus is somehow imposing a financial burden on the estate by submitting a bid that allows Callidus (or its assignee or designee) time to obtain the necessary government approvals and conduct other due diligence prior to closing on the sale is particularly absurd given that Callidus is itself the debtors' DIP lender.

The Committee does not argue, let alone demonstrate, and will be unable to provide any evidence of how denying approval of the sale to Callidus would better serve the estate, its creditors, and numerous other parties in interest than approving the sale. The Committee does not argue, let alone demonstrate, that the sale process was fundamentally flawed or unfair, nor

that going through a different sales process (which the Committee does not describe) will somehow generate more value for the estate.

WHEREFORE, Callidus respectfully requests that this Honorable Court overrule the Committee's objection and approve the sale.

Dated: July 29, 2015

Respectfully submitted,

**JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER, P.C.**

/s/ Nathaniel Peter Holzer
Shelby A. Jordan
Texas Bar No. 11016700
Nathaniel Peter Holzer
Texas Bar No. 00793971
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX 78401-0341
Telephone:    (361) 884-5678
Facsimile:     (361) 888-5555
sjordan@jhwclaw.com
pholzer@jhwclaw.com

- and -

**DICKINSON WRIGHT PLLC**

Michael C. Hammer (pro hac vice)
Michigan Bar No. P41705
350 S. Main Street, Suite 300
Ann Arbor, MI  48104
Telephone:    (734) 623-1696
Facsimile:     (734) 623-1625
MHammer@dickinsonwright.com

*ATTORNEYS FOR CALLIDUS CAPITAL CORPORATION*

## CERTIFICATE OF SERVICE

    I certify that on July 29, 2015, a true and correct copy of the foregoing was served on by electronic notice via the Court's CM/ECF system.

                                                   /s/ Nathaniel Peter Holzer
                                                   Nathaniel Peter Holzer