

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

**ENTERED**
**07/30/2015**

| | | |
|---|---|---|
| **In re:** | § | **CHAPTER 11** |
| | § | |
| **ESCO MARINE, INC.**[1] | § | **CASE NO. 15-20107** |
| | § | |
| **Debtors.** | § | **(Joint Administration)** |

**ORDER (A) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Upon the Motion of the Debtors, for Entry of Order Authorizing and Approving the Sale of Certain of the Debtors' Assets (the "Purchased Assets") Free and Clear of all Liens, Claims, and Encumbrances Outside the Ordinary Course of Business and to Assume and Assign Certain Executory Contracts and Unexpired Leases (the "Sale Motion"), to approve that certain Asset Purchase Agreement by and between Callidus Capital Corporation, its affiliate, assignee or designee (collectively, the "Purchaser") and the Debtors, in substantially the form attached hereto as Exhibit A,[2] (the "APA") and incorporated herein and the Court having found that the relief requested in the Sale Motion is in the best interest of the Debtors' estates, their creditors and other parties in interest; and the Debtors having provided appropriate and sufficient notice under the circumstances, and that no other or further notice is required; and the Court having reviewed the Sale Motion and having heard the evidence in support of the relief requested therein at a hearing before the Court (the "Sale Hearing"); and the Court

---

[1]The Debtors also include ESCO Metals, LLC; ESCO Shredding, LLC; Texas Best Recycling, LLC, and Texas Best Equipment, LLC. The corporate address for all debtors is 16200 Joe Garza Sr., Road, Brownsville, Texas 72521. Joint administration under the above style and case number has been ordered by the United States Bankruptcy Court on March 10, 2015. The use of the term "Debtors" shall refer to all Debtors.

[2]       Capitalized terms not defined in this Order shall have the meaning ascribed to them in the Sale Motion. The schedules and exhibits to the APA are not attached, but copies may be obtained from the Debtors' counsel upon finalization of such schedules and exhibits, and such exhibits and schedules shall be further subject to modification as agreed between Debtors and the Purchaser.

having considered any objections to the Sale Motion, each of which are overruled, resolved, or withdrawn; and the Court having determined that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore:

**THE COURT HEREBY FINDS THAT:**

A.   **Jurisdiction and Venue**.  This Court has jurisdiction over this bankruptcy case and the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  Findings of fact shall be construed as, and constitute, conclusions of law and conclusions of law shall be construed as, and constitute, findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.  Statements made by the Court from the bench at the hearing shall constitute additional conclusions of law and findings of fact as appropriate.  The Court reserves the right to make additional findings of fact and conclusions of law in support of this Order.

B.   **Statutory Predicates**.  The statutory predicates for the relief sought in the Sale Motion are sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014, and the applicable Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules").

C.   **Final Order**.  This order approving the Sale Motion (the "Order") constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rules 9014, Rule 54(b) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7054, Rule 62(a) of the Federal Rules of Civil Procedure made applicable by Bankruptcy Rule 7062, and any other applicable rule or law, the Court expressly finds that there is no just reason for the

delay in the implementation of this Order, waives any stay, and expressly directs entry of the order as set forth herein.

D.  **Notice**.  As evidenced by the affidavits of service filed with this Court and based upon the representations of counsel at the Sale Hearing and as approved under the Bid Procedures Order (Docket No. 260): (i) due, proper, timely, adequate and sufficient notice of the Sale Motion, proposed auction, the Sale, and the transactions contemplated by the APA (the "Sale") has been provided; (ii) it appearing that no other or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate under the circumstances of this bankruptcy case; and (iv) no other or further notice of the Sale Motion, the Auction, the Sale Hearing or the Sale is or shall be required.  The disclosures made by the Debtors concerning the Sale Motion, Auction, the Sale, the Sale Hearing, and the APA were reasonable, adequate and complete.

E.  **Opportunity to Object**.  A reasonable opportunity to object and to be heard with respect to the proposed Sale, the Sale Motion and the relief requested therein (including the assumption and assignment of the Assumed Contracts) has been given to all interested persons and entities, including, without limitation, the following: (i) all potential purchasers previously identified by Debtors and any additional parties who have expressed an interest in potentially acquiring the Purchased Assets, including those parties that have submitted formal expressions of interest; (ii) all other potentially interested parties identified by the Debtors in their business judgment as a potential purchaser of assets; (iii) the Office of the United States Trustee; (iv) all applicable federal, state and local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the relief requested in the Sale Motion; and (vii) all parties on the most current limited service list.

F.  **Sale Process**.  The sale process described in the Sale Motion afforded a full, fair and reasonable opportunity for any interested party to submit bids to become: (i) a

Stalking Horse Bidder; or (ii) a Qualified Bidder in the event of an Auction. The Debtors spent a significant amount of time negotiating with multiple interested parties and pursuing numerous different asset purchase structures and alternatives. Ultimately, the Debtors, in consultation with Callidus, the Official Committee of Unsecured Creditors, the United States Navy, the United States Maritime Administration, and the Brownsville Navigation District, determined that in the Debtors' business judgment, the Purchaser's bid constitutes the highest and best offer for the Purchased Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other known available alternative. The Debtors' determination that the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

G.      **Arm's-Length Sale**. The APA was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith and from arm's-length bargaining positions. Neither the Debtors nor the Purchaser, nor any of their respective representatives, have engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code. Specifically, neither Purchaser nor any of its representatives have acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders. The terms and conditions of the APA and the transactions contemplated thereby (including without limitation the consideration provided in respect thereof) are fair and reasonable and shall not be avoided under section 363(n) of the Bankruptcy Code.

H.      **Good Faith Purchaser**. The Purchaser is purchasing the Purchased Assets as further described in the APA, in good faith and is a good faith purchaser of the Purchased Assets and is therefore entitled to all of the protections afforded by that provision. The Purchaser and its representatives have proceeded in good faith and without collusion in all respects in connection with the Sale and Sale Hearing. The Purchaser recognized that the

Debtors were free to deal with any interested party in selling the Purchased Assets or pursue alternatives to the Sale, complied with the Bid Procedures Order, and disclosed all payments to be made by the Purchaser in connection with the Sale.

     I.    **Authority**. The Debtors have: (i) full power and authority to execute and deliver the APA and all other documents contemplated thereby; (ii) all of the power and authority necessary to consummate the transactions contemplated by the APA; and (iii) taken, or will take, all action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the APA, or those that have been obtained pursuant to applicable provisions of Bankruptcy Code sections 363 and 365, are required for the Debtors to consummate the Sale.

     J.    **Sale in the Best Interests of the Debtors' Estates and Creditors**. Good and sufficient reasons for approval of the APA and the Sale have been articulated, and the relief requested in the Sale Motion and granted herein is in the best interest of the Debtors, their estates, their creditors and other parties in interest.

     K.    **Assumed Contracts Should be Assigned to Purchaser**. In addition to the sale of the Purchased Assets, good and sufficient reasons also exist with respect to approving the assumption by the Debtors of certain Potential Designated Contracts[3] and for the subsequent assignment of the same to the Purchaser, *provided, however*, (a) that any and all contracts to which the United States Government is a counterparty shall be assigned to the Purchaser only upon the consent of the United States Government in compliance with Federal

---

[3] "Potential Designated Contracts" and the associated "Cure Cost" shall be all contracts and associated cure amounts identified by the Debtors in the applicable exhibit to Debtors' Notice of (I) Cure Amount With Respect To Executory Contracts and Unexpired Leases To Be Assumed And Assigned And (II) Potential Assumption And Assignment Of Executory Contracts And Unexpired Leases filed on July 1, 2015 (Docket No. 268); Supplemental Notice of (I) Cure Amount With Respect To Executory Contracts and Unexpired Leases To Be Assumed And Assigned And (II) Potential Assumption And Assignment Of Executory Contracts And Unexpired Leases filed on July 6, 2015 (Docket No. 285); and Second Supplemental Notice of (I) Cure Amount With Respect To Executory Contracts and Unexpired Leases To Be Assumed And Assigned And (II) Potential Assumption And Assignment Of Executory Contracts And Unexpired Leases filed on July 8, 2015 (Docket No. 294).

law, regulation or agency policy, as applicable; (b) any Real Property Leases with the Brownsville Navigation District shall be assumed and assigned to the Purchaser only upon the consent of the Brownsville Navigation District, (c) any and all Potential Designated Contracts in which an objection as to assumption has been timely filed shall be subject to further order of the Court; and (d) the Purchaser may exclude any Potential Designated Contracts up to the Closing Date (as defined below) by directing the Debtors to serve a notice excluding any such Potential Designated Contracts (each, a "Contract Exclusion Notice"). All Potential Designated Contracts which have not been the subject of a Contract Exclusion Notice shall be "Assumed Contracts" under this Order. Purchaser has provided (i) adequate assurance of cure of any default existing prior to the Closing Date under any of the Assumed Contracts exclusively in the amount of the associated Cure Costs within the meaning of Bankruptcy Code Section 365(b)(1)(A), and (ii) provided adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts within the meaning of Bankruptcy Code Section 365(b)(1)(B). Purchaser has provided adequate assurance of its future performance of and under the Assumed Contracts within the meaning of Bankruptcy Code Section 365(b)(1)(C). Non-Debtor parties to the Assumed Contracts were given notice and opportunity to object and are deemed to have consented pursuant to 11 U.S.C. 363(f)(2) to the extent that such Non-Debtor party has not timely filed an objection. Moreover, the Assumed Contracts are an integral part of the Sale since they are necessary to operate the Purchased Assets and the Purchaser will not close without the Assumed Contracts. For clarity, the Assumed Contracts are included within the definition of "Purchased Assets" herein.

In the event the Department of the Navy is unable to consent and novate the contract with the Purchaser, nothing in this Order or the APA waives the Navy's rights to proceed

with default against the Debtor under the provisions of the contract. The Department of the Navy shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code and may proceed to an entry of default on four days' notice to the Debtor and Purchaser and thereafter take possession of the ex-Saratoga. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

L.    **Business Justification**.    The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale outside of the ordinary course of business under section 363(b) of the Bankruptcy Code in that, among other things, the immediate approval by this Court of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates. Entry of an order approving the APA and all of the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the transactions set forth in the APA. The Sale does not constitute a *de facto* plan of reorganization or liquidation, as the Sale does not and will not: (a) impair or restructure existing debt of, or equity interests in, the Debtors; (b) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (c) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; (d) classify claims or equity interests or extend debt maturities; or (e) modify the provisions of and protections afforded Callidus Capital Corporation under the various financing orders entered in this case. Given all the circumstances of this bankruptcy case and the adequacy and fair value of the purchase price under the APA, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

M.    **Consideration**.    The consideration provided by the Purchaser pursuant to the APA constitutes reasonably equivalent value and/or fair consideration under the Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, the Bankruptcy Code, and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The APA represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of this chapter 11 case. Based on the Sale Motion and the record at the Sale Hearing, no other person or entity or group of entities, other than the Purchaser, has offered to purchase the Purchased Assets on terms that would give greater economic value to the Debtors' estates. Approval of the Sale Motion and the APA, and consummation of the transactions contemplated thereby, is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

N.   **Free and Clear**. The Debtors are the sole and lawful owner of the Purchased Assets. Except as otherwise expressly provided herein in Section Q, the transfer of the Purchased Assets to the Purchaser under the APA will be a legal, valid, and effective transfer of the Purchased Assets and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all liens (as defined in section 101(37) of the Bankruptcy Code, whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code and including without limitation successor liability claims), encumbrances, or other interests, of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or after the Petition Date, and whether imposed by agreement, understanding, law, equity or otherwise, accruing, arising or relating thereto (collectively, the "Interests"[4]),

---

[4]    The term "Interests" as used in this Order also includes, without limitation: all encumbrances; obligations; debts; liabilities; demands; guaranties; options; rights; restrictions; contractual commitments, including but not limited to, any license obligations; rights of first refusal or interests; any of the foregoing that purport to give to any party any defense, a defense or right of setoff, or recoupment against or a right or option to effect any forfeiture, modification or termination of the Debtors' interests in the Purchased Assets, or any similar rights; any of the foregoing arising under any mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, including, without limitation, any restriction on the use, voting, transfer, receipt of

at the date and time set by the Debtors and Purchaser after the closing conditions set forth in Article VI of the APA have been satisfied but in no event later than thirty days after the date of entry of this Order except as agreed to by Purchaser, or such other date as the Debtors and Purchaser mutually agree (the "Closing Date"). The Purchased Assets do not include, and affirmatively exclude, the Excluded Assets as provided in the APA, and such Excluded Assets are not sold or subject to this Order, and the Interests of any person with respect to the Excluded Assets are not impaired or affected (or created or enlarged) by this Order.

Notwithstanding anything in this Order to the contrary, Purchaser's purchase of the collateral of De Lage Landen Financial Services, Inc. ("DLL") (see Docket No. 43 for a description of such collateral, which such collateral description is incorporated by reference) is subject to the prior and superior lien of DLL.

O.     **Free and Clear Findings**.  The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Purchased Assets to the Purchaser was not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests.

P.     **No Liability Findings**.  Purchaser would not consummate the transactions contemplated by the APA unless the APA specifically provides, and the Court specifically orders, that none of Purchaser or its affiliates, members or shareholders or the Purchased Assets will have any liability whatsoever with respect to the Sale, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any liability, including any Interest.

---

income or other exercise of any attributes of ownership; and any of the foregoing arising in connection with any agreements, acts, or failures to act, of Debtors or any of the Debtors' predecessors, affiliates, or representatives, including, but not limited to, any of the foregoing arising under any bulk-transfer laws, doctrines of successor liability or similar theories. Notwithstanding the foregoing, "Interests" does not include those certain regulatory matters discussed in Section Q hereof.

Q.    **Certain Regulatory Obligations Excepted**.  Nothing in this Order or the APA releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order.   Notwithstanding the foregoing, Purchaser is not precluded from availing itself of the Bona Fide Purchaser Defense as provided in the Small Business Liability Relief and Brownfields Revitalization Act (Pub .L .No. 107-118, 115 stat. 2356) to the extent applicable.   Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under police or regulatory law.   However, where permitted under applicable law, any licenses, permits, registrations, authorizations or approvals may be transferred solely through notification of an ownership change.

R.    **Satisfaction of 363(f) Standards**.  The Debtors may sell and transfer, and Purchaser may purchase, the Purchased Assets free and clear of any Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each holder of any Interest against the Debtors, their estates, or any of the Purchased Assets: (i) has, subject to the terms and conditions of this Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, including that such Interests are in bona fide dispute.  Those holders of Interests who did not object, or who withdrew their objections, to the Sale Motion and Sale are deemed, subject to the terms of this Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Provided, however, that the objections of Harris Machine Tools, Inc.

(which has asserted an ownership interest in certain machine tools located on the Ex-Yellowstone and Ex-Shenandoah) and Associated Installation Services (which has asserted an ownership interest in Cabinets from the Ex-Yellowstone and/or Ex-Shenandoah, 34 of which are in the Debtor's warehouse and 281 of which are still located on the vessels), have not been resolved and are subject to further orders of this Court. All right, title, and interest in and to the aforementioned machine tools and Cabinets, held by the Debtor as of the Petition Date, if any, shall be transferred to Callidus pursuant to the APA and this Order, provided that, and notwithstanding any other provision of this Order or APA to the contrary, the final determination of title to the aforementioned machine tools and Cabinets shall be determined by further order of this Court.

S.      **No Fraudulent Transfer**. The APA was not entered into for the purpose of hindering, delaying or defrauding creditors of the Debtors. The transactions contemplated by the APA are not fraudulent transfers or fraudulent conveyances under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.

T.      **No Successor Liability**. The transfer of the Purchased Assets to the Purchaser under the APA shall not result in the Purchaser, or any of its affiliates, successors or assigns, having any liability or responsibility (i) for any Interest, or any other obligation, of or against the Debtors or their estates, and neither the Purchaser, nor any of its affiliates, successors and assigns, shall, as a result of the Sale or any action taken in connection with the Sale, be deemed to (1) be a successor (or other similarly situated party) to the Debtor or (2) have, *de facto* or otherwise, merged with or into the Debtors, or (ii) to the Debtors or to third parties except as is expressly set forth in the APA. Without limiting the effect or scope of the foregoing, to the fullest extent permitted by law, the transfer of the Purchased Assets from the Debtors to the Purchaser does not and will not subject the Purchaser, or any of its affiliates,

successors or assigns, or any of their respective properties (including the Purchased Assets) to any liability for Interests against the Debtors or Interests of the Debtors in such Purchased Assets by reason of such transfer under the laws of the United States or any state, territory or possession thereof, or the District of Columbia, applicable to such transactions, including, without limitation, any bulk-transfer laws, successor liability or similar theories. Except as expressly provided for in the APA or this Order, the Purchaser is not acquiring or assuming any liability, warranty or other obligation of the Debtors. The transfer of the Purchased Assets to the Purchaser, will not subject the Purchaser to any liability whatsoever with respect to the operation of the Debtors' businesses prior to the Closing Date, including, without limitation, any liability arising from any of the following: (1) any employment or labor agreements, consulting agreements, severance agreements, change-in-control agreements, or other similar agreements to which the Debtors are or were a party; (2) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (3) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, and any obligations with respect thereto that arise from the with respect thereto that arise from the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil rights Act of 1964, the Age Discrimination and Employment Act of 1967, as amended, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act, (iv) workers' compensation, occupational disease or unemployment or temporary disability insurance claims, (v) except as specifically assumed in the APA and as discussed in Section Q hereof, environmental liabilities, debts, claims or obligations which may be asserted on any basis,

including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any other Environmental, Health and Safety Requirements, (vi) any bulk sales or similar law, (vii) any litigation by or against the Debtor and (viii) the laws of the United States, any state, territory or possession thereof, or the District of Columbia, including any statute, rule, regulations, order, decree, administrative or judicial doctrine or other laws based, in whole or in part, directly or indirectly, in any theory of law or equity, including without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.  For the avoidance of doubt, the liabilities set forth in this paragraph are included in the defined term "Interests" for all purposes herein.

U.    **Compelling Circumstances for an Immediate Sale**.  Good and sufficient reasons for approval of the APA and the Sale have been articulated.  The relief requested in the Sale Motion is in the best interests of the Debtors, their estates and creditors.  The Debtors have demonstrated sufficient and sound business justifications and compelling circumstances for the Sale outside of a plan of reorganization and the immediate consummation of the Sale to the Purchaser on the terms of the APA is necessary and appropriate to maximize the value of the Purchased Assets for the benefit of the Debtors, their respective estates and creditors. To maximize the value of the Purchased Assets and to maintain and preserve the viability of the businesses to which the Purchased Assets relate, the transaction must be consummated within the time frame set forth in the APA.

NOW, THEREFORE, IT IS ORDERED, JUDGED AND DECREED THAT:

1.    **Sale Motion is Granted**.  The Sale Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein and on the record of the Sale Hearing, which is incorporated herein in its entirety, and the Sale as contemplated thereby is granted and approved.

2.      **Objections Overruled**.  Any objections to the entry of this Order or the relief granted herein or requested in the Sale Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

3.      **Approval of APA**.  The APA and all of the terms and conditions thereto are hereby approved.  The Debtors are hereby authorized and directed, without further order of the Court, to take any and all actions necessary or appropriate to: (i) assume the Assumed Contracts and assign the same to the Purchaser; (ii) consummate the Sale of the Purchased Assets to the Purchaser pursuant to the terms of the APA; (iii) close the Sale as contemplated by the APA and this Order; (iv) execute and deliver, perform under, consummate, implement, and close fully the APA, together with all additional instruments and documents that may reasonable be necessary or desirable to implement the APA and Sale; and (v) take all other and further actions as may be reasonably necessary or appropriate to implement the transactions contemplated by the APA.  Subject to Section 16 below, the Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

4.      **Free and Clear**.  Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, as of the Closing Date, the Debtor shall transfer, and the Purchaser shall take title to and possession of, the Purchased Assets free and clear of all Interests except Assumed Liabilities as defined in the APA which shall be inclusive of ad valorum tax liens pursuant to Section 24 and liens which are senior in priority to Purchaser's liens in such Purchased Assets which such liens shall continue in the applicable Purchased Asset in the same order of

priority.  Upon closing the transaction pursuant to the APA, Callidus shall credit the amount of the credit bid of $26,488,788.93 against the pre-petition claims of Callidus.  .  Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets free and clear of all Interests except Assumed Liabilities under the APA.  All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser at the Closing.  On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.  For clarity in any real estate or other public record, the Purchased Assets include the real property described in the APA.

5.     **Valid Transfer**.  On and as of the Closing Date, the transactions contemplated by the APA effect a legal, valid, enforceable and effective sale and transfer of the Purchased Assets to Purchaser, and shall vest Purchaser with title to such Purchased Assets free and clear of any and all Interests of any kind whatsoever; *provided, however*, that (a) the rights and obligations under any contract to which the United States Government is a counterparty shall be transferred to Purchaser only upon the consent of the United States Government and in compliance with applicable provisions of federal statutes, regulations and agency policy, as applicable; (b) any Real Property Leases with the Brownsville Navigation District shall be assumed and assigned to the Purchaser only upon the consent of the Brownsville Navigation District; (c) the assumption and assignment of the Assumed Contracts shall be contingent upon payment of the applicable Cure Costs; and (d) the rights and obligations under any Potential Designated Contract that was the subject of a timely objection shall be subject to further order of this Court.  On the later of the (i) Closing Date; or (ii) as to those Potential Designated Contracts that were the subject of a timely objection, entry of an Order allowing

assumption and assignment of such Potential Designated Contracts; and upon payment of the applicable Cure Costs, the Assumed Contracts shall be deemed assumed by the Debtors and assigned to the Purchaser. Payment of the Cure Costs shall be in full satisfaction and cure of any and all defaults under the Assumed Contracts, whether monetary or non-monetary. Each non-debtor party to an Assumed Contract is forever barred, estopped and permanently enjoined from asserting against the Debtors or the Purchaser, their successors or assigns or the property of any of them, any default existing as of the Closing Date. The Purchased Assets shall be transferred to the Purchaser "as is, where is" with all faults, except as to title and possession being free and clear of all Interests, in accordance with the APA. As of the Closing Date, the APA and the transactions and instruments contemplated thereby shall be specifically performable and enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any subsequent Trustee appointed in this bankruptcy case or any successor case. Nothing in this Order or in the APA shall be interpreted as imposing a greater obligation upon the U.S. Government to novate any contracts other than that what is required by federal statues, regulations or agency policy. Further, consistent with this Court's Order of March 20, 2015, docket entry 77 para. 8, the Ex-Saratoga shall be secured at all times and no work shall commence on the Ex-Saratoga without the express written consent of the Department of the Navy Contracting Officer.

6.    **Injunction**.  Except as to Assumed Liabilities under the APA, all persons and entities (including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors) holding Interests in or against all or any portion of the Purchased Assets arising under, out of, or in connection with, or in any way relating to the Debtor, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and

permanently enjoined from asserting, prosecuting or otherwise pursuing such person's or entity's Interests against the Purchaser, any of its affiliates, successors or assigns, any property of any of the foregoing, or any of the Purchased Assets. On and after the Closing, no holder of any Interest against the Debtors shall interfere with Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Interests.

7.     **Release of Interests**. Except as to Assumed Liabilities under the APA, any person or entity that has filed a statement or other document evidencing an Interest in, to or against the Purchased Assets, shall, remove any and all such Interests on the Purchased Assets. If any of such persons or entities shall not have delivered to the Debtors in proper form, appropriate termination statements, releases and documents in accordance with this paragraph, then the Purchaser is authorized to file, register or otherwise record a certified copy of this Order (and the subject filing or recording officer is authorized and directed to file or record such certified copy of this Order), which, once filed, registered or otherwise recorded, shall constitute evidence of the release of all such Interests in, to or against the Purchased Assets. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of such Interests of record.

8.     **Direction to Release Interests.** On the Closing Date, each of the Debtors' creditors or Interest holders is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

9.     **No Successor Liability**. Neither Purchaser nor its affiliates, successors or assigns shall, as a result of the consummation of the transaction contemplated by the APA: (a) be a successor to the Debtors or their estates; (b) have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates; or (c) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. The transfer of the Purchased

Assets to Purchaser under the APA shall not result in Purchaser, its affiliates, members, or shareholders, or the Purchased Assets: (i) having any liability or responsibility for any Claim against the Debtors or against an insider of the Debtors; (ii) having any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest; or (iii) having any liability or responsibility to the Debtors except as is expressly set forth in the APA; however, the Purchaser reserves the right to contest the scope and extent of the cure amounts owed to the Port of Brownsville.  Notwithstanding anything to the contrary in this Order or the APA, no provision of this Order or the APA is intended to or shall be interpreted to contradict, override or otherwise impair obligations and/or liabilities assumed by Purchaser pursuant to (a) any novation agreement entered into by and between the Purchaser, Debtor, and the United States Government and/or any agency thereof as part of obtaining the United States Government's consent to the assumption and assignment of contracts to which the United States Government and/or any agency thereof is a counterparty or (b) any assignment of the Real Property Leases to which the Brownsville Navigation District and/or Port of Brownsville is a counterparty.

10.    **Examples of No Successor Liability**.  Without limiting the effect or scope of the foregoing and except as otherwise expressly provided herein, as a result of the Closing of the transactions contemplated by the APA, the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, *de facto* merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the bankruptcy case, whether imposed by agreement,

understanding, law, equity or otherwise with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing Date, except insofar as Purchaser explicitly assumes such obligation and/or liability pursuant to (a) any novation agreement entered into by and between the Purchaser, the Debtor and the United States Government and/or any agency thereof as part of obtaining the United States Government's consent to the assumption and assignment of contracts to which the United States Government and/or any agency thereof is a counterparty; (b) any assignment of the Real Property Leases to which the Brownsville Navigation District and/or Port of Brownsville is a counterparty; or (c) the APA or an agreement related to an Assumed Contract.

11.   **Prohibition of Actions Against Purchaser**. Except as otherwise expressly provided for in this Order or the APA, the Purchaser shall not have any liability or other obligation of the Debtor arising under or relating to the Purchased Assets and shall not be liable for any Claims against the Debtor or any of their predecessors or affiliates, and shall have no successor or vicarious liabilities of any kind, character or nature whatsoever, including under any theory of antitrust, successor or transferee liability, labor law, or *de facto* merger whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the Purchased Assets prior to the Closing, except insofar as Purchaser assumes such obligation and/or liability pursuant to (a) any novation agreement entered into by and between the Purchaser, the Debtor, the United States Government and/or any agency thereof as part of obtaining the United States Government's consent to the assumption and

assignment of contracts to which the United States Government and/or any agency thereof is a counterparty; (b) any assignment of the Real Property Leases to which the Brownsville Navigation District and/or Port of Brownsville is a counterparty; or (c) the APA or an agreement related to an Assumed Contract.

12.    **Effect of Order**.  On the Closing Date, this Order shall  be considered and shall constitute (a) for any and all purposes, a full and complete general assignment, conveyance and transfer of the Debtors' interest in the Purchased Assets to the Purchaser, and (b) other than as expressly provided for in the APA or in this Order, a determination that all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date shall have been unconditionally released, discharged and terminated as of the Closing Date, and that the Sale described herein have been effected.  This Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets, and each of the foregoing is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

13.    **Binding on Successors**.  The terms and provisions of the APA and this Order shall be binding in all respects upon the Debtors, their estates, the Purchaser, all creditors (whether known or unknown) of the Debtors, all holders of Interests against or on all or any portion of the Purchased Assets, any non-debtor counterparties to any of the Debtors' executory contracts or unexpired leases, any holders of equity interests in the Debtors, the

Purchaser or their respective affiliates, a Trustee appointed in this bankruptcy case or any successor case, and the successors and assigns of each of the foregoing. This Order, the APA and the other agreements contemplated thereby shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser, and the successors and assigns of each of the foregoing.

14.     **Good Faith**. The transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale with the Purchaser, unless such authorization is duly stayed pending such appeal prior to the Closing Date. The Purchaser is a good faith purchaser of the Purchased Assets, and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

15.     **Fair Consideration**. The consideration provided by the Purchaser pursuant to the APA for its purchase of the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia. The consideration provided by Purchaser for the Purchased Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

16.     **Retention of Jurisdiction**. This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Purchased Assets to the Purchaser; (b) interpret, implement and

enforce the provisions of this Order and any related order; (c) protect the Purchaser against any Interests in the Purchased Assets of any kind or nature whatsoever that attached to the proceeds of the Sale; and (d) any disputes related to the APA.

17.    **Surrender of Possession**.  All entities that are currently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which the Debtors hold an interest are hereby directed to surrender possession of the Purchased Assets either to (a) the Debtors before the Closing Date, or (b) to Purchaser on the Closing Date.

18.    **Fees and Expenses**.  Any obligations of the Debtors in favor of the Purchaser (including without limitation any obligation to pay any amounts or deliver documents to the Purchaser in connection with the APA) shall (i) be performed when due in the manner provided in the APA without further order of this Court, and (ii) not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by an express agreement with the Purchaser, its successors, or assigns.

19.    **Non-Material Modifications**.   The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

20.    **Subsequent Plan Provisions**.  Nothing contained in any subsequent order of this Court or any court of competent jurisdiction in this bankruptcy case or any successor case (including, without limitation, any order authorizing the sale of assets pursuant to sections 363, 365 or any other provision of the Bankruptcy Code or any order entered after the conversion of any of the bankruptcy cases to a case under chapter 7 of the Bankruptcy Code), or in any chapter 11 plan confirmed in the bankruptcy case or any order confirming

any such plan, shall alter, conflict with, or derogate from, the provisions of the APA or this Order, which provisions shall survive and remain in full force and effect.

21.     **Failure to Specify Provisions**.     The failure specifically to include any particular provisions of the APA or the other agreements contemplated thereby in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA and the other agreements contemplated thereby be authorized and approved in their entirety. Likewise, all of the provisions of this Order are non-severable and mutually dependent.

22.     **No Stay of Order**. Notwithstanding the provisions of Bankruptcy Rules 6004 and 6006 and Rule 62(a) of the Federal Rules of Civil Procedure made applicable by Bankruptcy Rule 7062, or any applicable provisions of the Local Rules, this Order shall not be stayed, but shall be effective and enforceable immediately upon entry. Time is of the essence in closing the transactions referenced herein, and the Debtor and the Purchaser intend to close the Sale as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

23.     **Preservation of Certain Records**. Subject to further order of the Court, the Debtors and Purchaser are hereby ordered (and shall cause their affiliates) to take appropriate measures to maintain and preserve all records held by each relating to the Purchased Assets for a period of three (3) years or such other period as may be required by applicable law; provided, however, that in no event shall the Debtors be required to preserve such records after this bankruptcy case is closed after providing notice and an opportunity to acquire such records to Purchaser.

24.     **Ad Valorem Taxes**.

Inasmuch as the sale is a credit bid sale, the Purchaser shall advance to the Debtor at closing the cash amounts necessary to pay the 2014 ad valorem taxes and said taxes shall be

paid at closing. In this regard, the 2014 tax claim shall consist of the 2014 ad valorem tax claim amount, plus statutory interest thereon calculated at the rate of 1% per month from the file date through the month of payment, and upon payment of said sum, the 2014 ad valorem taxes shall be deemed to be fully paid.

The ad valorem tax liens which secure payment of the 2015 ad valorem taxes shall remain attached the property until such time as the 2015 ad valorem taxes are paid. In this regard, the Purchaser shall advance to the Debtor at closing the cash amounts necessary to pay the Debtor's pro-rata share of the 2015 ad valorem taxes, which pro-rata amount shall be based upon the estimated 2015 ad valorem tax claim filed by the taxing entities, and the Purchaser shall be responsible to pay the 2015 taxes when same are finally assessed and prior to their delinquency.

All cash sums advanced hereunder by the Purchaser to pay the ad valorem taxes as set forth herein shall be advanced under the terms of and as a part of the DIP loan previously ordered and approved in this case.

25.     **Failure to Close by the Closing Date**. In the event that the Sale is not closed on or before the Closing Date, either the Debtors or the Purchaser may seek modifications of this Order.

26.     **Payment of Closing Costs**. The Purchaser shall pay (i) reasonable and normal Closing costs, as approved by the Debtors (including, but not limited to the fees of Chatsworth Securities, LLC as provided by Agreed Order Granting Application for Approval of the Employment of Chatsworth Securities, LLC as Investment Bankers for Debtors Nunc Pro Tunc as of May 26, 2015 (Docket No. 363) related to the transaction evidenced by the APA), (ii) ad valorem taxes pursuant to the APA to the extent of the Purchaser's liability therefor, and (iii) cure amounts for Assumed Contracts.

27.    **Order Controls**. To the extent that this Order directly conflicts with any prior order or pleading with respect to the Sale Motion in this bankruptcy case, the terms of this Order shall govern. To the extent there are any direct conflicts between the terms of this Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

**IT IS SO ORDERED.**

Richard S. Schmidt
United States Bankruptcy Judge

###

Submitted By:

LANGLEY & BANACK, INC.
Suite 900, Trinity Plaza II
745 East Mulberry
San Antonio, TX 78212-3166
Telephone: (210)-736-6600
Fax: (210) 735-6889
E-mail: nwilson@langleybanack.com

R. GLEN AYERS
Texas Bar No. 01467500
DAVID S. GRAGG
Texas Bar No. 08253300
NATALIE F. WILSON
Texas Bar No. 24076779

ATTORNEYS FOR THE
DEBTORS AND
DEBTORS-IN-POSSESSION